# EXHIBIT 12

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

| | |
|---|---|
| JIM HOOD, ATTORNEY GENERAL *ex rel.*, STATE OF MISSISSIPPI, | ) ) ) ) |
| Plaintiff, | ) Case No. 3:05-cv-00666-HTW-JCS ) |
| v. | ) ) |
| MERCK & CO., INC., | ) ) |
| Defendant. | ) ) ) |

## OPPOSITION OF DEFENDANT MERCK & CO., INC. TO PLAINTIFF'S MOTION TO REMAND

Defendant Merck & Co., Inc. ("Merck") respectfully submits this memorandum in opposition to Plaintiff's Motion To Remand ("Pl. Mem."). As set forth below, the Court should defer consideration of the remand motion so that the MDL judge presiding over Vioxx® cases can rule on remand motions in similar cases in a coordinated manner. However, if the Court does rule on the remand motion, that motion should be denied because Plaintiff's claims center around the allegedly deceptive marketing of Vioxx, an FDA-approved prescription drug whose marketing and inclusion in the Mississippi Medicaid program implicate significant issues of federal law.[1] Accordingly, the Court should deny Plaintiff's motion.

### I. THE COURT SHOULD DEFER CONSIDERATION OF PLAINTIFF'S REMAND MOTION PENDING TRANSFER OF THIS CASE TO MDL 1657.

Both the MDL Panel and Judge Fallon, who is presiding over the Vioxx® MDL proceeding in the Eastern District of Louisiana, have expressed their preference that overlapping

---

[1] Merck's Notice of Removal included a typographical error referencing diversity jurisdiction. However, Merck did not remove based on diversity jurisdiction and thus does not respond to Plaintiff's arguments on that issue.

EXHIBIT 12
Page 1 of 17

remand motions be presented to the MDL court for coordinated treatment. Judge Fallon explained:

> There are various issues of remand in various cases throughout the country. Again, a significant advantage of the MDL concept is some consistency. The Rule of Law is really based on consistency. If different decisions are made by numerous judges, then you have no consistency and no predictability. . . . It's easier if one court decides some of these matters than if 50 or 100 courts decide the matter.
>
> I'm conscious of dealing with the remand [motions] as quickly as possible, but I do want to get them all together . . . and deal with that issue in a consistent and fair fashion.

Tr. of Status Conference Before the Hon. Eldon E. Fallon, at 21, *In re VIOXX Prods. Liab. Litig.*, MDL No. 1657 (June 23, 2005) (attached as Ex. 1).

Judge Fallon's concerns are consistent with the majority view – *i.e.*, that the best way to ensure that MDL proceedings can achieve their statutory goal of efficient, coordinated proceedings is by staying litigation pending transfer to the MDL court, including the consideration of remand motions. This is particularly true where, as here, the issues raised by Plaintiff's remand motion are similar to those raised in other cases likely to be transferred to the same MDL proceeding. For this reason, ***more than 1,100 Vioxx-related cases have been stayed, including more than 150 with pending remand motions.*** As the United States District Court for the Southern District of Florida explained in granting a stay of a case that has now been transferred to the Vioxx MDL:

> [J]udicial economy and uniformity dictate that the Court defer ruling on Plaintiffs' Motion to Remand in order to . . . allow the MDL judge to resolve the issues presented by similar remand motions. . . . Judicial consistency, economy and uniformity among similar VIOXX cases would be served by deferring resolution of the remand issues at this time.

*Fontanilles v. Merck & Co., Inc.*, No. 04-22799-CIV-HUCK, slip op. at 1-2 (S.D. Fla. Dec. 14, 2004) (attached as Ex. 2). *See also Price v. Merck & Co., Inc.*, Civil Action No. 3:04cv866LN,

slip op. at 3 (S.D. Miss Nov. 16, 2004) ("The court ... finds that staying all proceedings in this case will serve the interests of judicial economy.") (attached as Ex. 3); *McFarland v. Merck & Co., Inc.*, Civil Action No. 2:03cv247SRo, slip op. at 3 (S.D. Miss. Nov. 5, 2004) (same) (attached as Ex. 4); *Magee v. Merck & Co., Inc.*, Civil Action No. 2:03cv249SRo, slip op. at 4 (S.D. Miss. Nov. 5, 2004) (same) (attached as Ex. 5).

