EXHIBIT 14

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS, LOUISIANA

IN RE:  VIOXX PRODUCTS          *    Docket MDL 1657-L
    LIABILITY LITIGATION          *
                      *    June 23, 2005
                      *
* * * * * * * * * * * * * * *    *    9:30 a.m.


STATUS CONFERENCE BEFORE THE
HONORABLE ELDON E. FALLON
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs:          Seeger Weiss
                            BY:  CHRISTOPHER A. SEEGER, ESQ.
                            One William Street
                            New York, New York 10004

For the Defendants:          Stone Pigman Walther Wittmann
                            BY:  PHILLIP A. WITTMANN, ESQ.
                            546 Carondelet Street
                            New Orleans, Louisiana 70130

Official Court Reporter:     Toni Doyle Tusa, CCR
                            500 Poydras Street, Room B-406
                            New Orleans, Louisiana 70130
                            (504) 589-7778

Proceedings recorded by mechanical stenography, transcript
produced by computer.

DEFENDANT'S
EXHIBIT
3

EXHIBIT ___ 14
Page ___ 1 ___ of ___ 28

2

PROCEEDINGS

(June 23, 2005)

1   
2   
3   THE DEPUTY CLERK:  Everyone rise.

4   THE COURT:  Be seated, please.  Good morning, Ladies

5   and Gentlemen.  Call the case, please.

6   THE DEPUTY CLERK:  MDL 1657, In Re: Vioxx.

7   THE COURT:  Counsel, make your appearances for the

8   record.

9   MR. SEEGER:  Good morning, Your Honor.  Chris Seeger

10   for the plaintiffs.  I'm going to be playing Russ Herman today.

11   MR. WITTMANN:  Phil Wittmann, Your Honor, liaison

12   counsel for the defendants.

13   THE COURT:  I understand we have some counsel on the

14   phone.  Who is that?

15   MS. SOTOODEH:  Pamela Sotoodeh in Chicago.

16   MS. KOPELMAN:  Richard Kopelman of Decatur, Georgia.

17   THE COURT:  Good morning.  This is our monthly status

18   conference.  I have received from the liaison counsel the

19   proposed agenda.  We will take the items in order.  The first

20   is LexisNexis File & Serve.  Let me have a report on that.

21   MR. SEEGER:  Judge, we continue to have problems with

22   LexisNexis.  We are having problems getting documents posted

23   and served.  On the other end, they're having problems

24   identifying firms that are already previously registered.  We

25   have got some calls set up with them to try to work through

EXHIBIT 14
Page 2 of 28

M00125536

3

1    some of these issues.  We are hoping to be able to do that.

2            THE COURT:  Let's get them in person in the court.

3    Let's do it next week.  I will get my staff to give you a day.

4    I would like to see LexisNexis here, the president of the

5    company, or somebody who can talk with me about any problems.

6    I would like you all present to get this resolved.  We need to

7    go on line as quickly as possible.  We don't have time to have

8    to rely on surface mail.  There are too many people in this

9    case.  It really needs to be worked out.

10            I'm a little disappointed because LexisNexis

11    just took this over.  I've had some experience with the people

12    from whom they bought this company and we didn't have any

13    problems with the prior group.  I don't know why LexisNexis --

14    a bigger outfit, more resources -- is having problems when the

15    earlier group did not, so maybe they can help me understand

16    that.

17            MR. SEEGER:  We will make arrangements to bring them

18    in.

19            THE COURT:  Thank you.

20            MR. WITTMANN:  Yes, Your Honor.  We have not had

21    problems with LexisNexis.  It seems, from the defendants'

22    standpoint, to be working okay.  The few issues that have come

23    up, we have dealt directly with their representatives and they

24    have been responsive to our requests, so we are satisfied.

25    It's going okay from our standpoint.

EXHIBIT    14
Page    3    of    28

M001255537

4

1          If the Court please, we might give the folks a
2    statistical background on what's happening in the MDL at this
3    point.  As of June 15, we had 907 cases in the MDL.  Although
4    some of those cases have not yet been served on Merck, they are
5    here, 907 of them.  There are over 700 Vioxx products liability
6    cases served and pending in federal court but not yet here.
7    There are over 170 cases served and pending in state courts
8    other than New Jersey and California.  There are over 1,900
9    cases served and pending in the New Jersey consolidated
10   proceeding.  There are approximately 180 cases pending in the
11   California state court, and those cases involve approximately
12   1,000 plaintiffs.  That's our statistical update.
13          THE COURT:  What about the numbers of class actions?
14          MR. WITTMANN:  Class actions I believe are 118.
15   That's up about eight from our last status conference.  We
16   either have provided or will provide copies of the additional
17   class action complaints to plaintiffs' counsel.  Their deadline
18   for filing the master complaint, incidentally, is August 1.
19          THE COURT:  Trial settings.
20          MR. WITTMANN:  Yes, Your Honor.  The first case that
21   we know that's set for trial is the Ernst case in Brazaoria
22   County, Texas, on July 11, 2005.  We have a case in New Jersey,
23   the Humeston case, which is set on September 12, 2005.  The
24   Guerra case is set for trial in Hidalgo County, Texas, on
25   September 19, 2005.  The Zajicek case is set for trial in

