Jahna M. Lindemuth, ABA #9711068
DORSEY & WHITNEY LLP
1031 West Fourth Avenue
Suite 600
Anchorage, AK 99501-5907
(907) 276-4557

Attorneys for
MERCK & CO., INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| STATE OF ALASKA, | |
| Plaintiff, | Case No. 3:06-CV-00018 (TMB) |
| vs. | |
| MERCK & CO., INC. | |
| Defendant | |

## OPPOSITION OF DEFENDANT MERCK & CO., INC. TO PLAINTIFF'S MOTION TO REMAND

Defendant Merck & Co., Inc. ("Merck") respectfully submits this memorandum in

opposition to plaintiff's Motion to Remand ("Pl. Mem.").  As set forth below, the Court

should defer consideration of plaintiff's remand motion so that the MDL judge who is

presiding over Vioxx® cases can rule on remand motions in similar cases in a

coordinated manner.  If the Court does rule on the remand motion now, however, that

motion should be denied because plaintiff's claims center on the allegedly deceptive

marketing of Vioxx, an FDA-approved prescription drug whose marketing and inclusion

**DORSEY &
WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

in the Alaska Medicaid program implicate significant issues of federal law.  Accordingly,

the court should deny plaintiff's motion.

I.      **THE COURT SHOULD DEFER CONSIDERATION OF PLAINTIFF'S REMAND**
        **MOTION PENDING TRANSFER OF THIS CASE TO MDL 1657.**

        Both the MDL Panel and Judge Fallon, who is presiding over the Vioxx MDL

proceeding in the Eastern District of Louisiana, have expressed their preference that

overlapping remand motions be presented to the MDL court for coordinated treatment.

Judge Fallon explained:

> There are various issues of remand in various cases
> throughout the country.  Again, a significant advantage of the
> MDL concept is some consistency.  The Rule of Law is really
> based on consistency.  If different decisions are made by
> numerous judges, then you have no consistency and no
> predictability. . . .  It's easier if one court decides some of
> these matters than if 50 or 100 courts decide the matter.
>
>
> I'm conscious of dealing with the remand [motions] as
> quickly as possible, but I do want to get them all together . . .
> and deal with that issue in a consistent and fair fashion.

Transcript of Status Conference at 21, *In re VIOXX Prods. Liab. Litig.*, MDL No. 1657

(June 23, 2005) (attached as Ex. 1).  *See also* Letter from JPML to Hon. Ricardo H.

Hinojosa (Mar. 21, 2005) (attached as Ex. 2) ("wait[ing] until the Panel has decided the

transfer issue . . . may be especially appropriate if the [remand] motion raises questions

likely to arise in other actions in the transferee court and, in the interest of uniformity,

might best be decided there if the Panel orders centralization").

        Judge Fallon's concerns are consistent with the majority view – *i.e.*, that the best

way to ensure that MDL proceedings can achieve their statutory goal of efficient,

**DORSEY &**
**WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

OPPOSITION OF DEFENDANT MERCK & CO., INC. TO
PLAINTIFF'S MOTION TO REMAND
Page 2

STATE OF ALASKA V. MERCK & CO., INC.

Case No. 3:06-CV-00018 (TMB)

coordinated proceedings is by staying litigation pending transfer to the MDL court,

including the consideration of remand motions.  This is particularly true where, as here,

the issues raised by plaintiff's remand motion are similar to those raised in other cases

likely to be transferred to the same MDL proceeding.  For this reason, ***more than 1,700***

***Vioxx-related cases have been stayed, including approximately 250 with pending***

***remand motions.***   As the United States District Court for the Southern District of Florida

explained in granting a stay of a case that has now been transferred to the Vioxx MDL:

> [J]udicial economy and uniformity dictate that the Court defer
> ruling on Plaintiffs' Motion to Remand in order to . . . allow
> the MDL judge to resolve the issues presented by similar
> remand motions. . . .  Judicial consistency, economy and
> uniformity among similar VIOXX cases would be served by
> deferring resolution of the remand issues at this time.

*Fontanilles v. Merck & Co.,* No. 04-22799-CIV-HUCK, slip op. at 1-2 (S.D. Fla. Dec.

