# EXHIBIT 1

1

```
 1                      UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF LOUISIANA
 2                         NEW ORLEANS, LOUISIANA

 3

 4

 5
    IN RE:  VIOXX PRODUCTS        *    Docket MDL 1657-L
 6    LIABILITY LITIGATION        *
                                  *    June 23, 2005
 7                                *
                                  *    9:30 a.m.
 8  * * * * * * * * * * * * * * * *

 9

10                      STATUS CONFERENCE BEFORE THE
                        HONORABLE ELDON E. FALLON
11                      UNITED STATES DISTRICT JUDGE

12

13  APPEARANCES:

14

    For the Plaintiffs:            Seeger Weiss
15                                 BY:  CHRISTOPHER A. SEEGER, ESQ.
                                   One William Street
16                                 New York, New York 10004

17

    For the Defendants:            Stone Pigman Walther Wittmann
18                                 BY:  PHILLIP A. WITTMANN, ESQ.
                                   546 Carondelet Street
19                                 New Orleans, Louisiana 70130

20

    Official Court Reporter:       Toni Doyle Tusa, CCR
21                                 500 Poydras Street, Room B-406
                                   New Orleans, Louisiana 70130
22                                 (504) 589-7778

23

24
    Proceedings recorded by mechanical stenography, transcript
25  produced by computer.
```

M001225535

Exhibit 1

Page 1 of 27

2

<u>PROCEEDINGS</u>

(June 23, 2005)

1      THE DEPUTY CLERK:  Everyone rise.

2      THE COURT:  Be seated, please.  Good morning, Ladies

and Gentlemen.  Call the case, please.

THE DEPUTY CLERK:  MDL 1657, In Re: Vioxx.

THE COURT:  Counsel, make your appearances for the

record.

MR. SEEGER:  Good morning, Your Honor.  Chris Seeger

for the plaintiffs.  I'm going to be playing Russ Herman today.

MR. WITTMANN:  Phil Wittmann, Your Honor, liaison

counsel for the defendants.

THE COURT:  I understand we have some counsel on the

phone.  Who is that?

MS. SOTOODEH:  Pamela Sotoodeh in Chicago.

MS. KOPELMAN:  Richard Kopelman of Decatur, Georgia.

THE COURT:  Good morning.  This is our monthly status

conference.  I have received from the liaison counsel the

proposed agenda.  We will take the items in order.  The first

is LexisNexis File & Serve.  Let me have a report on that.

MR. SEEGER:  Judge, we continue to have problems with

LexisNexis.  We are having problems getting documents posted

and served.  On the other end, they're having problems

identifying firms that are already previously registered.  We

have got some calls set up with them to try to work through

M0012Z5536

Exhibit 1

Page 2 of 27

3

1  some of these issues.  We are hoping to be able to do that.

2          THE COURT:  Let's get them in person in the court.

3  Let's do it next week.  I will get my staff to give you a day.

4  I would like to see LexisNexis here, the president of the

5  company, or somebody who can talk with me about any problems.

6  I would like you all present to get this resolved.  We need to

7  go on line as quickly as possible.  We don't have time to have

8  to rely on surface mail.  There are too many people in this

9  case.  It really needs to be worked out.

10          I'm a little disappointed because LexisNexis

11  just took this over.  I've had some experience with the people

12  from whom they bought this company and we didn't have any

13  problems with the prior group.  I don't know why LexisNexis --

14  a bigger outfit, more resources -- is having problems when the

15  earlier group did not, so maybe they can help me understand

16  that.

17          MR. SEEGER:  We will make arrangements to bring them

18  in.

19          THE COURT:  Thank you.

20          MR. WITTMANN:  Yes, Your Honor.  We have not had

21  problems with LexisNexis.  It seems, from the defendants'

22  standpoint, to be working okay.  The few issues that have come

23  up, we have dealt directly with their representatives and they

24  have been responsive to our requests, so we are satisfied.

25  It's going okay from our standpoint.

M0012SS37

Exhibit 1
Page 3 of 27

4

1              If the Court please, we might give the folks a

2    statistical background on what's happening in the MDL at this

3    point.  As of June 15, we had 907 cases in the MDL.  Although

4    some of those cases have not yet been served on Merck, they are

5    here, 907 of them.  There are over 700 Vioxx products liability

6    cases served and pending in federal court but not yet here.

7    There are over 170 cases served and pending in state courts

8    other than New Jersey and California.  There are over 1,900

9    cases served and pending in the New Jersey consolidated

10   proceeding.  There are approximately 180 cases pending in the

11   California state court, and those cases involve approximately

12   1,000 plaintiffs.  That's our statistical update.