As Merck explained in its reply memorandum in support of its motion for stay, these decisions are in accord with the majority of caselaw, holding that "[t]he general rule is for federal courts to defer ruling on pending motions to remand in MDL litigation until after the JPMDL has transferred the case to the MDL [court]." *Jackson v. Johnson & Johnson, Inc.*, No. 01-2113 DA, 2001 WL 34048067, at *6 (W.D. Tenn. Apr. 3, 2001). *See also Knearem v. Bayer Corp.*, Civil Action 02-2096-CM, 2002 WL 1173551, at *1 (D. Kan. May 7, 2002) ("judicial economy is best served by staying this litigation pending a resolution of the conditional order to transfer. Granting a stay ... avoids the possibility of inconsistent pretrial rulings [because the MDL judge] ... can decide for all cases involved in the Baycol® MDL whether the jurisdictional requirements are satisfied."); *Parisi v. Marsh & McLennan Cos., Inc.*, No. Civ.A. 04-2091-KHV, 2004 WL 1534181, at *1 (D. Kan. Apr. 6, 2004) (granting motion to stay to further the interests of judicial economy despite plaintiff's motion for remand); *Michael v. Warner-Lambert Co.*, Case No. 03cv1978 DMS(RBB), 2003 U.S. Dist. LEXIS 21525, at *3-4 (S.D. Cal. Nov. 20, 2003) (staying four cases with remand motions pending transfer to MDL court).

Deferral is particularly appropriate here because the MDL court already has before it another case in which a State Attorney General has sued Merck in an attempt to recover the purchase price of Vioxx paid by the State's Medicaid program. *See Foti v. Merck & Co., Inc.*,

removed to the MDL court on August 5, 2005 from the Civil District Court for the Parish of Orleans, LA (C.A. No. 2005-9085) (attached as Ex. 6). Other similar cases are likely to follow. Having the MDL court decide the cross-cutting jurisdictional issues raised by these cases will ensure that the various Attorney General actions around the country are treated in a uniform manner and that this Court does not enter a ruling that might ultimately be inconsistent with that of the MDL court on like motions. *See In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990) (where "[t]he jurisdictional issue in question is easily capable of arising in [more than one court] . . . [c]onsistency as well as economy is . . . served [by transferring and consolidating cases as to which remand motions are pending]"). *See also Harleaux v. Wyeth*, Civil Action No. H-02-2221, slip op. at 2 (S.D. Tex. Aug. 20, 2002) (staying case pending MDL transfer because "[j]udicial economy is served by a stay pending transfer if the issues involved in the remand motion are likely to arise in the cases that have been or will be transferred to the MDL transferee court.") (attached as Ex. 7); *Caso v. Wyeth*, Civil Action No. G-03-440, slip op. at 2 (S.D. Tex. July 17, 2003) ("judicial economy is best served by allowing the transferee Court to decide this remand question collectively, which will then avoid widespread conflicting pretrial rulings and manifestly piecemeal litigation.") (attached as Ex. 8); *Bd. of Trs. of the Teachers' Ret. Sys. of Ill. v. WorldCom, Inc.*, 244 F. Supp. 2d 900, 905 (N.D. Ill. 2002) ("The question, then, is whether other courts are facing or are likely to face similar jurisdictional issues in cases that have been or may be transferred to a multidistrict proceeding."); *Benjamin v. Bayer Corp.*, Civil Action No. 02-0886 Section: "R", 2002 U.S. Dist. LEXIS 9157, at *5 (E.D. La. May 16, 2002) ("[B]ecause the issues involved in this remand are likely to be common to other transferred cases, the policies of efficiency and consistency of pre-trial rulings are furthered by a stay of the proceedings.").