EXHIBIT    14
Page  4  of  28

M001225538

5

1    Jackson County, Texas, on September 26, 2005, but we are told
2    that's likely to be continued over to the first quarter of
3    2006.  The Tomlin case is set for trial in Florida in St. Lucie
4    County sometime between October 3 and December 30, 2005.  That
5    exact date has not been fixed yet.  In addition to that, we
6    have a hearing set in the Engineers case in New Jersey on
7    June 30 to determine whether the court will certify a
8    nationwide case of third-party payors.
9            THE COURT:  One of the challenges, from the
10   standpoint of the MDL, is to deal with cases not only
11   throughout the country in the federal system, but also cases
12   that are in the state system.  One benefit of the MDL is
13   consistency and uniformity.  The significance of uniformity and
14   consistency in the large numbers of cases is to allow you
15   folks, who are the lawyers in the cases, to be able to get a
16   read on matters so that hopefully you can evaluate the cases
17   and see whether or not there's any shorter way of dealing with
18   it, namely settlements or dealing with it in some motion way or
19   other evidence.  Consistency or at least predictability is one
20   of the benefits of trials.
21            My concern oftentimes, if there are trials in
22   various jurisdictions, is that it doesn't afford the same
23   consistency if you had it in one jurisdiction, wherever it is.
24   It just gives you some more consistency and, therefore, more
25   predictability, and you're able to then learn from that

EXHIBIT ___14___
Page ___5___ of ___28___

M001225539

6

1   particular trial.

2           My hope was that we could begin trying cases in

3   the MDL as quickly as we can so that you can have that read and

4   benefit, but I do recognize that cases have been in state court

5   for about four years now.  It's hard to have a litigant wait,

6   after they have done all the work in a particular case, and

7   then have to delay unduly.  I have to measure both of those

8   things and weigh both of those things.  I've been getting a lot

9   of good cooperation from the various state courts, and I think

10  that many of them feel the same way as I do.  We will do the

11  best we can with it.  In that regard, let me segue into the

12  next item, which is the selection of cases for an early trial

13  date in this particular proceeding.

14          MR. SEEGER:  Judge, if you don't mind, on the last

15  point, just for the benefit of the lawyers reading the

16  transcript, we have requested of the defendant that going

17  forward, when they list the trial cases, that they give us the

18  name of the case, the court it's in, the attorney of record,

19  and if they can tell us what the injury is.  I think that will

20  assist us in coordinating with those lawyers and help our state

21  federal liaison committee, as well.

22          THE COURT:  Fine.  We have got to watch from both

23  sides that cases are not tried before it's appropriate to try

24  them because that's going to skew the situation.  It's not

25  going to help anybody to try a case that is either not

EXHIBIT _14_
Page _10_ of _28_

M0012255-40

7

1   representative or that's not ready to be tried.  It's going to

2   hurt the rest of your cases.  Let's be conscious of that.

3          MR. WITTMANN:  I think, in response to Chris' point,

4   we have been talking about Ernst and Humeston for a long time

5   now.  I thought I had given that information to Russ, but we

6   will make sure he has it from now on.

7          THE COURT:  Talk to me about trial dates for the

8   cases here.

9          MR. WITTMANN:  Trial dates here, Judge, Mr. Herman

10  and I have been meeting and working on it ourselves.  More

11  recently than that, Mr. Marvin has been meeting with Mr. Seeger

12  and others on the plaintiffs' steering committee to try and get

13  a pool of cases from which we can select cases for trial here

14  in the Eastern District.  I would like to let Mr. Marvin

15  address that since he has been more familiar with the recent

16  negotiations than I have.

17         THE COURT:  Okay.

18         MR. MARVIN:  Good morning, Your Honor.  Your Honor,

19  we have identified two pools of cases that could yield cases

20  for early trials.  The first pool could come from the Eastern

21  District of Louisiana, where there are approximately 40 cases

22  presently on file.  What we would need to do for those cases is

23  to have a short schedule for submission of the plaintiff fact

24  sheets so that both plaintiffs and defendants could look at

25  those cases and make some selections from those cases.

EXHIBIT  14
Page  7  of  28

M001225541

8

1            A second pool of cases, though, could come from

2    cases that have already been filed in the federal court and,

3    indeed, were filed even before the establishment of this MDL.