14, 2004) (App. Tab A).  *See also Purcell v. Merck & Co.,* No. 05-443-L(BLM), slip op.

at 4-5 (S.D. Cal. June 6, 2005) (citations omitted) (where "issue[s] common to several of

the cases being considered for consolidation by the JMPL [are presented in remand

motions] . . . [b]y allowing a single court to determine this issue, judicial resources will

be conserved and the risk of inconsistent rulings is avoided") (App. Tab B)[1]; *Lame Bull v.*

*Merck & Co.*, No. 05-2465, 2006 WL 194277, at * 2 (E.D. Cal. Jan. 24, 2006) ("[g]iven

the number of cases that present this exact jurisdictional question and given the growing

number of Vioxx cases being transferred to the MDL proceeding . . . this court follows

**DORSEY &**
**WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

---

[1]    Unpublished authorities relied upon by Merck are included in the Appendix to this
reply brief.

the many other district courts in California in finding that the interest of judicial economy favors staying this action pending its transfer") (App. Tab C); *McCrerey v. Merck & Co.*, No. 04-2576 WQH(WMc), slip op. at 4 (S.D. Cal. March 5, 2005) ("judicial economy and consistency will be best served by a stay . . . pending transfer decision by the Judicial Panel on Multi-District Litigation") (App. Tab D); *Wright v. Merck & Co.*, No. CV014-3037-PHX-SRB, slip op. at 3 (D. Ariz. Jan. 28, 2005) (granting stay motion pending the JPML's transfer decision despite the pendency of plaintiff's remand motion) (App. Tab E).

Deferral is particularly appropriate here because the MDL court already has before it two similar cases brought by State Attorneys General that present the same jurisdictional issues. *See Foti v. Merck & Co.,* removed to the MDL court on August 5, 2005 from the Civil District Court for the Parish of Orleans, LA (C.A. No. 2005-9085) (attached as Ex. 3); *Hood ex rel. v. Merck & Co.,* removed to the District Court for the Southern District of Mississippi on November 1, 2005 from the Chancery Court for the First Judicial District of Hinds County, MS (C.A. No. G2005-1742 w/4) and subsequently transferred to the MDL court on December 23, 2005 (attached as Ex. 4). Having the MDL court decide the cross-cutting jurisdictional issues raised by these cases will ensure that the various Attorney General actions are treated in a uniform manner and that this Court does not enter a ruling that might ultimately be inconsistent with that of the MDL court on similar motions. *See In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990) (where "[t]he jurisdictional issue in question is easily capable of arising in [more than one court]

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

. . . [c]onsistency as well as economy is . . . served [by transferring and consolidating cases as to which remand motions are pending]"); s*ee also Bd. of Trs. of the Teachers' Ret. Sys. of Ill. v. WorldCom, Inc.*, 244 F. Supp. 2d 900, 905 (N.D. Ill. 2002) ("The question, then, is whether other courts are facing or are likely to face similar jurisdictional issues in cases that have been or may be transferred to a multidistrict proceeding."); *Benjamin v. Bayer Corp.*, Civil Action No. 02-0886 Section: "R", 2002 U.S. Dist. LEXIS 9157, at *5 (E.D. La. May 16, 2002) ("because the issues involved in this remand are likely to be common to other transferred cases, the policies of efficiency and consistency of pre-trial rulings are furthered by a stay of the proceedings.") (App. Tab F).

In short, because the issues presented by plaintiff's remand motion have already arisen in other actions transferred to the Vioxx MDL proceeding, the objectives of the MDL process – namely consistency and efficiency – will best be achieved by allowing the MDL judge to resolve these overlapping remand motions in a coordinated manner.

**II.     IF THE COURT CONSIDERS PLAINTIFF'S MOTION TO REMAND, IT SHOULD BE DENIED BECAUSE THE COURT HAS SUBSTANTIAL FEDERAL QUESTION JURISDICTION OVER THIS MATTER.**

If the Court does consider the merits of plaintiff's remand motion, it should be denied because the Court has substantial federal question jurisdiction over this case. As set forth below, federal law comprehensively regulates the alleged activities at the heart of this suit. Plaintiff's claims are premised on the allegation that Merck "misrepresented and mischaracterized the data and information concerning Vioxx" (Compl. ¶ 10), and

**DORSEY &
WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

OPPOSITION OF DEFENDANT MERCK & CO., INC. TO
PLAINTIFF'S MOTION TO REMAND
Page 5

STATE OF ALASKA V. MERCK & CO., INC.