13              THE COURT:  What about the numbers of class actions?

14              MR. WITTMANN:  Class actions I believe are 118.

15   That's up about eight from our last status conference.  We

16   either have provided or will provide copies of the additional

17   class action complaints to plaintiffs' counsel.  Their deadline

18   for filing the master complaint, incidentally, is August 1.

19              THE COURT:  Trial settings.

20              MR. WITTMANN:  Yes, Your Honor.  The first case that

21   we know that's set for trial is the Ernst case in Brazaoria

22   County, Texas, on July 11, 2005.  We have a case in New Jersey,

23   the Humeston case, which is set on September 12, 2005.  The

24   Guerra case is set for trial in Hidalgo County, Texas, on

25   September 19, 2005.  The Zajicek case is set for trial in

M001225538

Exhibit 1
Page 4 of 27

5

1    Jackson County, Texas, on September 26, 2005, but we are told

2    that's likely to be continued over to the first quarter of

3    2006.  The Tomlin case is set for trial in Florida in St. Lucie

4    County sometime between October 3 and December 30, 2005.  That

5    exact date has not been fixed yet.  In addition to that, we

6    have a hearing set in the Engineers case in New Jersey on

7    June 30 to determine whether the court will certify a

8    nationwide case of third-party payors.

9              THE COURT:  One of the challenges, from the

10   standpoint of the MDL, is to deal with cases not only

11   throughout the country in the federal system, but also cases

12   that are in the state system.  One benefit of the MDL is

13   consistency and uniformity.  The significance of uniformity and

14   consistency in the large numbers of cases is to allow you

15   folks, who are the lawyers in the cases, to be able to get a

16   read on matters so that hopefully you can evaluate the cases

17   and see whether or not there's any shorter way of dealing with

18   it, namely settlements or dealing with it in some motion way or

19   other evidence.  Consistency or at least predictability is one

20   of the benefits of trials.

21             My concern oftentimes, if there are trials in

22   various jurisdictions, is that it doesn't afford the same

23   consistency if you had it in one jurisdiction, wherever it is.

24   It just gives you some more consistency and, therefore, more

25   predictability, and you're able to then learn from that

Exhibit 1
Page 5 of 27

7

1    representative or that's not ready to be tried.  It's going to

2    hurt the rest of your cases.  Let's be conscious of that.

3         MR. WITTMANN:  I think, in response to Chris' point,

4    we have been talking about Ernst and Humeston for a long time

5    now.  I thought I had given that information to Russ, but we

6    will make sure he has it from now on.

7         THE COURT:  Talk to me about trial dates for the

8    cases here.

9         MR. WITTMANN:  Trial dates here, Judge, Mr. Herman

10   and I have been meeting and working on it ourselves.  More

11   recently than that, Mr. Marvin has been meeting with Mr. Seeger

12   and others on the plaintiffs' steering committee to try and get

13   a pool of cases from which we can select cases for trial here

14   in the Eastern District.  I would like to let Mr. Marvin

15   address that since he has been more familiar with the recent

16   negotiations than I have.

17        THE COURT:  Okay.

18        MR. MARVIN:  Good morning, Your Honor.  Your Honor,

19   we have identified two pools of cases that could yield cases

20   for early trials.  The first pool could come from the Eastern

21   District of Louisiana, where there are approximately 40 cases

22   presently on file.  What we would need to do for those cases is

23   to have a short schedule for submission of the plaintiff fact

24   sheets so that both plaintiffs and defendants could look at

25   those cases and make some selections from those cases.

M001225541

Exhibit 1
Page 6 of 27

8

1        A second pool of cases, though, could come from
2   cases that have already been filed in the federal court and,
3   indeed, were filed even before the establishment of this MDL.
4   Discovery in a number of those cases has proceeded, and some to
5   an advanced stage.  There are approximately 40 cases, for
6   example, where requests for interrogatories have been made,
7   answers have been given, plaintiff fact sheets have been
8   submitted, and medical records collected.  That's an important
9   matter because collection of medical records could take several
10  months.  So we do have 40 cases where we think that, working
11  with the plaintiffs, we can identify those cases.  Those cases
12  would have objective criteria for the selection of those cases
13  because of the advanced discovery and, indeed, we would be
14  prepared to send our list of cases that we think would fit that
15  criteria within the next five days.
16        THE COURT:  Let's do that in five days, then let me
17  hear from the plaintiffs in five days, and then we will meet
18  and pick the cases.  The Eastern District cases I can try here.
19  The other cases that are put in from other states, even in the
20  federal system, in view of the Lexicon case I may have
21  difficulty trying them unless there's some stipulations.  I can
22  do it in one of two ways.  I can either try them with the
23  stipulations here or I can go to the area that the case
24  emanates from.  An MDL judge sits throughout the country and is
25  able to do that.  I can go to the other area.