EXHIBIT 12
Page 4 of 17

M0029588802

In short, because the issues presented by Plaintiff's remand motion are likely to arise in other actions transferred to the Vioxx MDL, the objectives of the MDL process – namely consistency and efficiency – will best be achieved by staying all proceedings in this case, including consideration of Plaintiff's remand motion, pending MDL transfer.

## II. IF THE COURT CONSIDERS PLAINTIFF'S MOTION TO REMAND, IT SHOULD BE DENIED BECAUSE THE COURT HAS SUBSTANTIAL FEDERAL QUESTION JURISDICTION OVER THIS MATTER.

If the Court does consider the merits of Plaintiff's remand motion, it should be denied because the Court has substantial federal question jurisdiction over this case. As set forth below, federal law comprehensively regulates the alleged activities at the heart of this suit. Plaintiff's claims are premised on the allegation that Mississippi would not have paid for Vioxx prescriptions filled by Mississippi residents – and paid for their alleged resulting injuries – had it possessed information allegedly misrepresented or withheld by Merck. (*See* Compl. ¶ 89.) This core allegation directly implicates two areas of federal law: the Food and Drug Cosmetic Act ("FDCA"), which regulates prescription drug manufacturers' public and promotional statements about prescription drugs; and federal Medicaid law, which determines both which drugs a state must cover under its Medicaid program and the limited circumstances under which it can decline to pay for such drugs. *See* 42 U.S.C. §§ 1396r-8(d)(1)(B), (d)(4). Accordingly, Plaintiff's allegations will require him to demonstrate that Merck violated the FDCA and that the State would not have been required to reimburse Merck for Vioxx under the Medicaid statutory provisions.

A recent Supreme Court decision clarifying the scope of the substantial federal jurisdiction doctrine makes clear that the dependency of Plaintiff's claims on the resolution of questions of federal food and drug and Medicaid law establishes substantial federal question

jurisdiction over those claims. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 125 S. Ct. 2363, 2365 (2005). In *Grable*, the United States Supreme Court held that federal jurisdiction lies over "state law claim[s] [that] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." 125 S. Ct. at 2368. In so holding, the Supreme Court limited its prior opinion in *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804 (1986), by making clear that a parallel federal private right of action is ***not*** necessary to establish federal question jurisdiction over state law claims.

Based on this holding, an MDL court recently denied plaintiff's motion to remand in a similar case to this one. In *In re Zyprexa Prods. Liab. Litig.*, 375 F. Supp. 2d 170 (E.D.N.Y. 2005), the court asserted federal question jurisdiction over state-law claims involving a manufacturer's marketing of a prescription drug and the state of Louisiana's payments for that drug under Medicaid. The court there properly found that references in the complaint to federal funding provisions and laws demonstrated "a core of substantial issues [that were] federally oriented." *Id.* at 172-73. As shown below, Plaintiff's claims here present the very same dependency on federal law. Like the *Zyprexa* court, this Court should follow *Grable* and deny Plaintiff's motion to remand.

### A. Plaintiffs' Claims Implicate Numerous And Significant Federal Statutes And Regulations.

#### 1. Federal Law Comprehensively Regulates The Public Statements That Underlie Plaintiff's Claims.

First, federal law governs nearly every aspect of the public statements regarding Vioxx that the Plaintiff points to in the Complaint. Under the Food, Drug and Cosmetic Act ("FDCA"), the Food and Drug Administration ("FDA") is charged both with determining whether a drug is approved for use by humans and with assessing the specific uses for which that drug may be