4    Discovery in a number of those cases has proceeded, and some to

5    an advanced stage.  There are approximately 40 cases, for

6    example, where requests for interrogatories have been made,

7    answers have been given, plaintiff fact sheets have been

8    submitted, and medical records collected.  That's an important

9    matter because collection of medical records could take several

10    months.  So we do have 40 cases where we think that, working

11    with the plaintiffs, we can identify those cases.  Those cases

12    would have objective criteria for the selection of those cases

13    because of the advanced discovery and, indeed, we would be

14    prepared to send our list of cases that we think would fit that

15    criteria within the next five days.

16            THE COURT:  Let's do that in five days, then let me

17    hear from the plaintiffs in five days, and then we will meet

18    and pick the cases.  The Eastern District cases I can try here.

19    The other cases that are put in from other states, even in the

20    federal system, in view of the Lexicon case I may have

21    difficulty trying them unless there's some stipulations.  I can

22    do it in one of two ways.  I can either try them with the

23    stipulations here or I can go to the area that the case

24    emanates from.  An MDL judge sits throughout the country and is

25    able to do that.  I can go to the other area.

EXHIBIT    14
Page  8  of  28

M001225542

9

1          The thing that you both have to look at is the

2    Circuit that you are dealing with because if I try them here,

3    even with stipulations, my understanding is the Fifth Circuit

4    will take the case from me in the appeal.  If I try them in

5    another area, the circuit in that area will try it.  I don't

6    know whether it's good or bad or whether people have feelings

7    one way or the other, but at least that's something for both

8    sides to consider when we talk about those cases.

9          MR. MARVIN:  Fair enough.

10          THE COURT:  Also, logistics, if I'm going to go some

11    other place, that area needs to know I'm going to be there, the

12    court space and the Marshals Service and things of that nature.

13          MR. MARVIN:  Thank you, Your Honor.  Once that list

14    is completed, we will continue working with the PLC to review

15    that list and hopefully come up with some cases.

16          THE COURT:  After five days, if the plaintiffs can

17    get to me, I'll set a meeting.  I will see both of you and pick

18    the cases.

19          MR. SEEGER:  Judge, just a couple of brief comments

20    on this.  We are all for getting a case scheduled for trial as

21    soon as possible.  We like the November/December timeframe.

22    I'm not one of those lawyers and I don't think the attorneys on

23    the PSC are lawyers that believe we have to turn over every

24    document and every stone before we start trying a case.

25    However, I do want to make the Court aware of the fact that we

EXHIBIT _14_
Page _9_ of _28_

M001225543

10

1    are trying to get discovery from the FDA and some third parties

2    and some remaining discovery from Merck that we would like to

3    get.

4         THE COURT:  The early cases, if we are going to push

5    then as quickly as we can to make them meaningful, it's not

6    just to try the cases.  It's to give both of you some idea of

7    how a jury feels about that particular case.  First, I need

8    cases that are ready for trial.  It's not going to do you any

9    good to try a case that's not ready for trial because whatever

10   the verdict is, somebody is going to have an excuse for it and

11   say, "Well, but for it being ready, it would have been

12   different," that sort of thing, whatever it is.

13         Secondly, I would like you to give some thought

14   to grouping them.  If we are dealing with death cases, I don't

15   want to try all death cases because there are personal injury

16   cases, so we ought to try some cases that will give you some

17   benefit from the jury's view of that particular case.  We need

18   cases that are ready and we need some variety.

19         MR. SEEGER:  Thank you, Judge.  With your comments in

20   mind, we will be talking with the defendants about potentially

21   a pool.  We will be proposing cases, as well.  Thank you.

22         THE COURT:  Thank you.  Class actions is the next

23   item on the agenda.

24         MR. WITTMANN:  Yes, Your Honor.  I have really

25   covered that already.  I think it's on track in accordance with

EXHIBIT _14_
Page _10_ of _28_

M00122S544

11

1    the Pretrial Order governing class actions, and the plaintiffs

2    are due to file their master complaint or complaints by

3    August 1.

4            THE COURT:  Okay.  The discovery directed to Merck.

5            MR. WITTMANN:  Yes, Your Honor.  There are a couple

6    of facets to that.  First of all, I don't think your Pretrial

7    Order on the individual cases is generally available yet, but

8    we have submitted an agreed Pretrial Order to you on the

9    individual cases.  I understand you have signed it, but it

10   hasn't been posted yet.

11           THE COURT:  I have signed it, yes.

12           MR. WITTMANN:  There are two parts to that order.

13   The first part deals with the actual procedure for filing

14   motions and dealing with that process in the MDL.  The second

15   part, which we suggested be designated "Pretrial Order __ A,"

16   if you recall, dealt with the actual review of prior discovery

17   produced by Merck in other cases.  That process is ongoing.