Case No. 3:06-CV-00018 (TMB)

"induced the State of Alaska to authorize expenditure of Medicaid funds for the purchase of Vioxx" (*id*. ¶ 22). According to the plaintiff, Merck's "unlawful acts and practices resulted in the expenditure of millions of dollars of state funds or state controlled funds on Vioxx." (*Id*. at ¶ 23.) This core allegation of deception directly implicates two areas of federal law: the Food, Drug & Cosmetic Act ("FDCA"), which regulates drug manufacturers' public and promotional statements about prescription drugs; and federal Medicaid law, which determines both the drugs a state must cover under its Medicaid program and the limited circumstances under which it can decline to pay for such drugs. *See* 42 U.S.C. §§ 1396r-8(d)(1)(B), (d)(4). Accordingly, the State's allegations will require it to demonstrate that Merck violated the FDCA and that the State would not have been required to reimburse Merck for Vioxx under the Medicaid statutory provisions.

A recent Supreme Court decision clarifying the scope of the substantial federal jurisdiction doctrine makes clear that the dependency of plaintiff's claims on the resolution of questions of federal food and drug and Medicaid law establishes substantial federal question jurisdiction over these claims. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 125 S. Ct. 2363, 2365 (2005). In *Grable*, the United States Supreme Court held that federal jurisdiction lies over "state law claim[s] [that] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." 125 S. Ct. at 2368. In so holding, the Supreme Court limited its prior opinion in *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804

**DORSEY &
WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

OPPOSITION OF DEFENDANT MERCK & CO., INC. TO
PLAINTIFF'S MOTION TO REMAND
Page 6

STATE OF ALASKA V. MERCK & CO., INC.

Case No. 3:06-CV-00018 (TMB)

(1986), by making clear that a parallel federal private right of action is **not** necessary to establish federal question jurisdiction over state law claims.

Based on this holding, an MDL court recently denied plaintiff's motion to remand in a similar case to this one. In *In re Zyprexa Products Liability Litigation*, 375 F. Supp. 2d 170 (E.D.N.Y. 2005), the court asserted federal question jurisdiction over state-law claims involving a manufacturer's marketing of a prescription drug and the state of Louisiana's payments for that drug under Medicaid, finding that the case presented "a core of substantial issues [that were] federally oriented." *Id.* at 172-73. As shown below, plaintiff's claims here present the very same dependency on federal law. Like the *Zyprexa* court, this Court should follow *Grable* and deny plaintiff's motion to remand.

    A. <u>**Plaintiff's Claims Implicate Numerous And Significant Federal Statutes And Regulations.**</u>

        1. **Federal Law Comprehensively Regulates The Public Statements That Underlie Plaintiff's Claims.**

First, federal law governs nearly every aspect of the types of public statements regarding Vioxx that form the basis of plaintiff's allegations. Under the FDCA, the Food and Drug Administration ("FDA") is charged both with determining whether a drug is approved for use by humans and with assessing the specific uses for which that drug may be administered. 21 U.S.C. § 331(a), (d); *Wash. Legal Found. v. Henney*, 202 F.3d 331, 332-33 (D.C. Cir. 2000). As part of the federal regulatory scheme, the FDA's Center for Drug Evaluation & Research ("CDER") regulates prescription drug advertising, including the package inserts that outline benefit and risk information, and also monitors marketed drugs for unexpected health risks that may require public notification, a labeling change,

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

or removal of the drug from the market.[2]   Under federal law, even claims in promotional labeling or advertising must be consistent with approved labeling.  21 C.F.R. § 202.1(e)(4).  Indeed, the FDA recently promulgated a rule stating that "FDA believes that under existing preemption principles, FDA approval of labeling under the act, whether it be in the old or new format, preempts conflicting or contrary State law," in part because "[S]tate law requirements can undermine safe and effective [drug] use."  *See* Requirements on Content and Format of Labeling for Human Prescription Drug and Biological Products, 71 Fed. Reg. 3922, 3997 (Jan. 24, 2006) (to be codified at 21 CFR Parts 201, 314, and 601).

Thus, the marketing, testing, and approval of Vioxx – the very issues that form the basis of plaintiff's allegations – were all governed by federal law.  (*See, e.g.,* Compl. ¶¶ 7, 10) (allegations related to FDA oversight of Merck's Vioxx-related activities).)

2.  **Plaintiff's Claims Implicate Significant Issues Pursuant to the Federal Medicaid Program.**

Second, plaintiff's allegations raise significant federal issues under federal Medicaid law, because they depend on the interpretation and application of federal statutory provisions that govern what can be included in or rejected from State Medicaid formularies, including Alaska's.