M00122554-2

Exhibit 1
Page 7 of 27

9

1          The thing that you both have to look at is the
2    Circuit that you are dealing with because if I try them here,
3    even with stipulations, my understanding is the Fifth Circuit
4    will take the case from me in the appeal.  If I try them in
5    another area, the circuit in that area will try it.  I don't
6    know whether it's good or bad or whether people have feelings
7    one way or the other, but at least that's something for both
8    sides to consider when we talk about those cases.
9          MR. MARVIN:  Fair enough.
10          THE COURT:  Also, logistics, if I'm going to go some
11    other place, that area needs to know I'm going to be there, the
12    court space and the Marshals Service and things of that nature.
13          MR. MARVIN:  Thank you, Your Honor.  Once that list
14    is completed, we will continue working with the PLC to review
15    that list and hopefully come up with some cases.
16          THE COURT:  After five days, if the plaintiffs can
17    get to me, I'll set a meeting.  I will see both of you and pick
18    the cases.
19          MR. SEEGER:  Judge, just a couple of brief comments
20    on this.  We are all for getting a case scheduled for trial as
21    soon as possible.  We like the November/December timeframe.
22    I'm not one of those lawyers and I don't think the attorneys on
23    the PSC are lawyers that believe we have to turn over every
24    document and every stone before we start trying a case.
25    However, I do want to make the Court aware of the fact that we

M001225543

Exhibit 1
Page 8 of 27

10

1   are trying to get discovery from the FDA and some third parties

2   and some remaining discovery from Merck that we would like to

3   get.

4          THE COURT:  The early cases, if we are going to push

5   then as quickly as we can to make them meaningful, it's not

6   just to try the cases.  It's to give both of you some idea of

7   how a jury feels about that particular case.  First, I need

8   cases that are ready for trial.  It's not going to do you any

9   good to try a case that's not ready for trial because whatever

10  the verdict is, somebody is going to have an excuse for it and

11  say, "Well, but for it being ready, it would have been

12  different," that sort of thing, whatever it is.

13             Secondly, I would like you to give some thought

14  to grouping them.  If we are dealing with death cases, I don't

15  want to try all death cases because there are personal injury

16  cases, so we ought to try some cases that will give you some

17  benefit from the jury's view of that particular case.  We need

18  cases that are ready and we need some variety.

19         MR. SEEGER:  Thank you, Judge.  With your comments in

20  mind, we will be talking with the defendants about potentially

21  a pool.  We will be proposing cases, as well.  Thank you.

22         THE COURT:  Thank you.  Class actions is the next

23  item on the agenda.

24         MR. WITTMANN:  Yes, Your Honor.  I have really

25  covered that already.  I think it's on track in accordance with

M00122554

Exhibit 1
Page 9 of 27

11

1    the Pretrial Order governing class actions, and the plaintiffs

2    are due to file their master complaint or complaints by

3    August 1.

4            THE COURT:  Okay.  The discovery directed to Merck.

5            MR. WITTMANN:  Yes, Your Honor.  There are a couple

6    of facets to that.  First of all, I don't think your Pretrial

7    Order on the individual cases is generally available yet, but

8    we have submitted an agreed Pretrial Order to you on the

9    individual cases.  I understand you have signed it, but it

10   hasn't been posted yet.

11           THE COURT:  I have signed it, yes.

12           MR. WITTMANN:  There are two parts to that order.

13   The first part deals with the actual procedure for filing

14   motions and dealing with that process in the MDL.  The second

15   part, which we suggested be designated "Pretrial Order __ A,"

16   if you recall, dealt with the actual review of prior discovery

17   produced by Merck in other cases.  That process is ongoing.

18   The protocol for doing that is established by that Pretrial

19   Order and the parties are doing that now, even as we speak, up

20   in New Jersey.

21               We don't have any problems with respect to the

22   documents that have already been produced and the depositions

23   that have been taken.  Those are being made available to the

24   plaintiffs' steering committee, and so far as I know that

25   process is going on without any problem.  We have some

Exhibit 1
Page 10 of 2

12

1   significant disputes with respect to the additional discovery

2   propounded by the plaintiffs' steering committee, both the

3   interrogatories and the document requests.  It's our belief

4   they are overly broad.  We have made that clear to the

5   plaintiffs' liaison counsel and plaintiffs' steering committee.