administered. 21 U.S.C. § 331(a), (d); *Wash. Legal Found. v. Henney*, 202 F.3d 331, 332-33 (D.C. Cir. 2000). As part of the federal regulatory scheme, the FDA's Center for Drug Evaluation & Research regulates prescription drug advertising, including the package inserts that outline benefit and risk information, and also monitors marketed drugs for unexpected health risks that may require public notification, a labeling change, or removal of the drug from the market.[2] Under federal law, even claims in promotional labeling or advertising must be consistent with approved labeling. 21 C.F.R. § 202.1(e)(4). Indeed, the Plaintiff's factual allegations recognize that approval of prescription drugs and their labeling is the function of the FDA (*see* Compl. ¶¶ 19, 24, 32, 34, 36-42, 51-55, 57, 59, 60), and make clear that "statements condemned as false and misleading by the FDA" (*id.* ¶ 60), were at the heart of Merck's alleged misconduct. These issues will be at the center of resolving this case because Plaintiff alleges that Merck's alleged concealment of risk information from the FDA led to allegedly wrongful formulary and prescription drug payments by the state.

### 2. Plaintiff's Claims Implicate Significant Issues Pursuant to the Federal Medicaid Program.

Second, Plaintiff's allegations raise significant federal issues under federal Medicaid law, because they depend on the interpretation and application of federal statutory provisions that govern what can be included in or rejected from State Medicaid formularies, including Mississippi's.

The federal Medicaid program authorizes federal money grants to states to provide medical assistance to low-income individuals. 42 U.S.C. § 1396, *et seq.*; 42 C.F.R. § 430.10, *et seq.* "Although participation in the program is voluntary, participating States must comply with

---

[2] *See* Center for Drug Evaluation and Research, *Frequently Asked Questions to CDER*, Sept. 19, 2002, http://www.fda.gov/cder/about/faq/default.htm.

certain requirements imposed by the Act and regulations promulgated by the Secretary of Health and Human Services." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 502 (1990). In Mississippi, the Medicaid program is administered by the Department of Medicaid. Miss. Code Ann. § 43-13-107(1); 42 C.F.R. § 431.10(b)(1) (requiring states to designate "a single State agency . . . to administer or supervise the administration of the [Medicaid] plan").

Under federal law, a "covered outpatient drug" is one "which may be dispensed only upon prescription" and "which is approved for safety and effectiveness as a prescription drug under" the FDCA. 42 U.S.C. § 1396r-8(k)(2)(A)(i). (*See also* Compl. ¶ 19 (discussing the FDA's approval of Vioxx).) Federal law expressly requires states, subject to certain narrow exceptions, to reimburse the "covered outpatient drugs" of any manufacturer that has entered into and complies with a rebate agreement with the Secretary of Health and Human Services. 42 U.S.C. § 1396r-8(d)(4)(B). Thus, Mississippi is required under federal law to reimburse companies for drugs, such as Vioxx, if the manufacturer complies with federal requirements.

The only time a state can exclude from its formulary a covered outpatient drug subject to a rebate agreement is "with respect to the treatment of a specific disease or condition for an identified population . . . if, based on the drug's labeling . . . the excluded drug does not have a significant clinically meaningful therapeutic advantage in terms of safety, effectiveness or clinical outcome of such treatment for such population over other drugs included in the formulary and there is a written explanation (available to the public) of the basis for the exclusion." 42 U.S.C. § 1396r-8(d)(4)(C). But even in such a situation, a state cannot deny coverage altogether; rather, it must condition such reimbursement on prior authorization, meaning that the state may require that it approve the drug's dispensation before it is dispensed. 42 U.S.C. § 1396r-8(d)(4)(D). And even a decision to require prior authorization must satisfy

EXHIBIT 12
Page 8 of 17
M0029558806

federally mandated requirements. 42 U.S.C. §§ 1396r-8(d)(4)(E), (d)(5). Thus, every step a state takes with regard to coverage of an FDA-approved drug is subject to strict federal mandates.

In short, because the Mississippi Medicaid program operates within this overarching federal regulatory framework, Plaintiff's claims alleging that Vioxx should not have been a part of that program necessarily implicate and turn on questions of federal Medicaid law.