18   The protocol for doing that is established by that Pretrial

19   Order and the parties are doing that now, even as we speak, up

20   in New Jersey.

21                We don't have any problems with respect to the

22   documents that have already been produced and the depositions

23   that have been taken.  Those are being made available to the

24   plaintiffs' steering committee, and so far as I know that

25   process is going on without any problem.  We have some

EXHIBIT _14_
Page _11_ of _28_

M001225545

12

1    significant disputes with respect to the additional discovery

2    propounded by the plaintiffs' steering committee, both the

3    interrogatories and the document requests.  It's our belief

4    they are overly broad.  We have made that clear to the

5    plaintiffs' liaison counsel and plaintiffs' steering committee.

6    The parties have been working, trying to narrow those requests

7    to take into account the extent of which those requests are

8    duplicative of materials produced in other proceedings which

9    are being made available up in New Jersey.

10                We have set, by agreement with the plaintiffs'

11   steering committee, I think a deadline of July 5 by which to

12   complete that meet-and-confer process to try and narrow down to

13   see if we can agree on what additional materials will or will

14   not be produced.  If we are unsuccessful, then we will be in to

15   see Your Honor, I think, within 10 days after that.

16                THE COURT:  Let me just make a couple of comments on

17   the discovery part.  Discovery, particularly paper discovery,

18   is supposed to be helpful and not just stumbling blocks.  The

19   purpose of discovery is to help you try your cases or get ready

20   for trial.  If you get so tied into discovery, it gets to be so

21   voluminous and so time consuming and so burdensome that it saps

22   not only your energy, but your resources and your thinking and

23   sidetracks you, it is not good.  It's got to be helpful.  It

24   can't be just, "Let's get it because it's there," "Let's not

25   give it because we have got it."  It's got to be helpful.

EXHIBIT   14
Page  12  of  28

M001225546

13

1            My thinking on discovery is that you all first

2    meet and share with each other a draft of what you need and

3    discuss it.  If you can arrive at an agreement, that's fine.

4    If you can't arrive at an agreement, then before it's in final

5    form, talk to me about it.  I'll tell you what my ruling will

6    be so we don't have to go back and forth.  The plaintiffs don't

7    have to wait for 30 days to get a response, which is an

8    objection, and then they have to wait for another 30.  We don't

9    have time to do that, so we have to streamline it.  Get

10   together and see what you agree on.  I don't have to be brought

11   into the agreement.  The disagreements, bring me in and I will

12   resolve the disagreements.  We will do it as quickly as we can.

13            MR. WITTMANN:  Your Honor, are you saying that during

14   the course of our negotiations, if we do reach some impasse,

15   that you would welcome a conference call?

16            THE COURT:  Get it to me right there and I'll resolve

17   the controversy.

18            MR. SEEGER:  If Russ were here, he would have a great

19   quote from William Shakespeare something to the effect, "I've

20   never met a defendant that said a discovery request wasn't

21   burdensome," but having said that --

22            THE COURT:  I'm sure Shakespeare said something like

23   that.

24            MR. SEEGER:  In New York there's a guy named

25   Shakespeare who said something along those lines.  The truth is

EXHIBIT   14
Page  13  of  28

M00122547

14

1    we served discovery.  Merck has asked for a little bit more

2    time to continue discussing it.  We are going to do that.  We

3    are anxiously awaiting their response.  There are no real

4    surprises in what we are asking for.  As you said, Your Honor,

5    the case is being litigated.  It has been litigated for a

6    while.  I think we all know what we need.

7              THE COURT:  Again, if you have already got some

8    material, let's work out something that if you've got it they

9    don't need to reproduce it.  I know that sometimes you receive

10   some material that's case specific and this is noncase

11   specific, so you may need to go outside of that.  If you have

12   got it, let's get on to something else.  The Pretrial Order

13   governing individual cases.

14             MR. WITTMANN:  Yes, Your Honor.  You have those now.

15   There are actually two Pretrial Orders.  One relates to the

16   production of documents in other cases, which is really a part

17   of the Pretrial Order for the individual cases.

18             THE COURT:  I have that.  I signed it.  It should be

19   posted.  Merck employee information is the next item.  I have

20   briefs on that.  I've set next Wednesday at 2:00 to have a

21   hearing on that oral argument on that question.  The next item

22   is discovery directed to the FDA.  How are we with that?  We

23   had some misunderstandings.  I got the FDA on the phone and

24   everybody was able to talk about it.  I had the opportunity to

25   express my views.  I haven't heard on it formally since then.