The federal Medicaid program authorizes federal money grants to states to provide medical assistance to low-income individuals.  42 U.S.C. § 1396, *et seq.*; 42 C.F.R. §

**DORSEY &
WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

---

[2]     *See* Center for Drug Evaluation and Research, *Frequently Asked Questions to CDER*, Sept. 19, 20002, http://www.fda.gov/cder/about/faq/default.htm.

430.10, *et seq.* "Although participation in the program is voluntary, participating States must comply with certain requirements imposed by the [Act] and regulations promulgated by the Secretary of Health and Human Services." *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 502 (1990). In Alaska, the Medicaid program is administered by the Department of Health and Social Services. *See* http://www.hss.state.ak.us/dhcs; 42 C.F.R. § 431.10(b)(1) (requiring states to designate "a single State agency . . . to administer or supervise the administration of the [Medicaid] plan").

Under federal law, a "covered outpatient drug" is one "which may be dispensed only upon prescription" and "which is approved for safety and effectiveness as a prescription drug under" the FDCA. 42 U.S.C. § 1396r-8(k)(2)(A)(i). Federal law expressly requires states, subject to certain narrow exceptions, to reimburse the "covered outpatient drugs" of any manufacturer that has entered into and complies with a rebate agreement with the Secretary of Health and Human Services. 42 U.S.C. § 1396r-8(d)(4)(B). Thus, Alaska is required under federal law to reimburse companies for drugs, such as Vioxx, if the manufacturer complies with federal requirements.

The only time a state can exclude from its formulary a covered outpatient drug subject to a rebate agreement is

> with respect to the treatment of a specific disease or condition for an identified population . . . if, based on the drug's labeling . . . the excluded drug does not have a significant clinically meaningful therapeutic advantage in terms of safety, effectiveness or clinical outcome of such treatment for such population over other drugs included in the formulary and there is a written explanation (available to the public) of the basis for the exclusion.

**DORSEY &
WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

OPPOSITION OF DEFENDANT MERCK & CO., INC. TO
PLAINTIFF'S MOTION TO REMAND
Page 9

STATE OF ALASKA V. MERCK & CO., INC.

Case No. 3:06-CV-00018 (TMB)

42 U.S.C. § 1396r-8(d)(4)(C).  But even in such a situation, a state cannot deny coverage altogether; rather, it must condition such reimbursement on prior authorization, meaning that the state may require that it approve the drug's dispensation before it is dispensed. 42 U.S.C. § 1396r-8(d)(4)(D).  And even a decision to require prior authorization must satisfy federally mandated requirements.  42 U.S.C. §§ 1396r-8(d)(4)(E), (d)(5).  Thus, every step a state takes with regard to coverage of an FDA-approved drug is subject to strict federal mandates.

   In short, because the Alaska Medicaid program operates within this overarching federal regulatory framework, plaintiff's claim that Alaska would not have paid for Vioxx necessarily implicates and turns on questions of federal Medicaid law.

   **B.  <u>The Supreme Court's *Grable* Decision Makes Clear That Federal Jurisdiction Lies Over Claims Like Plaintiff's That Turn On Significant Questions Of Federal Law.</u>**

   The Supreme Court's recent decision in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing.*, 125 S. Ct. 2363 (2005) makes clear why federal jurisdiction lies over plaintiff's claims.  In *Grable*, the Supreme Court addressed whether a quiet title claim brought in state court that depended upon the interpretation of a federal tax law provision was subject to substantial federal question jurisdiction, even though the plaintiff had not purported to state any claim under federal law.  In finding federal jurisdiction was present, the Court asserted unequivocally:

   > [T]his Court ha[s] recognized for nearly 100 years that in certain cases federal question jurisdiction will lie over state-law claims that implicate significant federal issues.  The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state

**DORSEY &**
**WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

> law that nonetheless turn on substantial questions of federal law, and thus
> justify resort to the experience, solicitude, and hope of uniformity that a
> federal forum offers on federal issues.

*Id.* at 2367 (citation omitted).  The *Grable* Court also clarified the Supreme Court's prior opinion in *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804 (1986).  Over the last two decades, courts have interpreted *Merrell Dow* to hold that substantial federal question jurisdiction exists only when the federal law implicated by the state-law claims provides a private right of action.  In *Grable*, the Court explicitly rejected that interpretation of *Merrell Dow*, explaining that while the provision of a federal private right of action can be evidence of whether Congress intended for there to be a federal forum, the key question, as stated above, is whether the "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  125 S. Ct. at 2368.