6   The parties have been working, trying to narrow those requests

7   to take into account the extent of which those requests are

8   duplicative of materials produced in other proceedings which

9   are being made available up in New Jersey.

10          We have set, by agreement with the plaintiffs'

11  steering committee, I think a deadline of July 5 by which to

12  complete that meet-and-confer process to try and narrow down to

13  see if we can agree on what additional materials will or will

14  not be produced.  If we are unsuccessful, then we will be in to

15  see Your Honor, I think, within 10 days after that.

16          THE COURT:  Let me just make a couple of comments on

17  the discovery part.  Discovery, particularly paper discovery,

18  is supposed to be helpful and not just stumbling blocks.  The

19  purpose of discovery is to help you try your cases or get ready

20  for trial.  If you get so tied into discovery, it gets to be so

21  voluminous and so time consuming and so burdensome that it saps

22  not only your energy, but your resources and your thinking and

23  sidetracks you, it is not good.  It's got to be helpful.  It

24  can't be just, "Let's get it because it's there," "Let's not

25  give it because we have got it."  It's got to be helpful.

M00122554G

Exhibit 1
Page 11 of 27

13

1          My thinking on discovery is that you all first

2    meet and share with each other a draft of what you need and

3    discuss it.  If you can arrive at an agreement, that's fine.

4    If you can't arrive at an agreement, then before it's in final

5    form, talk to me about it.  I'll tell you what my ruling will

6    be so we don't have to go back and forth.  The plaintiffs don't

7    have to wait for 30 days to get a response, which is an

8    objection, and then they have to wait for another 30.  We don't

9    have time to do that, so we have to streamline it.  Get

10   together and see what you agree on.  I don't have to be brought

11   into the agreement.  The disagreements, bring me in and I will

12   resolve the disagreements.  We will do it as quickly as we can.

13          MR. WITTMANN:  Your Honor, are you saying that during

14   the course of our negotiations, if we do reach some impasse,

15   that you would welcome a conference call?

16          THE COURT:  Get it to me right there and I'll resolve

17   the controversy.

18          MR. SEEGER:  If Russ were here, he would have a great

19   quote from William Shakespeare something to the effect, "I've

20   never met a defendant that said a discovery request wasn't

21   burdensome," but having said that --

22          THE COURT:  I'm sure Shakespeare said something like

23   that.

24          MR. SEEGER:  In New York there's a guy named

25   Shakespeare who said something along those lines.  The truth is

M00122547

Exhibit 1
Page 12 of 27

14

1    we served discovery.  Merck has asked for a little bit more

2    time to continue discussing it.  We are going to do that.  We

3    are anxiously awaiting their response.  There are no real

4    surprises in what we are asking for.  As you said, Your Honor,

5    the case is being litigated.  It has been litigated for a

6    while.  I think we all know what we need.

7              THE COURT:  Again, if you have already got some

8    material, let's work out something that if you've got it they

9    don't need to reproduce it.  I know that sometimes you receive

10   some material that's case specific and this is noncase

11   specific, so you may need to go outside of that.  If you have

12   got it, let's get on to something else.  The Pretrial Order

13   governing individual cases.

14             MR. WITTMANN:  Yes, Your Honor.  You have those now.

15   There are actually two Pretrial Orders.  One relates to the

16   production of documents in other cases, which is really a part

17   of the Pretrial Order for the individual cases.

18             THE COURT:  I have that.  I signed it.  It should be

19   posted.  Merck employee information is the next item.  I have

20   briefs on that.  I've set next Wednesday at 2:00 to have a

21   hearing on that oral argument on that question.  The next item

22   is discovery directed to the FDA.  How are we with that?  We

23   had some misunderstandings.  I got the FDA on the phone and

24   everybody was able to talk about it.  I had the opportunity to

25   express my views.  I haven't heard on it formally since then.

M0012255-48

Exhibit 1

Page 13 of 27

15

1        MR. SEEGER:  Your Honor, my co-lead counsel,

2    Andy Birchfield, met with the FDA, so he is going to address

3    this issue.

4        MR. BIRCHFIELD:  Your Honor, Russ Herman, Troy

5    Rafferty, and I met with the FDA with their counsel and with

6    the U.S. attorney Sharon Smith at the FDA headquarters in

7    Rockville, Maryland.  We discussed the items on the subpoena

8    and we were able to reach agreement on a number of those

9    issues.  We have continuing dialogue on some of the others.