### B. The Supreme Court's *Grable* Decision Makes Clear That Federal Jurisdiction Lies Over Plaintiff's Claims.

The Supreme Court's recent decision in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing.*, 125 S. Ct. 2363 (2005) makes clear why federal jurisdiction lies over Plaintiff's claims. In *Grable*, the Supreme Court addressed whether a quiet title claim brought in state court that depended upon the interpretation of a federal tax law provision was subject to substantial federal question jurisdiction, even though the plaintiff had not purported to state any claim under federal law. In finding federal jurisdiction was present, the Court asserted unequivocally:

> [T]his Court ha[s] recognized for nearly 100 years that in certain cases federal question jurisdiction will lie over state-law claims that implicate significant federal issues. The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues.

*Id.* at 2367 (citations omitted). The *Grable* Court also clarified the Supreme Court's prior opinion in *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804 (1986). Over the last two decades, courts have interpreted *Merrell Dow* to hold that substantial federal question jurisdiction exists only when the federal law implicated by the state-law claims provides a private right of action. In *Grable*, the Court explicitly rejected that interpretation of *Merrell Dow*, explaining that while the provision of a federal private right of action can be evidence of

9

EXHIBIT 12
Page 9 of 17
M002958807

whether Congress intended for there to be a federal forum, the key question, as stated above, is whether the "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." 125 S. Ct. at 2368.

The application of *Grable* to this case warrants this Court's assertion of federal question jurisdiction because Plaintiff's claims turn on the application of the FDCA and federal Medicaid laws. First, the Plaintiff alleges claims that turn directly on whether Merck "failed to disclose to the FDA" material negative information known to Merck concerning the cardiovascular risks of Vioxx and intimates that the FDA would not have approved the drug had it possessed this information. (Compl. ¶ 19; *see also id.* ¶ 24.) The Plaintiff bases his allegations on the FDA's tracking of Merck's public statements about the drug, claiming that on December 16, 1999 and September 17, 2001, the FDA sent Merck letters allegedly admonishing Merck for aspects of its promotional activities and materials concerning Vioxx. (*Id.* ¶¶ 24, 51-54.) Plaintiff also alleges that Merck issued press releases and made statements to the press regarding administrative proceedings by the FDA with respect to the labeling of Vioxx in order to claim that Merck continued to conceal risk information from those proceedings and the public. (*Id.* ¶¶ 34-36, 75-76.)

In addition, *Grable* also mandates the exercise of federal jurisdiction in this case because all of Merck's Vioxx-related communications to the Department of Medicaid and to healthcare providers in Mississippi are contained within, and restricted by, warning, labeling, and marketing materials (such as the Package Insert) that are vetted, approved, and monitored by the FDA to ensure the provision of accurate up-to-date risk/benefit information. Furthermore, the Mississippi statutes pursuant to which the State purports to assert its claims, including the

Deceptive Advertising statute and the Mississippi Consumer Protection Act, implicitly incorporate violations of federal law as a basis for liability because any finding that Merck, as the Complaint alleges, had falsely represented the safety of Vioxx to the FDA, which approves drugs for use in every state of the nation including Mississippi, would be a finding that Merck had violated those statutes. Therefore, federal question jurisdiction exists because "the propriety of [the defendant's] actions, as prescribed under federal law . . . is at the heart of [the plaintiff's] allegations." *D'Alessio v. N.Y. Stock Exch., Inc.*, 258 F.3d 93, 102-03 & n.6 (2d Cir. 2001) (finding federal jurisdiction because state law tort claims were "predicated on alleged breaches of" federal securities law by defendants). *See also Howery v. Allstate Ins. Co.*, 243 F.3d 912, 917 (5th Cir. 2001) (finding federal question jurisdiction present where interpretation of a federal right is an essential element of the state claim and is necessary to resolve the case such that "the claim[s] arise[] from state law but . . . turn on a question of federal law embedded in the matrix of state law"); *Drawhorn v. Qwest Commc'ns Int'l, Inc.*, 121 F. Supp. 2d 554, 564 (E.D. Tex. 2000) (holding that federal question jurisdiction exists where "the interpretation of the federal statutes . . . is a necessary and substantial part of the plaintiffs' own causes of action").[3]