EXHIBIT  14
Page  14  of  28

M0012255 48

15

1          MR. SEEGER:  Your Honor, my co-lead counsel,

2     Andy Birchfield, met with the FDA, so he is going to address

3     this issue.

4          MR. BIRCHFIELD:  Your Honor, Russ Herman, Troy

5     Rafferty, and I met with the FDA with their counsel and with

6     the U.S. attorney Sharon Smith at the FDA headquarters in

7     Rockville, Maryland.  We discussed the items on the subpoena

8     and we were able to reach agreement on a number of those

9     issues.  We have continuing dialogue on some of the others.

10    The important thing was that we were able to at least get the

11    discovery process, the review process, and the production

12    process moving while we are continuing dialogue.  They have

13    agreed to provide us with the first page of the documents that

14    were produced in Congress so we can review those and identify

15    which ones we actually need.  They have also agreed to start

16    the production.  We expect by the end of July to get the

17    initial production.  They will continue that on a rolling

18    basis.  We are making considerable progress on the FDA

19    production.

20          THE COURT:  I should express the Court's appreciation

21    to the chair of the FDA.  I appreciate his help.  He should

22    know that I am obliged to him for getting involved in this

23    matter and helping us move forward.  I do publicly appreciate

24    his help.

25          MR. BIRCHFIELD:  One other thing on that.  Merck,

EXHIBIT _14_
Page _15_ of _28_

M001255549

16

1    Ben Barnett, was also there.  There is cooperation there.  They

2    are agreeing to provide a list of documents that are between

3    the FDA and Merck so we can review that list and determine

4    which ones need to be produced and which ones we already have.

5            THE COURT:  Thank you very much.  Discovery directed

6    to third parties is the next item.

7            MR. SEEGER:  Your Honor, we are in the next couple of

8    days going to get out probably about a dozen or so subpoenas to

9    third parties.  We are going to try to stage it in a way so we

10   do it in phases, but at this point there's not much to report

11   other than we are going to get the subpoenas out.

12           THE COURT:  Let's keep that on the agenda so that you

13   can talk to me about it next time.  We really ought to work

14   through that.  That's an important part.  Deposition

15   scheduling.

16           MR. WITTMANN:  The first and third weeks of the

17   month, Judge, were set by prior Pretrial Order.  We had sent a

18   request to the plaintiffs' steering committee last week asking

19   that depositions be set in some of the Louisiana cases starting

20   the first week in July or, alternatively, the third week in

21   July, depending upon what they were able to pull together from

22   their clients.  We left the selection of the plaintiffs to be

23   deposed to the plaintiffs' steering committee because we are

24   trying to accommodate the individual plaintiffs and not just go

25   out and arbitrarily pick dates and select them.  Your Honor has

EXHIBIT ___14___
Page _16_ of _28_

M001255550

17

1   told us in our prior Pretrial Order that we are to cooperate in

2   trying to arrange a mutually agreeable date before running out

3   and setting depositions by notice.

4           We have not heard back. I understand from the

5   plaintiffs' steering committee this morning that the cases that

6   we have selected may not be suitable for the early trials in

7   this Court, so we are waiting to get a list, really, of the

8   cases that we think will go forward for an early trial and will

9   set them for deposition as soon as we can.

10          THE COURT: Okay. Let's keep an eye on prioritizing.

11  There's some issues that might cut across the spectrum. You

12  may want to take depositions of individuals that have something

13  to say about the general theories so they will be significant

14  in each case, but with regard to case-specific discovery I

15  think you should focus on the cases that we select for trial

16  and do those. Now, that doesn't mean that you only have to

17  have one wave of depositions. You can have a couple of tracks

18  going on. You have to be able to do several tracks at the same

19  time in a case like this.

20          MR. SEEGER: You just anticipated my comments. We

21  think that the depositions of plaintiffs should somehow

22  dovetail with what we are doing on trial schedules, although I

23  would like to correct the record. I don't have any opinion on

24  whether cases by any other lawyer are appropriate for trial or

25  not. I think we have to come up with a criteria for selecting

EXHIBIT __14__
Page __17__ of __28__

M00122555I

18

1    cases that will inform decisions that may be made down the road

2    between the parties.

3         THE COURT:  The next item is the plaintiffs' profile

4    form and Merck's profile form.  I understand from the parties

5    that with regard to the plaintiffs' profile form they have

6    reached an agreement.  On Merck's profile form, they have not

7    reached an agreement.  Each side submitted to me their

8    disagreements and I have resolved the conflict.  I'll be today

9    putting out the defendants' profile form that will be used in

10   this case.  That will be resolved.