　　　*Grable* confirms that this Court has federal question jurisdiction over plaintiff's claims.  First, because plaintiff's claims turn directly on Merck's marketing of Vioxx, which was subject to strict FDA supervision, "the propriety of [the defendant's] actions, as prescribed under federal law . . . is at the heart of [the plaintiff's] allegations." *D'Alessio v. N.Y. Stock Exch., Inc.*, 258 F.3d 93, 102-03 & n.6 (2d Cir. 2001) (finding federal jurisdiction because state law tort claims were "predicated on alleged breaches of" federal securities law by defendants); s*ee Brennan v. Sw. Airlines Co.*, 134 F.3d 1405, 1409 (9th Cir. 1998) (denying remand where plaintiffs pleaded only state-law causes of

**DORSEY &
WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

OPPOSITION OF DEFENDANT MERCK & CO., INC. TO
PLAINTIFF'S MOTION TO REMAND
Page 11

STATE OF ALASKA V. MERCK & CO., INC.

Case No. 3:06-CV-00018 (TMB)

action expressly, and the substance of plaintiffs' suit arose under federal law); *Nat'l Credit Reporting Ass'n v. Experian Info. Solutions, Inc.*, No. C 04-01661 WHA, 2004 U.S. Dist. LEXIS 17303, *7 (N.D. Cal. July 21, 2004) ("A claim raises a substantial federal question when its resolution requires reference to or interpretation of federal law.") (App. Tab G); *see also Drawhorn v. Qwest Commc'ns Int'l, Inc.*, 121 F. Supp. 2d 554, 564 (E.D. Tex. 2000) (holding that federal question jurisdiction exists where "the interpretation of the federal statutes . . . is a necessary and substantial part of the plaintiffs' own causes of action").[3]

Second, as discussed above, the Court will be required to interpret federal Medicaid law in assessing the validity of plaintiff's claims.  Specifically, the Court will need to determine whether Alaska was required to include Vioxx on its Medicaid formulary because, under the federal statutory and regulatory provisions, it was a "covered outpatient drug," thereby "dispensed only upon prescription" and "approved for safety and effectiveness" pursuant to the FDCA, and thus subject to a rebate agreement between Merck and the Secretary of Health and Human Services.  42 U.S.C. § 1396r-8(d)(4)(B), (k)(2)(A).  And, as noted above, Alaska could have excluded Vioxx from its Medicaid formulary "only if, based on the drug's labeling . . . the excluded drug does not have a significant, clinically meaningful therapeutic advantage in terms of safety,

---

[3]    The State should not be allowed to avoid federal question jurisdiction merely because, as it states in the Motion to Remand, "the suit contains no federal claims and relies on no federal laws."  (Pl. Mem. at 2.)  What matters, as *Grable* and even pre-*Grable* cases such as *Southwest Airlines Co.* make clear, is whether plaintiff's state law claims turn on the resolution of a question of federal law – not whether plaintiff explicitly cites those federal laws in the complaint.

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

effectiveness, or clinical outcome . . . over other drugs included in the formulary."  42

U.S.C. § 1396r-8(d)(4)(C) (emphasis added).  Thus, because the Complaint expressly

raises the issue of whether Merck represented that "Vioxx had characteristics, uses, and

benefits that it did not have" (Compl. ¶ 13), this federal provision is implicated by the

plaintiff's allegations as well.

Indeed, even if Alaska could have excluded Vioxx from its Medicaid formulary

under those federal standards, federal law would still have limited the state's ability to

refuse payment for Vioxx.  As noted above, in the narrow circumstances where a state

can exclude medication from its Medicaid formularies, federal law requires the state to

pay for those drugs, subject to a prior authorization program, which itself is subject to

federally mandated requirements.  Accordingly, plaintiff's allegations that Merck's

"unlawful acts and practices induced the State of Alaska to authorize expenditure of

Medicaid funds for the purchase of Vioxx" (Compl. ¶ 22) – while brought under a state

law theory – are entwined with federal Medicaid law and regulations, further confirming

that substantial federal question jurisdiction exists over this case.

As noted above, Merck's application of *Grable* is confirmed by the MDL court's

ruling in *In re Zyprexa Products Liability Litigation*, 375 F. Supp. 2d 170 (E.D.N.Y.