10   The important thing was that we were able to at least get the

11   discovery process, the review process, and the production

12   process moving while we are continuing dialogue.  They have

13   agreed to provide us with the first page of the documents that

14   were produced in Congress so we can review those and identify

15   which ones we actually need.  They have also agreed to start

16   the production.  We expect by the end of July to get the

17   initial production.  They will continue that on a rolling

18   basis.  We are making considerable progress on the FDA

19   production.

20       THE COURT:  I should express the Court's appreciation

21   to the chair of the FDA.  I appreciate his help.  He should

22   know that I am obliged to him for getting involved in this

23   matter and helping us move forward.  I do publicly appreciate

24   his help.

25       MR. BIRCHFIELD:  One other thing on that.  Merck,

M0012255-49

Exhibit 1

Page 14 of 27

16

1    Ben Barnett, was also there.  There is cooperation there.  They

2    are agreeing to provide a list of documents that are between

3    the FDA and Merck so we can review that list and determine

4    which ones need to be produced and which ones we already have.

5              THE COURT:  Thank you very much.  Discovery directed

6    to third parties is the next item.

7              MR. SEEGER:  Your Honor, we are in the next couple of

8    days going to get out probably about a dozen or so subpoenas to

9    third parties.  We are going to try to stage it in a way so we

10   do it in phases, but at this point there's not much to report

11   other than we are going to get the subpoenas out.

12             THE COURT:  Let's keep that on the agenda so that you

13   can talk to me about it next time.  We really ought to work

14   through that.  That's an important part.  Deposition

15   scheduling.

16             MR. WITTMANN:  The first and third weeks of the

17   month, Judge, were set by prior Pretrial Order.  We had sent a

18   request to the plaintiffs' steering committee last week asking

19   that depositions be set in some of the Louisiana cases starting

20   the first week in July or, alternatively, the third week in

21   July, depending upon what they were able to pull together from

22   their clients.  We left the selection of the plaintiffs to be

23   deposed to the plaintiffs' steering committee because we are

24   trying to accommodate the individual plaintiffs and not just go

25   out and arbitrarily pick dates and select them.  Your Honor has

M001225550

Exhibit 1

Page 15 of 27

17

1    told us in our prior Pretrial Order that we are to cooperate in

2    trying to arrange a mutually agreeable date before running out

3    and setting depositions by notice.

4        We have not heard back. I understand from the

5    plaintiffs' steering committee this morning that the cases that

6    we have selected may not be suitable for the early trials in

7    this Court, so we are waiting to get a list, really, of the

8    cases that we think will go forward for an early trial and will

9    set them for deposition as soon as we can.

10        THE COURT: Okay. Let's keep an eye on prioritizing.

11   There's some issues that might cut across the spectrum. You

12   may want to take depositions of individuals that have something

13   to say about the general theories so they will be significant

14   in each case, but with regard to case-specific discovery I

15   think you should focus on the cases that we select for trial

16   and do those. Now, that doesn't mean that you only have to

17   have one wave of depositions. You can have a couple of tracks

18   going on. You have to be able to do several tracks at the same

19   time in a case like this.

20        MR. SEEGER: You just anticipated my comments. We

21   think that the depositions of plaintiffs should somehow

22   dovetail with what we are doing on trial schedules, although I

23   would like to correct the record. I don't have any opinion on

24   whether cases by any other lawyer are appropriate for trial or

25   not. I think we have to come up with a criteria for selecting

M00122SS51

Exhibit 1

Page 16 of 27

18

1    cases that will inform decisions that may be made down the road

2    between the parties.

3         THE COURT:  The next item is the plaintiffs' profile

4    form and Merck's profile form.  I understand from the parties

5    that with regard to the plaintiffs' profile form they have

6    reached an agreement.  On Merck's profile form, they have not

7    reached an agreement.  Each side submitted to me their

8    disagreements and I have resolved the conflict.  I'll be today

9    putting out the defendants' profile form that will be used in

10   this case.  That will be resolved.

11        Also, with the profile forms of both sides, it

12   seems to me that we ought to do that in waves.  The first wave,

13   I would like both the plaintiffs and the defendants to focus on

14   and limit the forms to the cardiovascular events -- the

15   myocardial infarctions, the ischemic strokes, the deaths -- and

16   then shortly thereafter, when we get some experience with those

17   forms and with filling them out and any problems, in resolving

18   those problems we ought to be able to step it out quickly to

19   the second wave, which may not require as detailed information.

20   It seems to me to be the best way of doing it.  I put some

21   handwritten notes on this form and I will simply adopt it in an

22   order and give you my thinking on that particular form.  The

23   plaintiffs will have to redraft the form and submit it.