Furthermore, because there are only a few circumstances under which a state can exclude a covered drug like Vioxx from its Medicaid formulary, this Court will be required to interpret federal Medicaid law in assessing the validity of Plaintiff's claims. Specifically, the Court will need to determine whether Mississippi was required to include Vioxx on its Medicaid formulary because, under the federal statutory and regulatory provisions, it was a "covered outpatient drug," thereby "dispensed only upon prescription" and "approved for safety and effectiveness"

---

[3] Plaintiff should not be allowed to avoid federal question jurisdiction merely because, as he states in the Motion to Remand, he does not allege expressly in the Complaint that Merck violated the FDCA. (Pl. Mem. at 5.) What matters, as *Grable* and even pre-*Grable* cases such as *Howery* make clear, is whether plaintiffs' state law claims turn on the resolution of a question of federal law.

pursuant to the FDCA, and thus subject to a rebate agreement between Merck and the Secretary of Health and Human Services. 42 U.S.C. § 1396r-8(d)(4)(B), (k)(2)(A). And, as noted above, Mississippi could have excluded Vioxx from its Medicaid formulary "only if, based on the drug's labeling . . . the excluded drug does not have a significant, clinically meaningful therapeutic advantage in terms of safety, effectiveness, or clinical outcome . . . over other drugs included in the formulary." 42 U.S.C. § 1396r-8(d)(4)(C) (emphasis added). Thus, because the Complaint expressly raises the issue of whether Vioxx was less safe than other cheaper and more effective drugs in its class (Compl. ¶¶ 3-4), this federal provision is implicated by the Plaintiff's allegations as well.

Indeed, even if Mississippi could have excluded Vioxx from its Medicaid formulary under those federal standards, federal law would still have limited the state's ability to refuse payment for Vioxx. As noted above, in the narrow circumstances where a state can exclude medication from its Medicaid formularies, federal law requires the state to pay for those drugs, subject to a prior authorization program, which itself is subject to federally mandated requirements. Accordingly, Plaintiff's allegations – while brought under a state law theory – are entwined with federal Medicaid law and regulations, further confirming that substantial federal question jurisdiction exists over this case.

Finally, Merck's application of *Grable* is confirmed by the MDL court's ruling in *In re Zyprexa Prods. Liab. Litig.*, 375 F. Supp. 2d 170 (E.D.N.Y. 2005), which asserted jurisdiction over third-party claims based on substantial federal question jurisdiction. As in this case, the complaint in *Zyprexa* purported to state claims under state law based on alleged conduct regulated by the FDA. *Id.* at 172. The core allegation was that the manufacturer of the prescription drug Zyprexa marketed the drug for off-label or non-FDA-approved uses, which, as

is similarly alleged here, caused the Louisiana Department of Health and Hospitals to disburse wrongfully millions of dollars in Medicaid funds to pay for Zyprexa prescriptions and alleged resulting Zyprexa-related injuries. The MDL court applied *Grable* to assert jurisdiction over the state-law claims seeking reimbursement of those Medicaid funds because of the "substantial federal funding provisions involved" and because allegations that the manufacturer had improperly marketed Zyprexa for non-FDA-approved uses rendered the case "federally oriented." *Id.* at 172-73. The same federal funding provisions are integral here,[4] and the question of whether the federally-regulated marketing activities surrounding Vioxx involved misrepresentations, as well as the interrelation between Plaintiff's allegations and federal Medicaid program requirements, render this case equally "federally oriented." Therefore, as in *Zyprexa*, this Court should conclude that federal question jurisdiction exists under *Grable*.[5]

### C.     Plaintiff's Cases Are Inapposite.

Plaintiff tries to evade *Grable*, merely citing it without discussion, and instead relies on a series of cases that either predate *Grable* or are factually inapposite. None of these cases supports remand.