11        Also, with the profile forms of both sides, it

12   seems to me that we ought to do that in waves.  The first wave,

13   I would like both the plaintiffs and the defendants to focus on

14   and limit the forms to the cardiovascular events -- the

15   myocardial infarctions, the ischemic strokes, the deaths -- and

16   then shortly thereafter, when we get some experience with those

17   forms and with filling them out and any problems, in resolving

18   those problems we ought to be able to step it out quickly to

19   the second wave, which may not require as detailed information.

20   It seems to me to be the best way of doing it.  I put some

21   handwritten notes on this form and I will simply adopt it in an

22   order and give you my thinking on that particular form.  The

23   plaintiffs will have to redraft the form and submit it.

24   Medical records from healthcare providers is the next item.

25        MR. SEEGER:  Judge, I think that we have agreed on a

EXHIBIT _____ _14_

Page _12_ of _28_

M0012255552

19

1    procedure for having medical records posted online almost

2    identical to what we are doing in New Jersey for plaintiffs'

3    lawyers as well as defense counsel to have access to records in

4    a secure way.  I think that's been accomplished.

5             MR. WITTMANN:  That's correct, Your Honor.

6             THE COURT:  Contact with claimants' healthcare

7    providers.  That's the subject of another motion.  I received

8    briefs for reconsideration on that issue.  I'll be hearing that

9    in oral argument on Wednesday, also.  The plaintiffs'

10   depository is the next item on the agenda.

11            MR. SEEGER:  We are happy to report we are up and

12   running.  We have got it staffed and it is available to

13   plaintiffs' lawyers who want to come look at documents and

14   contribute to the document review.  We welcome the help.

15            THE COURT:  Talk with the defendants.  If they have

16   no objection, I would like to at least look at the depository,

17   if that's possible, just see that it's up and running and so

18   forth.

19            MR. WITTMANN:  That's no problem, Judge, whenever

20   counsel wants to set it up.

21            THE COURT:  Set it up and we'll take a look at it.

22   The confidentiality agreement is the next one.

23            MR. WITTMANN:  That's been signed.  Your Honor, I

24   haven't had any problems with it.  We had one question as to

25   whether some of the material that was attached to I believe the

EXHIBIT __14__
Page _19_ of _28_

M00122553

20

1    brief filed by the state liaison committee may have contained

2    some confidential information.  I don't believe it really did,

3    but the time hasn't yet run for us to designate.  We are still

4    looking at that.  We may have some comment about it.  I don't

5    think it's a major problem.

6            THE COURT:  That's an issue always of concern and

7    it's a balancing issue.  It's a balancing issue between the

8    First and Sixth Amendments.  The First Amendment, of course,

9    the right of the public to know, it's vital in a democracy that

10   the public know.  It's also vital in a democracy that people

11   have every right to a fair trial.  There's some conflict

12   occasionally between the First and the Sixth Amendment.  The

13   way that it's worked out, in my judgment, in a fair way is to

14   not deprive the public of a right to know, but perhaps delay

15   the public's information, unless it is a critical type of

16   information which is necessary for immediate knowledge.

17            I'm focused, instead, on the right to a fair

18   trial for both sides, and there is certain proprietary

19   information in these documents that drug companies

20   realistically and legitimately get concerned about releasing,

21   proprietary information that could affect their present or

22   future business practices.  I am conscious of the public's

23   right to know, but I am also conscious of the fact that if I

24   don't have a confidentiality order, then it delays the

25   discovery and delays trials and delays justice.  I have dealt

EXHIBIT  14
Page  20  of  28

21

1    with this issue in that fashion.  We have a confidentiality

2    agreement which will allow the defendants comfort to produce

3    certain information without fear that their future economic

4    security is in jeopardy.  The remand issues.

5            MR. SEEGER:  Judge, that's in the report.  You are

6    going to be dealing with remand motions as a group by

7    procedures that you will be setting up.

8            THE COURT:  Right.  This is always an issue which the

9    MDL Court has to look at.  The question is posed.  There are

10   various issues of remand in various cases throughout the

11   country.  Again, a significant advantage of the MDL concept is

12   some consistency.  The Rule of Law is really based on

13   consistency.  If different decisions are made by numerous

14   judges, then you have no consistency and no predictability and

15   no one knows exactly what to do or how to do it.  It's easier

16   if one court decides some of these matters than if 50 or 100

17   courts decide the matter.

18            I'm conscious of dealing with the remand as

19   quickly as possible, but I do want to get them all together,

20   look at them, see if I can group them in some way, and then

21   direct my attention on each particular group and deal with that

22   issue in a consistent and fair fashion for that group.  I will

23   be dealing with them as quickly as I can, but also with an idea

24   of having more consistency.  I'll be speaking about this

25   perhaps later on because I do have some concepts and ideas

EXHIBIT __14__
Page __21__ of __28__

M001225555

22

1    about this.  Tolling agreements is the next item.