2005), which asserted jurisdiction over third-party claims based on substantial federal

question jurisdiction.  As in this case, the complaint in *Zyprexa* purported to state claims

under state law based on alleged conduct regulated by the FDA.  *Id.* at 172.  The core

allegation was that the manufacturer of the prescription drug Zyprexa marketed the drug

**DORSEY &
WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

for off-label or non-FDA-approved uses, which caused the Louisiana Department of

Health and Hospitals to disburse wrongfully millions of dollars in Medicaid funds to pay

for Zyprexa prescriptions and to pay for the resulting Zyprexa-related injuries.  The MDL

court applied *Grable* to assert jurisdiction over the state-law claims seeking

reimbursement of those Medicaid funds because of the "substantial federal funding

provisions involved" and because allegations that the manufacturer had improperly

marketed Zyprexa for non-FDA-approved uses rendered the case "federally oriented."

*Id.* at 172-73.  The same federal funding provisions are integral here,[4] and the question of

whether the federally-regulated marketing activities surrounding Vioxx involved

misrepresentations, as well as the interrelation between plaintiff's allegations and federal

Medicaid program requirements, render this case equally "federally oriented."

---

[4]     In addition, federal funds comprise the majority of Alaska Medicaid Program's funds – the money at issue in this lawsuit.  For fiscal year 2004 (October 1, 2003 to September 30, 2004), for example, federal funds accounted for 58.39% of Alaska Medicaid financing.  *See* Federal Medical Assistance Percentages and Enhanced Federal Medical Assistance Percentages for Fiscal Year 2004, 67 Fed. Reg. 69223-25 (Nov. 15, 2002) *available at*  http://www.aspe.hhs.gov/health/fmap04.htm.  Indeed, the Alaska Medicaid Program is inextricably tied to the federal Centers for Medicare & Medicaid Services ("CMS") in the Department of Health and Human Services, as the CMS is directed to approve all state Medicaid plans and proposed amendments based on the state's compliance with federal Medicaid law.  42 C.F.R. § 447.256.  *See also* 42 C.F.R. § 430.14 ( CMS "reviews State plans and plan amendments, discusses any issues with the [state] Medicaid agency, and consults with central office staff on questions regarding application of Federal policy."); 42 C.F.R. § 430.12 (outlining mandatory procedures State must follow when submitting a proposed state Medicaid plan or state Medicaid plan amendment for CMS's approval).   For example, CMS authorization was required before Alaska (and other states) could participate in a multi-state pooling agreement for the purchase of Medicaid prescription drugs. *See* "Safe and Effective Approaches to Lowering State Prescription Drug Costs: Best Practices Among State Medicaid Drug Programs (9/9/04)" *available at* http://www.ascp.com/public/ga/2004/docs/CMSBestPractices.pdf   (noting that Michigan, Vermont, Alaska, Nevada, and New Hampshire received authorization from CMS on April 22, 2004 to participate in a multi-state pooling supplemental rebate agreement).

OPPOSITION OF DEFENDANT MERCK & CO., INC. TO          STATE OF ALASKA V. MERCK & CO., INC.
PLAINTIFF'S MOTION TO REMAND
Page 14                                                                                   Case No. 3:06-CV-00018 (TMB)

Similarly, in a recent case involving Medicaid drug pricing, the court in *County of Santa Clara v. Astra USA, Inc*., 401 F. Supp. 2d 1022 (N.D. Cal. 2005), held that federal jurisdiction was proper under *Grable* because the plaintiff's state law claims against pharmaceutical manufacturers for allegedly overcharging plaintiff for Medicaid drugs presented substantial questions of federal law. In concluding that the Medicaid drug pricing issues were substantial questions of federal law, the court observed that one measure of evaluating substantiality is "the importance of the federal issue." *Id*. at 1028. The court noted that "[u]nder this approach, the following issues have been found to be substantial: those that directly affect the functioning of the federal government, those in an area reserved for exclusive federal jurisdiction, and those that impact a complex federal regulatory scheme." *Id*. Therefore, as in *Zyprexa* and *Astra USA*, this Court should conclude that federal question jurisdiction exists under *Grable*.