24   Medical records from healthcare providers is the next item.

25        MR. SEEGER:  Judge, I think that we have agreed on a

M001225552

Exhibit 1
Page 17 of 27

19

1   procedure for having medical records posted online almost
2   identical to what we are doing in New Jersey for plaintiffs'
3   lawyers as well as defense counsel to have access to records in
4   a secure way.  I think that's been accomplished.
5          MR. WITTMANN:  That's correct, Your Honor.
6          THE COURT:  Contact with claimants' healthcare
7   providers.  That's the subject of another motion.  I received
8   briefs for reconsideration on that issue.  I'll be hearing that
9   in oral argument on Wednesday, also.  The plaintiffs'
10  depository is the next item on the agenda.
11         MR. SEEGER:  We are happy to report we are up and
12  running.  We have got it staffed and it is available to
13  plaintiffs' lawyers who want to come look at documents and
14  contribute to the document review.  We welcome the help.
15         THE COURT:  Talk with the defendants.  If they have
16  no objection, I would like to at least look at the depository,
17  if that's possible, just see that it's up and running and so
18  forth.
19         MR. WITTMANN:  That's no problem, Judge, whenever
20  counsel wants to set it up.
21         THE COURT:  Set it up and we'll take a look at it.
22  The confidentiality agreement is the next one.
23         MR. WITTMANN:  That's been signed.  Your Honor, I
24  haven't had any problems with it.  We had one question as to
25  whether some of the material that was attached to I believe the

M001225553

Exhibit 1
Page 18 of 27

20

1    brief filed by the state liaison committee may have contained

2    some confidential information.  I don't believe it really did,

3    but the time hasn't yet run for us to designate.  We are still

4    looking at that.  We may have some comment about it.  I don't

5    think it's a major problem.

6             THE COURT:  That's an issue always of concern and

7    it's a balancing issue.  It's a balancing issue between the

8    First and Sixth Amendments.  The First Amendment, of course,

9    the right of the public to know, it's vital in a democracy that

10   the public know.  It's also vital in a democracy that people

11   have every right to a fair trial.  There's some conflict

12   occasionally between the First and the Sixth Amendment.  The

13   way that it's worked out, in my judgment, in a fair way is to

14   not deprive the public of a right to know, but perhaps delay

15   the public's information, unless it is a critical type of

16   information which is necessary for immediate knowledge.

17            I'm focused, instead, on the right to a fair

18   trial for both sides, and there is certain proprietary

19   information in these documents that drug companies

20   realistically and legitimately get concerned about releasing,

21   proprietary information that could affect their present or

22   future business practices.  I am conscious of the public's

23   right to know, but I am also conscious of the fact that if I

24   don't have a confidentiality order, then it delays the

25   discovery and delays trials and delays justice.  I have dealt

M001255554

Exhibit 1
Page 19 of 27

21

1    with this issue in that fashion.  We have a confidentiality

2    agreement which will allow the defendants comfort to produce

3    certain information without fear that their future economic

4    security is in jeopardy.  The remand issues.

5            MR. SEEGER:  Judge, that's in the report.  You are

6    going to be dealing with remand motions as a group by

7    procedures that you will be setting up.

8            THE COURT:  Right.  This is always an issue which the

9    MDL Court has to look at.  The question is posed.  There are

10   various issues of remand in various cases throughout the

11   country.  Again, a significant advantage of the MDL concept is

12   some consistency.  The Rule of Law is really based on

13   consistency.  If different decisions are made by numerous

14   judges, then you have no consistency and no predictability and

15   no one knows exactly what to do or how to do it.  It's easier

16   if one court decides some of these matters than if 50 or 100

17   courts decide the matter.

18            I'm conscious of dealing with the remand as

19   quickly as possible, but I do want to get them all together,

20   look at them, see if I can group them in some way, and then

21   direct my attention on each particular group and deal with that

22   issue in a consistent and fair fashion for that group.  I will

23   be dealing with them as quickly as I can, but also with an idea

24   of having more consistency.  I'll be speaking about this

25   perhaps later on because I do have some concepts and ideas

M001225555

Exhibit 1
Page 20 of 27

22

1  about this.  Tolling agreements is the next item.

2         MR. SEEGER:  Judge, just to report that we have

3  accomplished our goal.  It was a long negotiation, but we got

4  it resolved.  Both sides have compromised and agreed on a

5  tolling agreement.  It seems to be working.  We are getting

6  cases in.