First, in the one post-*Grable* case cited by Plaintiff, *Wisconsin v. Abbott Laboratories*, 390 F. Supp. 2d 815 (W.D. Wis. 2005) (Pl. Mem. at 6), the focus of the state's allegations was

---

[4]    For fiscal year 2004 (October 1, 2003 to September 30, 2004), for example, federal funds accounted for 77.08% of Mississippi Medicaid financing, the highest of any state in the nation. *See* Federal Financial Participation in State Assistance Expenditures; Federal Matching Shares for Medicaid, the State Children's Health Insurance Program, and Aid to Needy Aged, Blind, or Disabled Persons for October 1, 2003 Through September 30, 2004, 67 Fed. Reg. 69223 (Nov. 15, 2002). Thus, the vast majority of the money the State seeks to recoup through this lawsuit is federal money. Indeed, the Mississippi legislature has mandated that one of the primary goals of "[e]very state health agency," shall be to "organize its programs and budgets in such a manner as to secure maximum federal funding through the Division of Medicaid under Title XIX or Title XXI of the federal Social Security Act, as amended." Miss. Code Ann. § 43-13-111.

[5]    Plaintiff argues that this Court should follow the lead of the district court in *Texas v. Merck & Co., Inc.*, No. A-05-CA-606-LY, slip op. (W.D. Texas Aug. 29, 2005), and grant its similarly-styled motion to remand. (Pl. Mem. at 3.) Merck points the court, instead, to the *Zyprexa* decision, which grounds its analysis in *Grable*, the Supreme Court's most recent articulation of federal question jurisdiction. The Western District of Texas, on the other hand, does not even mention *Grable*.

wholesale drug price manipulation, a subject that the court found was traditionally within the province of state law. Notably, the court in *Abbott Labs.* determined that the state's claims did "present a substantial and disputed question of federal law," because "[i]n determining whether plaintiff and Wisconsin citizens have overpaid for prescription drugs . . . a court will have to determine the meaning of the phrase "average wholesale price" as it appears in the Medicare statute and its implementing regulations." *Id.* at 823. While the court remanded the case, it did so only because it held that there was "no strong federal interest" in wholesale drug prices, an area generally policed by the individual states. *Id.* That is clearly not the case here, since there is an overwhelming federal interest in regulating the approval, labeling, and marketing of drugs and in coverage of FDA-approved drugs by State Medicaid programs. *See, e.g., Zyprexa*, 375 F. Supp. 2d at 172-73 (federal jurisdiction appropriate because of "substantial federal funding provisions involved").

Plaintiff's pre-*Grable* cases are likewise inapplicable. In *State of New York v. Lutheran Center for the Aging, Inc.*, 957 F. Supp. 393 (E.D.N.Y. 1997) (Pl. Mem. at 5-6), the State alleged that defendant made false claims directly to the state of New York. Although the submissions procedure implicated a federal regulation, the State did not allege, as is alleged here, any injury arising from misrepresentations to the federal government or violations of federal law, and thus federal law was not implicated to the extent that it is implicated here. And in *Horowitz v. Marlton Oncology, P.C.*, 116 F. Supp. 2d 551 (D.N.J. 1999) (Pl. Mem. at 5), a physician sued defendant for causing her to lose her practitioner's license by engaging in fraudulent Medicare billing practices. In holding that federal question jurisdiction was not present, the court relied primarily on that aspect of *Merrell Dow* expressly overruled by *Grable* – i.e., that the federal

EXHIBIT 12
Page 14 of 17

M002958812

statutes implicated there provided no private cause of action. *Horowitz*, 116 F. Supp. 2d at 555 (quoting *Merrell Dow*, 478 U.S. at 814).

In short, unlike the cases cited by Plaintiff, this matter clearly implicates two very substantial federal questions – the FDCA and federal Medicaid law. Under the Supreme Court's *Grable* decision, this Court plainly has jurisdiction so that these substantial federal questions can be resolved in a federal forum.