2              MR. SEEGER:  Judge, just to report that we have

3    accomplished our goal.  It was a long negotiation, but we got

4    it resolved.  Both sides have compromised and agreed on a

5    tolling agreement.  It seems to be working.  We are getting

6    cases in.

7              MR. WITTMANN:  The agreement was filed, I guess, on

8    the 9th of this month, so it's just recently been filed, but

9    we are starting to get people taking advantage of it.  We are

10   getting the short form exhibits mailed in.  We have a procedure

11   set up by the defendants to respond to those exhibits as they

12   come in.  We are keeping a record of them so we know exactly

13   where we stand with respect to the people who have elected to

14   go forward on the tolling agreements, Your Honor.

15             THE COURT:  I appreciate the help on both sides on

16   the tolling agreements.  I think it's good for each side.  I

17   think there's different advantages, but advantages for each

18   side, and I think it will be helpful to you.  Certainly, I

19   think it will be helpful to the litigants.  The next item is

20   state/federal coordination.  State liaison committee, are there

21   things that you want to say?

22             MS. BARRIOS:  Yes, Your Honor.  We have been fairly

23   active since our last meeting here.  At the Court's order, we

24   were allowed to file a brief on the issue of the Merck employee

25   information.  We did that and I question, Your Honor, if you

EXHIBIT  14
Page  22  of  26

M001225556

23

1   would like us to be present at the hearing on Wednesday to make

2   a presentation?

3           THE COURT:  Sure.  You are always welcome to

4   participate in a hearing.

5           MS. BARRIOS:  Thank you, Your Honor.

6           THE COURT:  I'm interested in your views.  I have

7   looked at the brief.  A lot of it has already been said.  I

8   don't think I need any response from the defendants on it.  I

9   think you have covered it in your particular response.  Let's

10  keep that in mind.  I know that oftentimes you see matters in

11  the same fashion as perhaps the plaintiffs' steering committee.

12          MS. BARRIOS:  Yes, Your Honor.

13          THE COURT:  If you do, just "Me, too" it.  I don't

14  need you to restate it.  That's sufficient.  If you see it in a

15  different light, just carve that out.  If I need some response,

16  I will direct the defendants to give me a response on it.

17          MS. BARRIOS:  Yes, sir.  We have no intention of

18  being duplicative.  With the cooperation of Mr. Wittmann's

19  office and Mr. Herman's office, we have received a roster of

20  over 700 plaintiffs' attorneys names.  We sent out our first

21  very lengthy newsletter detailing the orders, the web site,

22  etc.  We have gotten extremely good feedback from different

23  plaintiffs' attorneys across the country on it.  We have had

24  several conference calls with our committee.  Mr. Witkin on our

25  committee made a presentation at the Mealey's seminar about the

EXHIBIT  14
Page  22  of  28

M001225557

24

1    MDL yesterday.  We met with the PSC last night and look forward

2    to working with them to reserve the rights of the plaintiffs'

3    attorneys and their clients.

4          THE COURT:  I appreciate all of your interest and

5    work and willingness to work on the committee.  It's very

6    important.  I know there's some interests that are different.

7    That's the way of the world.  There's some joint interests and

8    so rather than reinvent the wheel and do things a second time,

9    third time, fourth time, it is helpful for you to be in the

10   development of it so that you can just migrate that information

11   into your proceedings so you don't have to redo it again.

12         MS. BARRIOS:  Yes, Your Honor.  Thank you.

13         MR. SEEGER:  From the PSC's perspective, we have

14   enjoyed the working relationship with the committee.  We think

15   the lawyers on the committee are of extremely high quality.

16   They have been proactive in anticipating issues.  We welcome

17   their input on anything we do.  We did have dinner last night,

18   had a chance to talk through some important issues before we

19   poured the first bottle of wine -- which was helpful -- and we

20   are looking forward to the continued cooperation between our

21   committee and theirs.

22         THE COURT:  The waiver of service is the next item.

23         MR. WITTMANN:  Yes, Your Honor.  You have the

24   Pretrial Order in effect on that.  I think it's Pretrial

25   Order 15, and we haven't had any problems.

EXHIBIT ___14___
Page _24_ of _28_

25

1          THE COURT:  The next item is direct filing into the

2    MDL.  Ms. Loretta Whyte was kind enough to meet with us earlier

3    today to discuss that in more detail.  The issue, of course, is

4    whether or not the party who files directly into the MDL should

5    have the MDL caption or should have their independent caption.

6    Ms. Whyte tells us that the best way of doing it, from her

7    vantage point, is to have an individual caption just as you

8    would if you file a regular case, but put on that "Related

9    Case, MDL" and give the number.  She will then migrate it into

10   the MDL proceedings.  That will be the best way of doing that.