### C. **Plaintiff's Cases Do Not Undermine The Applicability Of *Grable*.**

In arguing against federal jurisdiction, plaintiff relies on: (1) pre-*Grable* cases that interpreted *Merrell Dow* to prohibit the exercise of federal jurisdiction absent a private right of action under federal law (an interpretation that has now been rejected by *Grable*); and (2) post-*Grable* cases that do not implicate federal law nearly to the extent of this case. None of these cases supports remand here.

Plaintiff's pre-*Grable* cases are not persuasive both because they are based on superseded Supreme Court precedents and because they implicated federal law to a far lesser extent than this case. In *New York v. Lutheran Center for the Aging, Inc.*, 957 F.

Supp. 393, 395 (E.D.N.Y. 1997) (Pl. Mem. at 13), for example, the State alleged that the defendant violated a state-created methodology for submitting claims whose goal was to maximize claims under Medicare before billing Medicaid. *Id*. at 395. No such methodology existed under federal law. Here, in contrast, the marketing of prescription drugs is subject to very strong federal regulation as is a state's obligations to cover FDA-approved drugs in its Medicaid formulary. For similar reasons, plaintiff's reliance on *Massachusetts v. Philip Morris Inc*., 942 F. Supp. 690, 691 (D. Mass. 1996) (Pl. Mem. at 13), is not persuasive. That case did not involve FDA regulations; nor did it involve the aspects of Medicaid at issue here – *i.e.*, the requirement that States include FDA-approved drugs on their formularies. In the present case, plaintiff's allegations directly implicate both FDA's strict regulation of prescription drugs and the Medicaid formulary regulations. Thus, as in *Zyprexa*, the inherent conflict between the plaintiff's allegations and Merck's FDA-approved conduct presents a core of substantial federal issues. *See In re Zyprexa Prods. Liab. Litig.*, 375 F. Supp. 2d at 172-73.

Plaintiff's post-*Grable* cases are no more persuasive. For example, in *Wisconsin v. Abbott Laboratories*, 390 F. Supp. 2d 815 (W.D. Wis. 2005), the focus of the state's allegations was wholesale drug price manipulation, a subject that the court found was traditionally within the province of state law. Notably, the court in *Abbott Labs.* determined that the state's claims did "present a substantial and disputed question of federal law," because "[i]n determining whether plaintiff and Wisconsin citizens have overpaid for prescription drugs . . . a court will have to determine the meaning of the

DORSEY &
WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

OPPOSITION OF DEFENDANT MERCK & CO., INC. TO
PLAINTIFF'S MOTION TO REMAND
Page 16

STATE OF ALASKA V. MERCK & CO., INC.

Case No. 3:06-CV-00018 (TMB)

phrase "'average wholesale price' as it appears in the Medicare statute and its implementing regulations." *Id.* at 823.  While the court remanded the case, it did so because it held that there was "no strong federal interest" in wholesale drug prices, an area generally policed by the individual states.  *Id.*  That is clearly not the case here, where there is an overwhelming federal interest in regulating the approval, labeling, and marketing of drugs and in coverage of FDA-approved drugs by State Medicaid programs. *See, e.g., Zyprexa*, 375 F. Supp. 2d at 172-73 (federal jurisdiction appropriate because of "substantial federal funding provisions involved").

Plaintiff's reliance on *Minnesota v. Pharmacia Corp.*, No. 05-1394 (PAM/JSM), 2005 WL 2739297 (D. Minn. Oct. 24, 2005) (Pl. Mem. at 13), is similarly unavailing because in *Pharmacia*, as in *Abbott Labs.*, the state's allegations focused on the unlawful inflation of the average wholesale price on prescription drugs.  *Id.* at *1.  Moreover, before addressing whether the state's claims presented a substantial federal question, the district court found that the defendant's removal was *procedurally* defective.  *Id.* at *3. Thus, not only were the federal issues less substantial, but in both cases, "removal had been procedurally defective and provided an independent and adequate reason to remand to state court."  *County of Santa Clara v. Astra USA, Inc.*, 401 F. Supp. 2d 1022, 1031 (N.D. Cal. 2005).  Therefore, the *Abbott Labs.* and *Pharmacia* decisions provide little support for plaintiff's arguments in light of the *Zyprexa* and *Astra USA* decisions, which, in cases similar to this one, concluded that federal question jurisdiction exists under *Grable*.

**DORSEY &
WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

OPPOSITION OF DEFENDANT MERCK & CO., INC. TO
PLAINTIFF'S MOTION TO REMAND
Page 17

STATE OF ALASKA V. MERCK & CO., INC.