7         MR. WITTMANN:  The agreement was filed, I guess, on

8  the 9th of this month, so it's just recently been filed, but

9  we are starting to get people taking advantage of it.  We are

10  getting the short form exhibits mailed in.  We have a procedure

11  set up by the defendants to respond to those exhibits as they

12  come in.  We are keeping a record of them so we know exactly

13  where we stand with respect to the people who have elected to

14  go forward on the tolling agreements, Your Honor.

15         THE COURT:  I appreciate the help on both sides on

16  the tolling agreements.  I think it's good for each side.  I

17  think there's different advantages, but advantages for each

18  side, and I think it will be helpful to you.  Certainly, I

19  think it will be helpful to the litigants.  The next item is

20  state/federal coordination.  State liaison committee, are there

21  things that you want to say?

22         MS. BARRIOS:  Yes, Your Honor.  We have been fairly

23  active since our last meeting here.  At the Court's order, we

24  were allowed to file a brief on the issue of the Merck employee

25  information.  We did that and I question, Your Honor, if you

M001225556

Exhibit 1

Page 21 of 27

23

1   would like us to be present at the hearing on Wednesday to make

2   a presentation?

3              THE COURT:  Sure.  You are always welcome to

4   participate in a hearing.

5              MS. BARRIOS:  Thank you, Your Honor.

6              THE COURT:  I'm interested in your views.  I have

7   looked at the brief.  A lot of it has already been said.  I

8   don't think I need any response from the defendants on it.  I

9   think you have covered it in your particular response.  Let's

10  keep that in mind.  I know that oftentimes you see matters in

11  the same fashion as perhaps the plaintiffs' steering committee.

12             MS. BARRIOS:  Yes, Your Honor.

13             THE COURT:  If you do, just "Me, too" it.  I don't

14  need you to restate it.  That's sufficient.  If you see it in a

15  different light, just carve that out.  If I need some response,

16  I will direct the defendants to give me a response on it.

17             MS. BARRIOS:  Yes, sir.  We have no intention of

18  being duplicative.  With the cooperation of Mr. Wittmann's

19  office and Mr. Herman's office, we have received a roster of

20  over 700 plaintiffs' attorneys names.  We sent out our first

21  very lengthy newsletter detailing the orders, the web site,

22  etc.  We have gotten extremely good feedback from different

23  plaintiffs' attorneys across the country on it.  We have had

24  several conference calls with our committee.  Mr. Witkin on our

25  committee made a presentation at the Mealey's seminar about the

M0012255557

Exhibit 1
Page 22 of 27

24

1    MDL yesterday.  We met with the PSC last night and look forward

2    to working with them to reserve the rights of the plaintiffs'

3    attorneys and their clients.

4            THE COURT:  I appreciate all of your interest and

5    work and willingness to work on the committee.  It's very

6    important.  I know there's some interests that are different.

7    That's the way of the world.  There's some joint interests and

8    so rather than reinvent the wheel and do things a second time,

9    third time, fourth time, it is helpful for you to be in the

10   development of it so that you can just migrate that information

11   into your proceedings so you don't have to redo it again.

12           MS. BARRIOS:  Yes, Your Honor.  Thank you.

13           MR. SEEGER:  From the PSC's perspective, we have

14   enjoyed the working relationship with the committee.  We think

15   the lawyers on the committee are of extremely high quality.

16   They have been proactive in anticipating issues.  We welcome

17   their input on anything we do.  We did have dinner last night,

18   had a chance to talk through some important issues before we

19   poured the first bottle of wine -- which was helpful -- and we

20   are looking forward to the continued cooperation between our

21   committee and theirs.

22           THE COURT:  The waiver of service is the next item.

23           MR. WITTMANN:  Yes, Your Honor.  You have the

24   Pretrial Order in effect on that.  I think it's Pretrial

25   Order 15, and we haven't had any problems.

M001255658

Exhibit 1
Page 23 of 27

25

1        THE COURT:  The next item is direct filing into the

2    MDL.  Ms. Loretta Whyte was kind enough to meet with us earlier

3    today to discuss that in more detail.  The issue, of course, is

4    whether or not the party who files directly into the MDL should

5    have the MDL caption or should have their independent caption.

6    Ms. Whyte tells us that the best way of doing it, from her

7    vantage point, is to have an individual caption just as you

8    would if you file a regular case, but put on that "Related

9    Case, MDL" and give the number.  She will then migrate it into

10   the MDL proceedings.  That will be the best way of doing that.