### D. The Eleventh Amendment Does Not Prevent Removal Of This Action, Because The State Is The Plaintiff.

Finally, Plaintiff asserts incorrectly that the Eleventh Amendment prevents removal of this suit to federal court because the State of Mississippi is a party. (Pl. Mem. at 10-13.) However, the Eleventh Amendment only prohibits federal courts from hearing suits brought *against* a state – not suits brought *by* a state. *See* U.S. Const. amend. XI ("[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted *against* one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State" (emphasis added)).

The United States Supreme Court has held explicitly that the Eleventh Amendment does not reach suits initiated by a state, *Cohens v. Virginia*, 19 U.S. (6 Wheat) 264, 407, 409 (1821), and numerous appellate courts have confirmed that a defendant's removal of a suit initiated by a state does not constitute the commencement or prosecution of suit against that state, allowing invocation of sovereign immunity. *See, e.g., Huber, Hunt & Nichols, Inc. v. Architectural Stone Co.*, 625 F.2d 22, 24 n.6 (5th Cir. 1980) ("Of course, the eleventh amendment is inapplicable where a state is a plaintiff... ."); *Okla. ex rel. Edmondson v. Magnolia Marine Transp. Co.*, 359 F.3d 1237, 1239 (10th Cir. 2004); *Regents of Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1564 (Fed. Cir. 1997); *Calif. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 845-848 (9th Cir.

2003).[6] As one court summarized, "[w]ith few exceptions, courts that have addressed the intersection of sovereign immunity and removal have held that the doctrine does not prohibit the removal of State-initiated actions to federal court without the State's consent." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 361 F. Supp. 2d 137, 144 (S.D.N.Y. 2004). Thus, Plaintiff's argument fails on this ground as well.

## CONCLUSION

For all of the foregoing reasons, Merck respectfully requests that the Court defer consideration of Plaintiff's Motion to Remand pending MDL transfer. Alternatively, if the Court does rule on the merits of Plaintiff's motion, it should be denied.

Respectfully submitted,

By: ___s/Alyson B. Jones___
CHRISTY D. JONES (MB #3192)
CHARLES C. HARRELL (MB #3135)
J. KENNEDY TURNER, III (MS#8140)
ANITA MODAK-TRURAN (MB #99422)
ALYSON B. JONES (MB # 101456)

BUTLER, SNOW, O'MARA,
STEVENS & CANNADA, PLLC
17th FLOOR, AMSOUTH PLAZA
210 EAST CAPITOL STREET
PO BOX 22567
JACKSON, MS 39225
Telephone: (601) 948-5711
Facsimile: (601) 985-4500

Counsel for Defendant Merck & Co., Inc.

---

[6] In *Dynegy*, the Ninth Circuit specifically found "unpersuasive" the only case that Plaintiff relies upon in support of its Eleventh Amendment argument, *Moore v. Abbott Laboratories, Inc.*, 900 F. Supp. 26 (S.D. Miss. 1995). *See Lockyer*, 375 F.3d at 849 n.15. Indeed, the *Moore* court relied upon *California v. Steelcase Inc.*, 792 F. Supp. 84 (C.D. Cal. 1992), which the Ninth Circuit overruled in *Dynegy*.

## CERTIFICATE OF SERVICE

I hereby certify that on December 7th, 2005, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

Rickey T. Moore
Geoffrey C. Morgan
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 220
Jackson, MS 39205

Sheila M. Bossier
John T. Kitchens
BOSSIER & KITCHENS, PLLC
P.O. Box 55567
Jackson, MS 39296

Shane F. Langston
Rebecca M. Langston
LANGSTON & LANGSTON, PLLC
201 N. President Street
Jackson, MS 39201

Richard A. Freese
SWEET & FREESE, PLLC
Morgan Keegan Center, Suite 240
2900 Hwy. 280
Birmingham, AL 35223

**ATTORNEYS FOR THE PLAINTIFF**

Dated this, the 7th day of December, 2005.

　　　　　　　　　　　　　　　　　　　s/Alyson B. Jones
　　　　　　　　　　　　　　　　　　　ALYSON B. JONES

Jackson 1146240v.1