11   Is that right, Ms. Whyte?

12          MS. WHYTE:  Yes.

13          MR. SEEGER:  There's one thing on that issue that's

14   important to note for people reading the transcript.  There's

15   been some confusion whether the lawyers need to be admitted

16   pro hac to file cases.

17          THE COURT:  They do not need to be admitted pro hac.

18   I have waived that.  Anybody who's in the MDL or has a case in

19   the MDL is able to handle a matter.

20          MR. SEEGER:  Just to be clear, Ms. Whyte, the cases

21   that get filed must mention the Vioxx MDL and that it's a

22   related case?

23          MS. WHYTE:  It's a related case.

24          THE COURT:  Anything further on that?  Pro se

25   claimants.

EXHIBIT ___14___
Page _25_ of _28_

M001225559

26

1      MR. SEEGER:  Well, Your Honor, we have been referring

2  what we have been getting from the Court to our plaintiffs'

3  liaison counsel and these are being dealt with.

4      THE COURT:  I think we have a system of doing it.  So

5  far most of the pro se claimants have been individuals who have

6  not been able to be personally present at these meetings.  They

7  are generally incarcerated some other place and can't make it

8  here, so they need a lawyer.  They have expressed their

9  interest in being represented, so I have given that to liaison

10  counsel.  I understand that what they do is contact lawyers in

11  the state of that particular institution and make those lawyers

12  available to them, or at least tell them that they would be

13  available.  That seems to be working.

14      Anything further from anyone that I haven't

15  covered before I set the next status conference date?  Anything

16  either from the state committee, liaison committee, or anyone

17  in the audience?  I'm interested in hearing your views.

18      MR. WITTMANN:  Nothing from the defendants,

19  Your Honor.

20      MR. SEEGER:  Nothing further from plaintiffs,

21  Your Honor.

22      MS. BARRIOS:  Nothing further.

23      MR. BECNEL:  Judge, I have a lawyer who has referred

24  me 160 cases from Oregon.  I have dealt with Mr. Wittmann's

25  associate, Ms. Wimberly.  He wants to bring them all here, but

EXHIBIT ___14___
Page _26_ of _28_

27

1   because of the peculiar law in Oregon he is starting to have to

2   file them right away in Oregon.  I'm trying to get some sort of

3   a deal with the defendants to get them all here without missing

4   a statute problem.  I'm just wondering how we can work that

5   out.

6          MR. WITTMANN:  We are working that out now, actually,

7   Your Honor, with a procedure for the filing of a master

8   complaint in the MDL that will permit people to come in and tag

9   along and sign on with the short form joinder pleading, which

10  should take care of Mr. Becnel's problem.

11         THE COURT:  Mr. Seeger, get with Mr. Becnel and see

12  if we can handle this particular problem.

13         MR. SEEGER:  Yes, Your Honor.

14         MR. GIRARDI:  Tom Girardi, Your Honor.

15         THE COURT:  Mr. Girardi.

16         MR. GIRARDI:  Your Honor, we now have a state court

17  judge for the 2,000 cases in California.  I will provide you

18  with that contact information, Judge Chaney.

19         THE COURT:  Please do that because I am trying to

20  keep in touch with the state court judges.  When we begin

21  setting some Daubert hearings or other hearings, if they wish

22  to come in the case, we will do either the voice or do video

23  streaming so that they can participate and deal with it

24  according to their law, but they won't have to retake the

25  witnesses.  If they have any questions, they can ask the

EXHIBIT __14__
Page __27__ of __28__

M0012256l

28

1    questions while the witnesses are there, so I would like to

2    know that.  Thank you.

3              MR. SEEGER:  Just for the record, if I could ask

4    Mr. Girardi to copy liaison counsel on that?

5              MR. GIRARDI:  Yes.

6              THE COURT:  Anything else?  The next status

7    conference is Tuesday, July 19, 9:30.  I'll meet with the

8    liaison counsel in my chambers at 8:00 that day to begin

9    getting ready for this meeting.  I appreciate everybody's

10   cooperation and for their reports.  Thank you.  Court will

11   stand in recess.

12             THE DEPUTY CLERK:  Everyone rise.

13             (WHEREUPON, the Court was in recess.)

14                            * * *

15                         CERTIFICATE

16        I, Toni Doyle Tusa, CCR, Official Court Reporter,
     United States District Court, Eastern District of Louisiana, do
17   hereby certify that the foregoing is a true and correct
     transcript, to the best of my ability and understanding, from
18   the record of the proceedings in the above-entitled and
     numbered matter.

19

20

21                            _Toni Doyle Tusa_____
                              Toni Doyle Tusa, CCR
22                            Official Court Reporter

23

24

25

EXHIBIT  14
Page  28  of  28