Case No. 3:06-CV-00018 (TMB)

The same is true of plaintiff's other cases. *Snook v. Deutsche Bank Ag.*, No. H-05-2694, 2006 WL 126705 (S.D. Tex. Jan. 17, 2006), *Sarentino v. American Airlines Inc.*, No. 4:05MD1702 JCH, 2005 WL 2406024 (E.D. Mo. Sept. 29, 2005), and *Sheridan v. New Vista, L.L.C.*, No. 1:05-CV-428, 2005 WL 2090898 (W.D. Mich. Aug. 30, 2005), are cases in which, plaintiff argues, courts declined to exercise jurisdiction because the "federal question was only one facet of plaintiff's claims." (Pl. Mem. at 15.) However, in contrast to this case, the federal laws at issue in plaintiff's cited cases were quite tangential to their claims. As discussed above, an intense examination of federal law is necessary to address plaintiff's allegations that Merck deceived Alaska or Alaskans through its labeling or advertising; any discussion of drug approval, labeling, or marketing will require analysis of FDA regulations. For example, to accomplish its mandate, the CDER oversees the drug companies' development, testing and research, and manufacture of drugs; regulates prescription drug advertising, including the Package Inserts that outline benefit and risk information; and monitors marketed drugs for unexpected health risks that may require public notification, a change in labeling, or removal of the product from the market. Moreover, the federal interest in this case is multiplied by plaintiff's allegation that Merck misrepresented the safety of Vioxx to the Alaska Medicaid Program for inclusion on its Medicaid formulary. (*See* Compl. ¶ 7.) As discussed above, this allegation directly implicates federal requirements that strictly govern each State's Medicaid program.

Finally, plaintiff's concern that asserting jurisdiction here would swing open the

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

OPPOSITION OF DEFENDANT MERCK & CO., INC. TO
PLAINTIFF'S MOTION TO REMAND
Page 18

STATE OF ALASKA V. MERCK & CO., INC.

Case No. 3:06-CV-00018 (TMB)

gates of federal courts to product liability claims is misplaced.  (Pl. Mem. at 15-17.)

After all, the full range of substantial federal issues that plaintiff's claims implicate are

not raised by claims asserted by a consumer or private third-party payor.  Of the

thousands of cases involving Vioxx transferred to this Court and being litigated around

the country, this case is one of only four cases brought by state Medicaid agencies.  Thus,

there is no merit to plaintiff's argument that removal of this case would disturb the

balance of judicial responsibilities between state and federal courts.

      In short, despite plaintiff's arguments to the contrary, this matter clearly implicates

two very substantial federal questions – the FDCA and federal Medicaid law, and under

the Supreme Court's *Grable* decision, the Court plainly has jurisdiction so that these

substantial federal questions can be resolved in a federal forum.

**<u>CONCLUSION</u>**

      For all of the foregoing reasons, Merck respectfully requests that the Court defer

consideration of plaintiff's Motion to Remand pending MDL transfer.  Alternatively, if

the Court does rule on the merits of plaintiff's motion, it should be denied.

      DATED this 21st day of February, 2006, at Anchorage, Alaska.

                       DORSEY & WHITNEY LLP


                       By:    /s/ Jahna M. Lindemuth
                           Jahna M. Lindemuth, ABA #9711068
                           DORSEY & WHITNEY LLP
                           1031 West Fourth Avenue, Suite 600
                           Anchorage, AK 99501-5907
                           (907) 276-4557
                           lindemuth.jahna@dorsey.com

**DORSEY &
WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

OPPOSITION OF DEFENDANT MERCK & CO., INC. TO
PLAINTIFF'S MOTION TO REMAND

STATE OF ALASKA V. MERCK & CO., INC.

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on
the 21st day of February, 2006, a true and correct
copy of this document was served on:

James E. Fosler                                    W. Mark Lanier
Fosler Law Group, Inc.                             Richard Meadow
737 West Fifth Avenue, Suite 205                   Lawrence P. Wilson
Anchorage, Alaska  99501                           The Lanier Law Firm
                                                   6810 FM 1960 West
                                                   Houston, Texas  77069

by electronic means through the ECF system
as indicated on the Notice of Electronic Filing,
or if not confirmed by ECF, by first class regular mail.


  By:     /s/ Jahna M. Lindemuth
        Jahna M. Lindemuth, ABA #9711068
        Dorsey & Whitney, LLP

**DORSEY &**
**WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557