11   Is that right, Ms. Whyte?

12        MS. WHYTE:  Yes.

13        MR. SEEGER:  There's one thing on that issue that's

14   important to note for people reading the transcript.  There's

15   been some confusion whether the lawyers need to be admitted

16   pro hac to file cases.

17        THE COURT:  They do not need to be admitted pro hac.

18   I have waived that.  Anybody who's in the MDL or has a case in

19   the MDL is able to handle a matter.

20        MR. SEEGER:  Just to be clear, Ms. Whyte, the cases

21   that get filed must mention the Vioxx MDL and that it's a

22   related case?

23        MS. WHYTE:  It's a related case.

24        THE COURT:  Anything further on that?  Pro se

25   claimants.

M001225559

Exhibit 1
Page 24 of 27

26

1        MR. SEEGER:  Well, Your Honor, we have been referring

2    what we have been getting from the Court to our plaintiffs'

3    liaison counsel and these are being dealt with.

4        THE COURT:  I think we have a system of doing it.  So

5    far most of the pro se claimants have been individuals who have

6    not been able to be personally present at these meetings.  They

7    are generally incarcerated some other place and can't make it

8    here, so they need a lawyer.  They have expressed their

9    interest in being represented, so I have given that to liaison

10   counsel.  I understand that what they do is contact lawyers in

11   the state of that particular institution and make those lawyers

12   available to them, or at least tell them that they would be

13   available.  That seems to be working.

14       Anything further from anyone that I haven't

15   covered before I set the next status conference date?  Anything

16   either from the state committee, liaison committee, or anyone

17   in the audience?  I'm interested in hearing your views.

18       MR. WITTMANN:  Nothing from the defendants,

19   Your Honor.

20       MR. SEEGER:  Nothing further from plaintiffs,

21   Your Honor.

22       MS. BARRIOS:  Nothing further.

23       MR. BECNEL:  Judge, I have a lawyer who has referred

24   me 160 cases from Oregon.  I have dealt with Mr. Wittmann's

25   associate, Ms. Wimberly.  He wants to bring them all here, but

Exhibit 1

Page 25 of 27

27

1    because of the peculiar law in Oregon he is starting to have to
2    file them right away in Oregon. I'm trying to get some sort of
3    a deal with the defendants to get them all here without missing
4    a statute problem. I'm just wondering how we can work that
5    out.
6         MR. WITTMANN: We are working that out now, actually,
7    Your Honor, with a procedure for the filing of a master
8    complaint in the MDL that will permit people to come in and tag
9    along and sign on with the short form joinder pleading, which
10   should take care of Mr. Becnel's problem.
11        THE COURT: Mr. Seeger, get with Mr. Becnel and see
12   if we can handle this particular problem.
13        MR. SEEGER: Yes, Your Honor.
14        MR. GIRARDI: Tom Girardi, Your Honor.
15        THE COURT: Mr. Girardi.
16        MR. GIRARDI: Your Honor, we now have a state court
17   judge for the 2,000 cases in California. I will provide you
18   with that contact information, Judge Chaney.
19        THE COURT: Please do that because I am trying to
20   keep in touch with the state court judges. When we begin
21   setting some Daubert hearings or other hearings, if they wish
22   to come in the case, we will do either the voice or do video
23   streaming so that they can participate and deal with it
24   according to their law, but they won't have to retake the
25   witnesses. If they have any questions, they can ask the

M001225561

Exhibit 1
Page 26 of 27

28

1    questions while the witnesses are there, so I would like to

2    know that.  Thank you.

3         MR. SEEGER:  Just for the record, if I could ask

4    Mr. Girardi to copy liaison counsel on that?

5         MR. GIRARDI:  Yes.

6         THE COURT:  Anything else?  The next status

7    conference is Tuesday, July 19, 9:30.  I'll meet with the

8    liaison counsel in my chambers at 8:00 that day to begin

9    getting ready for this meeting.  I appreciate everybody's

10   cooperation and for their reports.  Thank you.  Court will

11   stand in recess.

12        THE DEPUTY CLERK:  Everyone rise.

13        (WHEREUPON, the Court was in recess.)

14                          * * *

15                       CERTIFICATE

16        I, Toni Doyle Tusa, CCR, Official Court Reporter,
     United States District Court, Eastern District of Louisiana, do
17   hereby certify that the foregoing is a true and correct
     transcript, to the best of my ability and understanding, from
18   the record of the proceedings in the above-entitled and
     numbered matter.

19

20

21                          _Toni Doyle Tusa_
                            Toni Doyle Tusa, CCR
22                          Official Court Reporter

23

24

25

M0012255

Exhibit 1
Page 27 of 27