# EXHIBIT 4

FILED

OCT 0 4 2005

EDDIE JEAN CARR, CHANCERY CLERK

BY_____ D.C.

**IN THE CHANCERY COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY, MISSISSIPPI**

**JIM HOOD, ATTORNEY GENERAL** *ex rel.*,
**STATE OF MISSISSIPPI**

**PLAINTIFF**

v.

CIVIL ACTION NO.: G2 MS - 1742 w/y

**MERCK & CO., INC.**

**DEFENDANT**

## COMPLAINT

The State of Mississippi, through Attorney General Jim Hood, brings this action for monetary damages, civil penalties, declaratory and injunctive relief, restitution, disgorgement of profits and punitive damages on behalf of the State of Mississippi, and on behalf of Mississippi citizens who have paid for the prescription drug Vioxx®, manufactured and marketed by the Defendant, Merck & Co., Inc., as more fully described below:

## INTRODUCTION

1.      Defendant, Merck & Co., Inc., ("Merck"), has defrauded the State of Mississippi, its agencies and instrumentalities, by knowingly issuing false and misleading statements in order to induce the State, its agencies and instrumentalities to purchase its drug VIOXX®.

2.      VIOXX® is a Cox-2 specific inhibitor used in the treatment of inflammation and pain and is among the class of drugs known as NSAIDs. Traditional NSAIDs inhibit both Cox-1 and Cox-2 enzymes. Cox-1 enzyme is believed to have a protective effect on the gastrointestinal system and the traditional NSAIDs were known to pose a risk of ulcer and other gastrointestinal problems. It is alleged herein that Defendant, misrepresented that VIOXX® had a significantly reduced risk of these side effects.

3.      VIOXX® was promoted and marketed by Defendant, Merck & Co., Inc., ("Merck") as much safer and more effective drug than the much cheaper NSAIDs already on the

market. In reliance on these claims by Defendant, agencies and instrumentalities of the State approved the inclusion of VIOXX® as a preferred prescription drug and agreed to pay for use of VIOXX® by beneficiaries and members. Defendant initially misrepresented the safety of the drug in order to obtain a position on the State's prescription drug formularies, so that it would be able to obtain a large share of the market for these types of drugs.

4.      Defendant's representations that VIOXX® was safer than traditional NSAIDs was false, and despite its marketing and promotion as a safer alternative to traditional NSAIDs, VIOXX® also posed a risk of ulcers and gastrointestinal side effects. Moreover, VIOXX® produced a high rate of cardiovascular events, including heart attacks and strokes, and Defendant intentionally failed to disclose the level of risk of cardiovascular events caused by the drug.

5.      Defendant was aware that by their false and misleading marketing and sales practices they would be able to prevent Mississippi agencies and instrumentalities and Mississippi physicians and its citizens from discovering, through reasonable diligence, the true risks associated with the ingestion of VIOXX®.

6.      Fair and honest marketing of pharmaceuticals is a matter of great importance to the State of Mississippi and its citizens. Mississippi spends millions and millions of dollars each year on prescription drugs under its prescription drug programs. Expenditures by the State and its agencies and instrumentalities for prescription drug reimbursement have increased dramatically in the past several years as a result of Defendant's marketing schemes.

7.      Plaintiff, the State of Mississippi (the "State"), by and through Mississippi Attorney General Jim Hood, brings this action:

(a)      to recover amounts paid for the drug VIOXX® by the State, through its agencies and instrumentalities, as a result of the fraudulent conduct of Defendant;

- 2 -

M00171?2546

Exhibit 4
Page 2 of 64

(b)   to recover the amounts the State has paid for its percentage share of VIOXX®, on behalf of the Mississippi citizens who are eligible for Medicaid;

(c)   to recover the costs incurred by the State through its agencies and instrumentalities, relating to the medical treatment rendered to beneficiaries of State programs, and reimbursed by the State, as a result of the ingestion of VIOXX®; and

(d)   to enjoin Defendant from continuing to perpetrate these marketing practices, to require Defendant to publicly disclose the true and actual risks of its drugs to potential users and purchasers, and to impose civil penalties against Defendant for its fraudulent practices.

## PARTIES

8.   Mississippi Attorney General Jim Hood is authorized to bring this action on behalf of the State under the Mississippi Constitution of 1890, pursuant to Mississippi statutes providing for certain of the causes of action herein, including, among others, § 7-5-1, Miss. Code Ann. (1972) and § 43-13-1 through § 43-1-145, Miss. Code Ann. (1972), as well as by common law.

9.   Defendant, Merck & Co., Inc., "Merck" is a New Jersey corporation with its principal place of business in Whitehouse Station, New Jersey. Merck is in the business of manufacturing, marketing and selling prescription pharmaceuticals that are reimbursed by State Medicaid agencies nationwide, including Mississippi's Division of Medicaid. Numerous pharmaceuticals are sold by Merck and reimbursed by the State under Mississippi's Medicaid program, and these drugs included VIOXX®. The State, through its agencies and instrumentalities has paid millions of dollars for reimbursement of such drugs manufactured by Merck.

M00171254

Exhibit 4
Page 3 of 64

## JURISDICTION AND VENUE

10.    Jurisdiction is proper as Plaintiff alleges only claims arising under the laws of the State of Mississippi.  Venue is proper in the First Judicial District of Hinds County, Mississippi, pursuant to Mississippi statutory authority, including, § 43-13-223, § 43-13-301, § 75-24-9, Miss. Code Ann. (1972).

## FACTUAL BACKGROUND

11.    The State, through programs administered by its various agencies and instrumentalities pays for medical benefits, including prescription drugs, for qualifying Mississippians.  These programs reimburse physicians and pharmacists for drugs prescribed for, and dispensed to, qualified recipients.

12.    Reimbursement for prescription drugs under State programs are authorized by statute, for example, § 43-13-117 Miss. Code Ann. (1972).  Pursuant to statute, the State agencies and instrumentalities have adopted a list of drugs which are covered without prior authorization.  In determining which drugs will be included on the list, the administrators of the State's programs consider information provided by prescription drug manufacturers regarding the safety of the drug and the efficacy of the drug as compared to less expensive alternatives.

13.    When a drug manufacturer reports false and misleading information concerning the safety of its product, and its effectiveness as compared with less expensive alternative drugs, and/or conceals this information from physicians and the State agencies and instrumentalities, the determination made by the agencies and instrumentalities with respect to the drug's inclusion on its preferred drug list or reimbursable formulary is flawed.  These circumstances result in drug reimbursement payments to drug providers by the State of Mississippi for drugs which should not have been approved for prescription by medical providers.  At all times relevant to this

- 4 -

M000172548

Exhibit 4
Page 4 of 64

action, Defendant was aware of the State agencies' drug utilization review, approval and reimbursement formulas.

14.     Defendant provided to the State and its agencies and its instrumentalities, directly and/or through submission of reports to drug utilization review committees, what was purported to be accurate data for the Merck product, VIOXX®. In addition, Merck's intense marketing and sales efforts directed directly at the State of Mississippi, and to the general public, were carried out in such a manner as to create the false perception by the public, generally, and Mississippians, specifically, that its drug VIOXX® was safe, effective, and a better source of pain relief than other less expensive alternative medications.

15.     Defendant has affirmatively endeavored to conceal the actual nature of the drug VIOXX®, its attendant risks, and its lack of reported efficacy. As a result of this concealment, Defendant prevented third parties, including the State of Mississippi and its agencies and instrumentalities, from determining the true nature of the drug VIOXX®, and at all times relevant to this action, Defendant knew that information accurately reflecting the dangers associated with VIOXX® and its lack of substantial effectiveness as compared to other drugs was not available to the State and its agencies and instrumentalities. Defendant was aware that at all relevant times, the State's agencies used, and relied on, the information regarding VIOXX® as provided by Defendant to the State and its agencies, directly and indirectly, to determine the amounts paid for reimbursement of prescription drugs.

16.     Defendant intended that the drug information provided to the State and its agencies, both directly and indirectly, would be used by the State and its agencies to determine whether VIOXX® would be on the State's formulary, and in what amount the various State programs would reimburse pharmacy providers for VIOXX®.

- 5 -

M001712549

Exhibit 4
Page 5 of 64

17.    At all relevant times, the State, its agencies and instrumentalities had no knowledge of, and had no means of learning, the actual nature and efficacy of VIOXX®. Rather, the State, its agencies and instrumentalities obtained this information from Defendant, directly and indirectly, and reasonably relied on this information in determining the State's pharmacy benefits relative to VIOXX®.

## DEFENDANT'S FALSE AND MISLEADING STATEMENTS

**A.    1999 False and Misleading Statements.**

18.    During the time period from May 21, 1999, when VIOXX® was first introduced on the market, through December 1999, the Defendant made and/or caused to be issued numerous materially false and misleading statements and/or omissions of material facts concerning the safety and efficacy of VIOXX®, including the following:

**1.    Merck Announces FDA Approval of VIOXX®**

19.    On May 21, 1999, Merck issued a press release (the "May 21, 1999 Press Release") in which it announced that the FDA had approved VIOXX® for the relief of osteoarthritis, menstrual pain and other forms of acute pain.  Merck stated that the most common side effects reported in clinical trials with VIOXX® were upper-respiratory infection, diarrhea and nausea.  The press release stated that VIOXX® should be available in pharmacies by mid-June, 1999.  The press release failed to disclose material adverse information known to Merck concerning the cardiovascular risks associated with VIOXX®.  Defendant was aware of these risks from internal studies, including Study 090, the results of which Defendant failed to disclose to the FDA or to the public.

M001712550

Exhibit 4
Page 6 of 64

2.    **Merck Promotes VIOXX® while Purposely Failing to Disclose The Cardiovascular Risks of the Drug**

20.    On October 19, 1999, the Company issued a press release entitled "Publication shows new medicine VIOXX® relieved Menstrual Pain" (the "October 19, 1999 Press Release".)  The October 19, 1999 Press Release stated in pertinent part "Since its approval by the FDA in May, more than 2.2 million prescriptions have been written for VIOXX® in the United States, making it one of the most successful product introductions in the pharmaceutical industry's history."  The October 19, 1999 Press Release failed to disclose material adverse information known to Merck concerning the serious cardiovascular risks associated with VIOXX®.

21.    On October 25, 1999, the Company issued a press release (the "October 25, 1999 Press Release") in which the Company stated that VIOXX® "produced fewer ulcers in osteoarthritis patients than patients taking ibuprofen."  Merck announced the results of a new study showing that osteoarthritis patients taking VIOXX® developed fewer stomach ulcers than patients taking ibuprofen.  The October 25, 1999 Press Release failed to disclose the material adverse information known to Merck concerning the cardiovascular risks associated with VIOXX® that threatened VIOXX®'s medical and commercial viability.

22.    On November 23, 1999, the Company issued a press release (the "November 23, 1999 Press Release") entitled "In a Study Published in the Journal of the American Medical Association, VIOXX® Significantly Reduced Risk of Serious Gastrointestinal Side Effects Compared to Other NSAIDS."  The November 23, 1999 Press Release contained the following materially false and misleading statements and/or omissions of material fact:

> VIOXX®, the new medicine for osteoarthritis from Merck & Co., Inc., significantly reduced the risk of gastrointestinal (GI) side effects such as symptomatic ulcers and bleeding compared to three

M001712551

Exhibit 4
Page 7 of 64

commonly prescribed non-steroidal anti-inflammatory drugs
(NSAIDs), according to a new study being published in
tomorrow's issue of the Journal of the American Medical
Association.

\*\*\*

Common side-effects reported in clinical trials with VIOXX®
were upper-respiratory infection, diarrhea, nausea and high blood
pressure. People who have had an allergic reaction to VIOXX®,
aspirin or other NSAIDs should not take VIOXX®. Safety and
effectiveness in children below the age of 18 has not been studied.

    23.    The November 23, 1999 Press Release failed to disclose material adverse

information concerning cardiovascular risks associated with VIOXX®, including results of

Study 090 which concluded that VIOXX® users were 6 times more likely than non-VIOXX®

users to have severe cardiovascular events.

    24.    Each of the Defendant's statements made in 1999 concerning VIOXX® was

materially false and misleading when issued, because each statement failed to disclose

information known to the Defendant, that VIOXX® was associated with negative cardiovascular

events. The true but concealed and/or misrepresented facts included, but were not limited to:

• Merck's unpublished Study 090 concluded that VIOXX® users were 6 times more
likely to have severe cardiovascular events than users of other NSAIDS;

• Internal Merck e-mails authored in 1996 and 1997 reveal that even before the FDA
approved VIOXX® for prescription use, Merck knew of the VIOXX®-related medical
risks;

• Substantial data existed in 1999 that VIOXX® was associated with a higher risk of
cardiovascular events than other NSAIDs;

• On December 16, 1999, Merck had received the December 16, 1999 FDA Letter
admonishing Defendant for misleading the public by using deceptive promotional
materials that suggested VIOXX® had a superior safety profile to other NSAIDS, which
was not demonstrated by substantial evidence; and

• The Company could not maintain the positive VIOXX® sales results that it was
experiencing because of the known risks to VIOXX®'s medical and commercial
viability.

M00171252

Exhibit 4
Page 8 of 64

**B.    2000 Events and False and Misleading Statements**

25.    In 2000, the Defendant made and/or caused to be issued numerous materially false and misleading statements and/or omissions of material facts concerning the safety and efficacy of VIOXX®, including the following:

**1.    Merck Announces Results of VIGOR Study, But Conceals Findings of Cardiovascular Risks Associated with VIOXX®**

26.    On March 27, 2000 Merck issued a press release (the "March 27, 2000 Press Release") entitled "Merck Informs Investigators of Preliminary Results of Gastrointestinal Outcomes Study With VIOXX®." The March 27, 2000 Press Release commented upon the results of the VIGOR study previously discussed in this Complaint. In the March 27, 2000 Press Release, Merck stated that according to the VIGOR study results, "[a]mong patients treated with VIOXX®, there was a significantly reduced incidence of serious gastrointestinal events compared to patients treated with Naproxen." The March 27, 2000 Press Release also made the following materially false and misleading statements and/or omissions of material facts:

In addition, significantly fewer thromboembolic events were observed in patients taking Naproxen in this GI outcomes study, which is consistent with Naproxen's ability to block platelet aggregation. This effect on these events had not been observed previously in any clinical studies for Naproxen. **VIOXX®, like all COX-2 selective medicines, does not block platelet aggregation and therefore would not be expected to have similar effects.** As a result, Merck is notifying investigators, who are conducting other Merck studies with VIOXX® or another investigational medicine in the same class, of protocol amendments to allow the addition of low-dose aspiring where appropriate.

\*\*\*

An extensive review of safety data from all other completed and ongoing clinical trials, as well as the post-marketing experience with VIOXX®, **showed no indication of a difference in the incidence of thromboembolic events between VIOXX®, placebo and comparator NSAIDs** (emphasis added).

- 9 -

M00171255

Exhibit 4
Page 9 of 64

27.    The March 27, 2000 Press Release failed to disclose known material negative information concerning the cardiovascular risks associated with VIOXX® that threatened VIOXX®'s medical and commercial viability.  Moreover, the March 27, 2000 Press Release misleadingly and falsely attributed the higher incidence of cardiac events observed in the VIGOR study to the putative cardio protective characteristics of Naproxen.

### 3.    Merck Falsely Touts VIOXX®'s Safety Profile as "Excellent"

28.    On September 8, 2000, Merck issued a Press Release (the "September 8, 2000 Press Release") entitled "Merck Confirms Excellent Safety Profile of VIOXX®."  In the September 8, 2000 Press Release, Defendant made the following materially false and misleading statements and/or omissions of material fact:

> Merck & Co., Inc.  confirmed today that a routine report issued by the U.K. regulatory authority demonstrates the excellent safety profile of VIOXX® (rofecoxib), Merck's medicine for osteoarthritis.  The report was issued by the U.K.  Medicines Control Agency (MCA) because VIOXX® has now been available in the U.K.  for one year.  During that time, more than 550,000 prescriptions for VIOXX® were written for patients in the U.K.  The events listed were reported by physicians as events that occurred while patients were taking VIOXX®, and were not specifically attributed to VIOXX®.
>
> **Merck considers patients safety to be of the utmost importance, and we routinely monitor all of our medicines.  What was reported by the MCA confirms what we've seen in the thousands of patients in our controlled clinical trials and in clinical practice: VIOXX® has an excellent safety profile,** says Eve Slater, M.D.  senior vice president, Clinical and Regulatory Development, Merck Research Laboratories.  (emphasis added)

29.    The September 8, 2000 Press Release failed to disclose material adverse information known to Merck regarding the cardiovascular risks associated with VIOXX®, including the results of Study 090 and VIGOR which showed that VIOXX® presented a high risk of negative cardiovascular events.

- 10 -

M00172554

Exhibit 4
Page 10 of 64

30.    On November 3, 2000, Defendant issued a press release (the "November 3, 2000 Press Release") entitled "VIOXX® Significantly Reduced Pain After Dental Surgery to a Greater Degree Compared to Codeine with Acetaminophen in New Study." In the November 3, 2000 Press Release, Defendant announced the results of a study which showed that "VIOXX® 50mg significantly reduced moderate to severe acute pain after dental surgery to a greater degree compared to codeine 60 mg combined with acetaminophen 600 mg." The November 3, 2000 Press Release stated in pertinent part:

> "Overall, VIOXX® was well tolerated in this study, and overall rate of side effects on VIOXX® was generally similar to placebo. Significantly fewer patients taking VIOXX® experienced side effects than patients taking codeine with acetaminophen."

31.    The November 3, 2000 Press Release failed to disclose material adverse information known to Merck concerning the cardiovascular risks associated with VIOXX®.

32.    Each of the Defendant's statements made from January 1, 2000 through December 31, 2000 concerning VIOXX® was materially false and misleading when made, because each statement failed to disclose material and statistically significant information known to the Company that VIOXX® was associated with cardiovascular events. In this regard, the Merck Defendant failed to disclose:

- Merck's unpublished Study 090 concluded that VIOXX® users were 6 times more likely to have severe cardiovascular events than other users of NSAIDS;

- Internal Merck e-mails authored in 1996 and 1997 reveal that even before the FDA approved VIOXX® for prescription use, Merck knew of the VIOXX®-related medical risks;

- Substantial data existed in 1999 that VIOXX® was associated with a higher risk of cardiovascular events than other NSAIDs; and

- On December 16, 1999, Merck had received the December 16, 1999 FDA Letter admonishing Defendant for misleading the public by using deceptive promotional

- 11 -

M001712555

Exhibit 4
Page 11 of 64

materials that suggested VIOXX® had a superior safety profile to other NSAIDS, which was not demonstrated by substantial evidence;

• The Merck Defendant knew that the negative cardiovascular events were not due to the cardioprotective properties of Naproxen, but were instead directly attributable to the cardiovascular risks that the Merck Defendant observed in Study 090 and VIGOR; and

• VIOXX®'s safety profile was not "excellent" as the Merck Defendant claimed, but was instead marked by an unacceptably high risk of negative cardiovascular events.

### C.    2001 Events and False and Misleading Statements

33.    In 2001, the Defendant made and/or caused to be issued numerous materially false and misleading statements and/or omissions of material facts concerning the safety and efficacy of VIOXX®, including the following:

#### 1.    Merck Announces the FDA Advisory Committee Meeting To Modify VIOXX® Label

34.    On February 8, 2001, Merck issued a press release (the "February 8, 2001 Press Release") entitled "FDA Arthritis Advisory Committee Reviews Merck's Application for Revised Labeling for VIOXX® Based on VIOXX® Gastrointestinal Outcomes Study." In the February 8, 2001 Press Release, Merck announced that the FDA Advisory Committee had agreed that results from the VIGOR study -- that VIOXX® significantly reduced serious GI side effects by half compared to a commonly used dose of Naproxen in rheumatoid arthritis patients -- be included in the labeling for VIOXX®. The February 8, 2001 Press Release made the following materially false and misleading statements:

Merck is confident that the data presented today support the excellent safety profile of VIOXX®, and we look forward to further discussions with the FDA to complete the review of our application to modify the labeling for VIOXX®, said Eve Slater, M.D., senior vice president, Clinical and Regulatory Development, Merck Research Laboratories.

- 12 -

M001712556

Exhibit 4
Page 12 of 64

35.    The February 8, 2001 Press Release failed to disclose known information

concerning significantly increased risks of cardiovascular problems associated with VIOXX®,

and failed to disclose that VIOXX® had, at best, a questionable safety profile.

### 2. Merck Touts FDA Approval of Revised Label for VIOXX®

36.    On April 10, 2001, Merck issued a press release (the "April 10, 2001 Press

Release") entitled "Merck Receives 'Approvable' Letter for VIOXX® from FDA on Application

for Revised Labeling Based on VIOXX® Gastrointestinal Outcomes Study." The April 10, 2001

Press Release contained the following materially false and misleading statements and omissions

of material fact:

> Merck & Co., Inc. today confirmed that it has received an approvable letter from
> the U.S. Food and Drug Administration for the Company's application for
> changes to the prescribing information for its osteoarthritis and acute pain
> medicine VIOXX® (rofecoxib).
>
> ***
>
> The Company submitted a supplemental new drug application on June 29, 2000,
> seeking changes to reflect results from the VIOXX® Gastrointestinal Outcomes
> Research (VIGOR) study. The Company is confident in the comprehensive data
> that support the excellent gastrointestinal and overall safety profile of VIOXX®.

37.    This press release failed to disclose what the Merck Defendant knew at the time to

be a significant risk of serious cardiovascular events.

38.    On May 1, 2001, *Med Ad News* published an article entitled "Determined to

overtake rival Celebrex, Merck has made VIOXX® the fastest-growing brand," in which a senior

Vice President of marketing at Merck, was quoted as stating:

> VIOXX® has broken the traditional new nonsteroidal anti-inflammatory drug
> shape of the curve because the product has continued to grow way beyond the
> normal six-month time frame when the older new nonsteroidal anti-inflammatory
> drugs and even Celebrex tended to flatten off. VIOXX® has continued to grow
> and that is a result of the good product that we have, the satisfaction that it is
> providing to patients and physicians, and the strong marketing and marketing
> messages that we have put into the marketplace.

- 13 -

M00171255?

Exhibit 4
Page 13 of 64

39.    The foregoing statement by the Defendant failed to disclose material adverse information known to it concerning the cardiovascular risks associated with VIOXX®. The statements by the Defendant were directly contradicted by its internal e-mails and documents and by Merck-sponsored studies described elsewhere herein.

40.    On May 11, 2001, Merck issued a press release (the "May 11, 2001 Press Release") entitled "Merck Confirms Renal Safety Of VIOXX®." The May 11, 2001 Press Release stated that in comparative studies between VIOXX®, celecoxib and acetaminophen, there were no significant differences in the incidents of renal effects, such as hypertension and edema, and that "in these studies, the incidences of increased blood pressure and lower extremity edema among patients taking VIOXX® were similar to those of the comparator NSAIDs; there were no significant differences between the active treatment groups." The May 11, 2001 Press Release failed to disclose material adverse information known to the Defendant concerning the cardiovascular risks associated with VIOXX®, including those specifically revealed by this Merck sponsored study.

41.    On May 22, 2001, Merck issued a press release (the "May 22, 2001 Press Release") entitled "Merck Confirms Favorable Cardiovascular Safety Profile of VIOXX®." In the May 22, 2001 Press Release, the Company made the following materially false and misleading statements:

> In response to news and analyst reports of data the Company first released a year ago, Merck & Co., Inc. today reconfirmed the favorable cardiovascular safety profile of VIOXX® (rofecoxib), its medicine that selectively inhibits COX-2.

42.    The May 22, 2001 Press Release failed to disclose material adverse information known to the Defendant concerning the cardiovascular risks associated with VIOXX®. Among other things, the Defendant failed to disclose the contents of Merck internal e-mails and

- 14 -

M00172558

Exhibit 4
Page 14 of 64

documents, Study 090, the VIGOR study, the results of Merck-sponsored research and studies, and the conclusions that Merck aggressively sought to sponsor.

### 3.    Merck Promotes False Cardiovascular Safety Profile of VIOXX®

43.    On June 13, 2001, Merck issued a press release (the "June 13, 2001 Press Release") entitled "In New 28,000-Patient Meta-Analysis of Cardiovascular Events: Event Rates With VIOXX® were Similar to Placebo, Similar to Widely Prescribed NSAIDs Ibuprofen, Diclofenac and Nabumetone; Event Rate was Reduced with Naproxen." The June 13, 2001 Press Release made, among others, the following materially false and misleading statements and/or omissions of material fact:

> The rates of cardiovascular events seen in patients taking VIOXX® were similar to those seen with both placebo and with the widely prescribed NSAIDs diclofenac, ibuprofen and nabumetone, while the event rate was lower for Naproxen compared to VIOXX®, said Alise Reicin, M.D., Senior Director, Merck Research Laboratories.  The meta-analysis was strengthened by the fact that the majority of the data included in it was from studies six months or longer in duration.

> Aspirin blocks platelet aggregation by more than 90 percent by binding irreversibly to platelets. ***This property is believed to be responsible for its cardioprotective effect. It is reported in the scientific literature that Naproxen blocks platelet aggregation by about 90 percent if given every 12 hours at its recommended dose –as provided for in the studies with VIOXX®.*** This anti-platelet effect of Naproxen has not been observed among the other comparator NSAIDs; it has been reported that they do not block platelet aggregation in a sustained manner. (emphasis added)

44.    The June 13, 2001 Press Release failed to disclose material adverse information known to the Defendant concerning the risk of cardiovascular events associated with VIOXX®. Among other things, the statements directly contradicted Defendant's e-mails and the results of internal studies like Study 090.

M001712559

Exhibit 4
Page 15 of 64

4.    **Merck Misrepresents Results of** *Journal of American Medical Association* **Study**

45.    On August 21, 2001, *Dow Jones Business News* published an article entitled "*JAMA* Article Suggests VIOXX® and Celebrex Raise Cardiovascular Risks" (the "First August 21, 2001 Article"). The First August 21, 2001 Article, which appears to have been based upon Dow Jones' receipt of an early copy of the article to be published in *JAMA*, discussed the Cleveland Clinic study and stated in pertinent part:

> An analysis of clinical trials suggests a potential increase in the rate of heart attack, stroke and other cardiovascular events among patients treated with VIOXX® from Merck & Co. Inc. (MRK) and Celebrex from Pharmacia Corp. (PHA) and Pfizer Inc. (PFE), according to an article in *The Journal of the American Medical Association*. Merck said in a prepared statement it stands behind the overall and cardiovascular safety profile and the favorable gastrointestinal profile of VIOXX®. The Company further contended, "*Extensive cardiovascular data already exist on VIOXX® and that these data, which weren't incorporated into the authors' analysis, suggest that there is no increase in the risk of cardiovascular events as a result of treatment with VIOXX®.*" (emphasis added)

46.    The foregoing statement, failed to disclose material facts concerning the cardiovascular risks that VIOXX® presented and symbolized Defendant' efforts to suppress and distort the truth that VIOXX® was affirmatively dangerous.

47.    Also on August 21, 2001, *Dow Jones Newswires* published an article entitled "VIOXX®, Celebrex Use Raises Cardiovascular Concerns-Study" (the "Second August 21, 2001 Article"). The Second August 21, 2001 Article further addressed the drug makers' responses to the findings of the Cleveland Clinic: "First, these drug makers do not believe their respective COX-2 inhibitors increases [sic] the risk of heart attack, stroke, unstable angina, and other cardiovascular events. The drug makers separately insist that their drugs are effective and safe, overall and with respect to the heart and cardiovascular system." The Second August 21, 2001

- 16 -

Article described the comments of the senior director of cardiovascular clinical research at

Merck:

> "We can't explain what is behind that observation and the authors point out the lower rate of cardiovascular events in those receiving Naproxen may be the result of the beneficial effects of Naproxen, which has aspirin-like profile in preventing platelet aggregation."
>
> \*\*\*
>
> Understanding the relationship warrants further studies with placebo, said Demopoulos. *But Merck has created an extensive body of cardiovascular data on VIOXX®, which was excluded from the author and analysis, which suggests VIOXX® doesn't increase the risk of cardiovascular events, she added.*

48.    The Second August 21, 2001 Article failed to disclose material adverse

information known to Merck concerning the cardiovascular risks associated with VIOXX®.

Instead, the Defendant's statement affirmatively misrepresented VIOXX®'s safety profile in a

very direct contradiction of Defendant's internal e-mails and prior studies by Merck and others.

49.    On August 23, 2001, the Company issued a press release (the "August 23, 2001

Press Release") entitled "Merck Stands Behind the Cardiovascular Safety Profile of VIOXX®,"

which stated in relevant part:

> Merck & Co., Inc. today, said the Company stands behind the overall and cardiovascular safety profile and the favorable gastrointestinal (GI) profile of VIOXX®. Merck believes VIOXX® is an appropriate and efficacious therapy for the relief of the signs and symptoms of osteoarthritis and the management of acute pain in adults.
>
> \*\*\*
>
> The authors [of the *JAMA* article] say that more data are needed on the cardiovascular profile of COX-2 inhibitors. However, Merck believes that extensive cardiovascular data already exist on VIOXX® and that these data -- which were not incorporated into the author's analysis -- suggest that there is no increase in the risk of cardiovascular events as a result of treatment with VIOXX®.

50.    The August 23, 2001 Press Release failed to disclose material adverse information

known to the Defendant concerning the cardiovascular risks associated with VIOXX®, and

misrepresented VIOXX®'s safety profile. The August 23, 2001 Press Release -- apparently

- 17 -

designed to falsely reassure both patients and prescribers that VIOXX® was safe -- directly

contradicted Defendant's internal documents and other materials that demonstrated conclusively

the statistically significant risks known to the Defendant even before VIOXX® was introduced.

     **5.    Merck Refutes Statements in September 17, 2001 FDA Letter**

    51.    On September 17, 2001, as described above, the FDA sent the Company a letter

(the "September 17, 2001 FDA Letter") stating: "As part of its routine monitoring and

surveillance program, the Division of Drug Marketing, Advertising, and Communications

(DDMAC) has reviewed your promotional activities and materials and has concluded that they

are false, lacking in fair balance, or otherwise misleading in violation of the Federal Food, Drug,

and Cosmetic Act (the Act) and applicable regulations."

    52.    The September 17, 2001 FDA Letter went on to state:

> You have engaged in a promotional campaign for VIOXX® that minimizes the
> potentially serious cardiovascular findings that were observed in the VIOXX®
> Gastrointestinal Outcomes Research (VIGOR) study, and thus, misrepresents the
> safety profile for VIOXX®. Specifically, your promotional campaign discounts
> the fact that in the VIGOR study, patients on VIOXX® were observed to have a
> four to five fold increase in myocardial infarctions (MIs) compared to patients on
> the comparator non-steroidal anti-inflammatory drug (NSAID), Naprosyn
> (Naproxen).

    53.    The September 17, 2001 FDA Letter ordered the Defendant to stop using certain

promotional materials and to send a letter to healthcare providers to correct any false impressions

that came from Merck's marketing of VIOXX®.

    54.    The September 17, 2001 FDA Letter referenced the December 19, 1999 FDA

Letter, adding that Merck's "misrepresentation of the safety profile for VIOXX® is particularly

troublesome because we have previously, in an untitled letter, objected to promotional materials

for VIOXX® that also misrepresented VIOXX®'s safety profile."

M001712562

Exhibit 4
Page 18 of 64

55.    On September 24, 2001, Reuters published an article entitled "Merck VIOXX®

Promotions Said Misleading on Safety," in which it described the September 17, 2004 FDA

Letter. The September 24, 2001 article quoted a Merck spokeswoman, who stated that the

Company was developing a response to the FDA that it planned to submit by October 1, 2001:

> **"We continue to stand behind the overall safety and cardiovascular safety of VIOXX®."**

56.    Defendant's statements in this regard were false and misleading when made and

contradicted Merck's internal documents and the results funded of Merck-funded studies like

Study 090.

57.    Each of the statements made from January 2001 through December 2001

concerning VIOXX® was materially false and misleading when made, because each statement

failed to disclose material facts needed to make the statements made not misleading in light of

the circumstances under which they were made. In fact, Defendant knew that VIOXX® was

associated with a significant risk of cardiac events. The true but concealed and/or

misrepresented facts included, but were not limited to:

- Merck's press releases "reconfirming the favorable cardiovascular safety profile of VIOXX®" during 2001 were unfounded, because the Defendant knew that VIOXX® was associated with high cardiovascular risks;

- Merck's announcements refuting the Cleveland Clinic study results in *JAMA* and stating that the Company stood behind the safety profile of VIOXX® were unfounded, as the Defendant was aware that VIOXX® in fact caused an increase in adverse cardiovascular events;

- The Revised label for VIOXX® that Merck announced in April 2001 failed to disclose the severe cardiovascular risks that the Defendant had already observed in, among other things, Study 090 and VIGOR;

- The VIOXX® promotional activities that the FDA condemned in the September 17, 2001 FDA Letter stemmed from Defendant's deliberate efforts to conceal VIOXX®'s known risks;

M0017I2563

Exhibit 4
Page 19 of 64

• Merck's unpublished Study 090 concluded that VIOXX® users were 6 times more likely to have severe cardiovascular events than other users of NSAIDS;

• Internal Merck e-mails authored in 1996 and 1997 reveal that even before the FDA approved VIOXX® for prescription use, the Defendant knew of the VIOXX®-related medical risks;

• Substantial data existed in 1999 that VIOXX® was associated with a higher risk of cardiovascular events than other NSAIDs; and • On December 16, 1999, Merck had received the December 16, 1999 FDA Letter admonishing Defendant for misleading the public by using deceptive promotional materials that suggested VIOXX® had a superior safety profile to other NSAIDS, which was not demonstrated by substantial evidence;

• The Merck Defendant knew that the negative cardiovascular events were not due to the cardioprotective properties of Naproxen, but were instead directly attributable to the cardiovascular risks that the Merck Defendant observed in Study 090; and

• VIOXX®'s safety profile was not "excellent" as the Merck Defendant claimed, but was instead marked by an unacceptably high risk of negative cardiovascular events.

### D.    2002 Events and False and Misleading Statements

58.    In 2002, the Defendant made and/or caused to be issued numerous materially false and misleading statements and/or omissions of material facts concerning the safety and efficacy of VIOXX®, including the following:

### 1.    Merck Promotes New Changes to VIOXX®'s Label While Affirmatively Concealing the Significant Medical and Commercial Risks Associated with VIOXX®

59.    On April 11, 2002, the Company issued a press release (the "April 11, 2002 Press Release") entitled "Merck Re-Issues New Release for VIOXX® -rofecoxib-With Prescribing Information Attached." The April 11, 2002 Press Release described a conference call held that day by Merck for pharmaceutical industry analysts, during which Merck re-released the announcement of FDA-approved changes to the label for VIOXX®. The April 11, 2002 Press Release stated in pertinent part:

VIOXX® is now the first and only medicine that selectively inhibits the COX-2 enzyme that is proven to reduce the risk of developing clinically important

M00171 2564

Exhibit 4
Page 20 of 64

gastrointestinal (GI) side effects in patients with or without risk factors for such GI side effects compared to the non-steroidal anti-inflammatory drug (NSAID) Naproxen. In VIGOR, VIOXX® 50 mg -- a dose two-times the highest recommended chronic dose -- significantly reduced serious GI side effects, including perforations, obstructions, ulcers and bleeds, by 54 percent compared to a commonly used dose of Naproxen (1,000 mg) in rheumatoid arthritis patients. The GI safety benefit compared to Naproxen, as shown in VIGOR, now appears as a modification to the GI Warning section of the prescribing information, a section included in the prescribing information for all NSAIDs, including those that selectively inhibit Cox-2.

***

"Merck is confident in the efficacy and safety profile of VIOXX®. VIGOR was a rigorous test of the GI safety of VIOXX® versus Naproxen and based on that study, the FDA has approved a modification to the standard GI warning section. Our label now reads: 'Although the risk of GI toxicity is not completely eliminated with VIOXX®, the results of the VIGOR study demonstrate that in patients treated with VIOXX®, the risk of GI toxicity with VIOXX® 50 mg once daily is significantly less than with Naproxen 500 mg twice daily,'" said Edward M. Scolnick, M.D., executive vice president, science and technology, and president, Merck Research Laboratories, Merck & Co., Inc.

60.     The April 11, 2002 Press Release failed to disclose information known to the Defendant indicating that VIOXX® presented cardiovascular risks. The statements in the April 11, 2002 Press Release were precisely the type of statements condemned as false and misleading by the FDA in the letters it sent to Merck in December 1999 and September 2001.

61.     On April 18, 2002, the *Associated Press Online* published an article (the "April 18, 2002 *AP Online* Article") entitled "Risks of Arthritis Drugs Studied," which stated in pertinent part:

"There's growing suspicion that switching from aspirin to a more stomach-friendly arthritis drug could increase some people's risk of heart attacks -- and a study suggests the reason: a drug caused chemical imbalance that spurs blood clots. . . . VIOXX® maker Merck & Co. dismisses the study as irrelevant, because it is in mice and presumes an effect in the human body far larger than the drug actually causes." The April 18, 2002 *AP Online* Article further stated: "But the study looked at mice that had completely inhibited prostacyclin, while cox-2 drugs inhibit the chemical only half as much, said Merck scientist Dr. Alise Reicin. She said the study contributed no new information to the debate, but Merck plans further safety studies to deal with the issue, although she would not provide details."

- 21 -

M00171 2565

Exhibit 4
Page 21 of 64

• Substantial data existed in 1999 that VIOXX® was associated with a higher risk of cardiovascular events than other NSAIDs; and

• On December 16, 1999, Merck had received the December 16, 1999 FDA Letter admonishing Defendant for misleading the public by using deceptive promotional materials that suggested VIOXX® had a superior safety profile to other NSAIDS, which was not demonstrated by substantial evidence;

• Merck knew that the negative cardiovascular events were not due to the cardioprotective properties of Naproxen, but were instead directly attributable to the cardiovascular risks that the Merck Defendant observed in Study 090; and

• VIOXX®'s safety profile was not "excellent" as the Merck Defendant claimed, but was instead marked by an unacceptably high risk of negative cardiovascular events.

**E.    2003 Events and False and Misleading Statements**

64.    In 2003, the Defendant made and/or caused to be issued numerous materially false and misleading statements and/or omissions of material facts concerning the safety and efficacy of VIOXX®, including the following:

**1.    Merck Continues to Tout Vioxx as Safe, Refuting the Results of a Study Linking Vioxx® to Cardiac Events**

65.    On October 30, 2003, *The Wall Street Journal* published an article (the "October 30, 2003 Article") entitled "Vioxx Study Sees Heart-Attack Risk--Merck Funded Research After Concerns Were Raised About Its Painkilling Drug." The article discussed a study conducted at Harvard University-affiliated Brigham & Women's Hospital in Boston, which found "an increased risk of heart attack, or acute myocardial infarction, compared with patients taking a competing painkiller, Celebrex, from Pfizer Inc. The researchers also found that VIOXX®, which has annual sales of $2.5 billion a year, was linked to an increased heart-attack risk compared with patients not taking any painkillers." The October 30, 2003 Article continued:

> The new study, Dr. Topol said, "greatly substantiates our concern about the cardiac side effects." He observed that the possible cardiac effects of Vioxx appear "worse with the higher doses." Merck discounted the

M001712566

Exhibit 4
Page 22 of 64

62. These statements were knowingly and demonstrably untrue when made. Defendant did not introduce new studies because it wanted to avoid the likelihood that additional adverse information would come to light.

63. Each of the statements made from January 2002 through December 2002 concerning VIOXX® was materially false and misleading when made, because each statement failed to disclose material facts needed to make the statements made not misleading in light of the circumstances under which they were made. In fact, Defendant knew that VIOXX® was associated with a significant risk of cardiac events. The true but concealed and/or misrepresented facts included, but were not limited to:

• At the time of the FDA's February 2001 Advisory Committee meeting, the Merck Defendant were aware of the cardiovascular risks associated with VIOXX®, and were aware that VIOXX® did not have an excellent safety profile;

• Merck's press releases "reconfirming the favorable cardiovascular safety profile of VIOXX®" during 2002 were unfounded, because the Merck Defendant knew that VIOXX® was associated with high cardiovascular risks;

• Merck's announcements refuting the Cleveland Clinic study results in *JAMA* and stating that the Company stood behind the safety profile of VIOXX® were unfounded, as the Merck Defendant were aware that VIOXX® in fact caused an increase in adverse cardiovascular events;

• The Revised label for VIOXX® that Merck announced in April 2002 failed to disclose the severe cardiovascular risks that the Merck Defendant had already observed in, among other things, Study 090 and VIGOR;

• The VIOXX® promotional activities that the FDA condemned in the September 17, 2001 FDA Letter stemmed from Merck Defendant' deliberate efforts to conceal VIOXX®'s known risks, which continued in 2002;

• Merck's unpublished Study 090 concluded that VIOXX® users were 6 times more likely to have severe cardiovascular events than other users of NSAIDS;

• Internal Merck e-mails authored in 1996 and 1997 reveal that even before the FDA approved VIOXX® for prescription use, Merck knew of the VIOXX®-related medical risks;

- 22 -

Exhibit 4
Page 23 of 64

findings. "Randomized clinical trials are the gold standard and this isn't such a trial," said Alise Reicin, Merck's executive director of clinical research. "In our placebo-controlled randomized trials, we have found no significant difference between Vioxx and placebo."

Defendant's comments were directly contradicted by Merck Internal documents, e-mails and materials, and Merck's own studies.

66.    Continuing their aggressive campaign to suppress the truth about VIOXX®, Defendant acted quickly to assure it's consumers that VIOXX® was safe. On November 5, 2003, The Wall Street Journal published a Letter to the Editor by Defendant, (the "November 5, 2003 Wall Street Journal letter") entitled "Merck Stands Behind the Safety of Vioxx." In the November 5, 2003 Wall Street Journal letter, Defendant made, among others, the following materially false and misleading representations and/or omissions of material fact:

Nothing is more important to Merck than the safety of its medicines. Your Oct. 30th story about an observational analysis of Vioxx was incomplete. The article discussed only the findings from this analysis where Vioxx appeared to have an unfavorable risk profile, but failed to report other findings from the same analysis that showed no statistically significant difference in the risk of heart attack for Vioxx compared with other commonly used anti-inflammatory drugs.

The story also failed to report that another observational analysis presented at the same scientific meeting also showed no statistically significant difference in heart attacks between Vioxx and two widely used anti-inflammatory drugs, ibuprofen and diclofenac. *A complete reporting of the data presented might have remedied the mistaken impression left by the story.*

Observational methods lack the rigor of randomized, controlled clinical trials, and have led the scientific community astray before. That is why observational studies must be interpreted with caution. *Merck stands behind the safety of Vioxx based on the results of numerous randomized, controlled clinical trials.*

The November 5, 2003 Wall Street Journal Letter failed to disclose what Defendants Kim and Merck knew: that VIOXX® was in fact associated with serious cardiovascular risks. More

- 24 -

M001712568

Exhibit 4
Page 24 of 64

specifically, Defendant had long before concluded that VIOXX® actually caused severely

negative cardiovascular events -- a fact confirmed in internal Merck materials.

    67.    Each of the statements made from January 2003 through December 2003

concerning VIOXX® was materially false and misleading when made, because each statement

failed to disclose the extent of the Defendant's knowledge that VIOXX® was in fact associated

with a significant risk of cardiac events. The true but concealed and/or misrepresented facts

included, but were not limited to:

- The Company was aware that Vioxx itself created an increased risk of heart attack, and that its explanation for the VIGOR study results--that the Vioxx patients suffered greater incidences of cardiovascular events because of cardioprotective qualities of Naproxen--was inaccurate;

- The Company's statements refuting the results of the Brigham & Women's Hospital Study finding an increased risk of heart attack in patients taking Vioxx were unfounded;

- The Company's announcements and press releases throughout 2003, stating that Merck 'stands behind the safety of Vioxx's were unfounded, because Merck knew that Vioxx, in fact, was associated with cardiovascular events and was therefore not safe;

- Merck's press releases "reconfirming the favorable cardiovascular safety profile of Vioxx" during 2003 were unfounded, because the Merck Defendants knew that Vioxx was associated with high cardiovascular risks;

- The Vioxx promotional activities that the FDA condemned in the September 17, 2001 FDA Letter stemmed from Merck Defendants' deliberate efforts to conceal Vioxx's known risks, which continued in 2003;

- Merck's unpublished Study 090 concluded that Vioxx users were 6 times more likely to have severe cardiovascular events than other users of NSAIDS;

- Internal Merck e-mails authored in 1996 and 1997 reveal that even before the FDA approved Vioxx for prescription use, Merck knew of the Vioxx-related medical risks;

- Substantial data existed in 1999 that Vioxx was associated with a higher risk of cardiovascular events than other NSAIDs; and

M001712569

Exhibit 4
Page 25 of 64

• On December 16, 1999, Merck had received the December 16, 1999 FDA Letter admonishing defendants for misleading the public by using deceptive promotional materials that suggested Vioxx had a superior safety profile to other NSAIDS, which was not demonstrated by substantial evidence;

• Merck Defendants knew that the negative cardiovascular events were not due to the cardioprotective properties of Naproxen, but were instead directly attributable to the cardiovascular risks that the Merck Defendants observed in Study 090; and

• Vioxx's safety profile was not "excellent" as the Merck Defendants claimed, but was instead marked by an unacceptably high risk of negative cardiovascular events.

F.     **2004 False and Misleading Statements**

68.     During 2004, prior to an after taking VIOXX® off the market, the Defendant made and/or caused to be issued numerous materially false and misleading statements and/or omissions of material facts, some of which included the following,

69.     On May 18, 2004, the American Health Line published an article (the "May 18, 2004 Article") entitled "Merck: Removes Author's Name from List in Vioxx Study." The May 18, 2004 Article described how when the Harvard-Brigham & Women's Study was originally presented, the list of authors included Merck epidemiologist Dr. Carolyn Cannuscio. However, when the study was published in the online edition of the American Heart Association's journal,

\*\*\*

Worldwide sales of Vioxx, Merck's arthritis and pain medicine, were $653 million for the second quarter and $1.3 billion for the first six months. U.S. mail-order-adjusted prescription levels for Vioxx decreased by 5 percent during the quarter, as compared to the second quarter of 2003.

Following FDA approval for the acute treatment of migraine in late March, Vioxx is now approved for treating more types of painful conditions than any other coxib in the United States and remains the only coxib approved to relieve migraine pain and associated migraine symptoms. Merck continues to seek new uses for Vioxx to extend the clinical benefits of the product to new populations. A supplemental NDA for Vioxx is under review by the FDA for the treatment of juvenile rheumatoid arthritis. Outside of the United States, Vioxx continues to be

- 26 -

Exhibit 4
Page 26 of 64

M00171257O

the best-selling arthritis and pain medicine. Indications for Vioxx for migraine and juvenile rheumatoid arthritis also are being sought outside of the United States.

The July 21, 2004 Press Release failed to disclose information known by Merck concerning the cardiovascular risks associated with VIOXX® and the impact of those risks and related liabilities on the medical and commercial viability of VIOXX®.

70.    The May 18, 2004 Article quoted Merck spokesperson May Elizabeth Black as stating:

> Merck disagreed with the conclusions and didn't think it was appropriate to have a Merck author. Nancy Santanello, Merck executive director of epidemiology and Cannuscio's manager, said that the study had 'serious limitations' because it was 'not able to control completely for the differences between the groups.' Santanello added that Merck is currently conducting research on Vioxx and heart attacks.

The Defendant's statements were false and misleading because, among other things, it misrepresented the true facts of the Vioxx-related risks and falsely stated that Merck was conducting research on Vioxx and heart attacks.

### 1. Merck Publicly Discredits Results of Kaiser Permanente Study

71.    On August 26, 2004, *Bloomberg News* published an article (the "August 26, 2004 Bloomberg Article") entitled "Vioxx Raises Heart Risk, Study Says; Merck disputes Tests that Favor Pfizer's Celebrex." The article stated in pertinent part:

> Merck & Co.'s Vioxx painkiller increases the chance of heart attack and death from cardiac arrest more than Pfizer Inc.'s Celebrex, according to a study by a U.S. Food and Drug Administration investigator.

> The difference in heart risk was statistically significant between a recommended dose of Vioxx, 25 mg a day or less, and Celebrex, according to results the FDA's David Graham presented at a meeting of the International Society for Pharmacoepidemiology in France.

\*\*\*

M00171257

Exhibit 4
Page 27 of 64

We found that Celebrex appears to be safer from a cardiac perspective at the lower dose, Graham said in a telephone interview from France. If there's a difference in risk between Celebrex and Vioxx, that's an important public health question, because you have two drugs being used for the same gastrointestinal effect.

***

Merck disagrees with the results from Graham and his colleagues, spokeswoman Mary Elizabeth Blake said. Conclusions from that type of examination don't carry as much weight as results from a study comparing two groups of patients taking the medicines for a set period of time, she said.

***

Merck researchers and officials have said the difference between Vioxx and other painkillers occurs because a comparison drug, an anti-inflammatory called Naproxen, protects the heart. The FDA funded study found the contrary--that Naproxen raises heart risk by 18 percent.

The Defendant's statements attributed were false when made in that the Defendant knew before the drug was introduced that VIOXX® caused serious cardiovascular events.

72.    An article dated August 26, 2004 published by the *Associated Press* (the "First August 26, 2004 AP Article") entitled "Merck Disagrees with Vioxx Analysis," stated that [p]harmaceutical company Merck & Co. "strongly" disagreed Thursday with the conclusions of a Food and Drug Administration-funded study that said use of the company's arthritis pain reliever Vioxx increased the risk of heart attacks. At the same time, and unbeknownst to the public, Merck used all of its influence with the FDA to attempt to delay and/or thwart publication by Graham of the results of this study.

73.    An article dated August 26, 2004 published by the Associated Press (the "Second August 26, 2004 AP Article") entitled "Merck Defends Arthritis Drug's Safety After Critical FDA Study," announced that "Merck shares fell 97 cents, or two percent, to $45.05 Thursday"

Exhibit 4
Page 28 of 64

M0017I2572

following the release of the FDA study results showing Vioxx's association with a high risk of

cardiovascular events.

74.    The Second August 26, 2004 AP Article discussed the Company's reaction to the

release of the above-described FDA study:

> Pharmaceutical giant Merck & Co. insisted Thursday its blockbuster
> arthritis drug Vioxx is safe despite new evidence the popular pain pill
> increases risk of serious heart problems, even death, particularly at high
> doses.
>
> ***
>
> Alise Reicin, vice president of clinical research at Whitehouse Station-
> based Merck, said Vioxx is safe and effective, and numerous earlier
> studies comparing it to a dummy pill found 'no difference in the risk of
> having a serious cardiovascular events.' The drug was tested on about
> 10,000 patients before it went on sale. Reicin said the new study was not
> as rigorous because it was observational, rather than a controlled
> experiment in which randomly chosen patients get different treatments and
> are followed over time.
>
> ***
>
> Reicin, the Merck research executive, said half of the six observational
> studies on Vioxx to date found it did not increase heart complications.

Significantly, the statements attributed to Defendant all fail to disclose the significant

cardiovascular risks caused by VIOXX® -- risks that Defendant was especially familiar with.

75.    An article dated August 26, 2004 published by the *Associated Press* (the "Third

August 26, 2004 AP Article") entitled "FDA Voices Concerns Over Arthritis Drug" quoted

Defendant's analysis of the above-described study results: "Observational analyses do not have

the rigor of randomized, controlled clinical trials. . . . Based on all of the data that are available

from our clinical trials, Merck stands behind the efficacy and safety, including cardiovascular

safety, of Vioxx." Criticism of methodology notwithstanding, Defendant's efforts to refute

Graham's study were wholly unavailing because the findings were completely consistent with all

of the information in Merck's files, including the results of the 1998 Study 090, the 2000 VIGOR

M001712573

Exhibit 4
Page 29 of 64

study, the 2001 JAMA study, the Vanderbilt UnitedHealth Care and Kemper studies and the APPROVE study which was to be terminated less than one month later.

76.     On September 8, 2004, the *Dow Jones News Service* (the "September 8, 2004 article") published an article entitled: "Merck: FDA OKs Vioxx for Once-Daily Treatment of Juvenile Rheumatoid Arthritis; First and Only COX-2 Specific Inhibitor Approved for Use in Children As Young as Two." The article announced the FDA's approval of Vioxx for the treatment of juvenile rheumatoid arthritis. Merck continued to press for the FDA's approval to prescribe Vioxx for "children as young as two" despite the fact that Merck knew that Vioxx caused serious cardiovascular damage and despite the fact Merck would later withdraw Vioxx from the market during the very month which it received approval to use this deadly drug on children.

2.     **The Withdrawal of Vioxx and Merck's Continued Campaign of Concealment**

77.     On September 30, 2004, Defendant announced that it was withdrawing VIOXX® worldwide, citing as its reason the results of the APPROVe trial. However, the results of the APPROVe study were nothing new to Merck. These results were wholly consistent with studies dating back to the 1998 Study 090 and confirmatory VIGOR study in early 2000.

78.     Following the announcement, Defendant continued to conceal its prior knowledge of the extent of the cardiovascular risks associated with Vioxx. For example, that same day, Defendant held a press conference to explain its decision to withdraw Vioxx. Its CEO gave the following statements:

> I'll just give you a quick summary here. The reason that we're here today is because this morning, Merck is announcing a voluntary worldwide withdrawal of Vioxx, our Cox-2 inhibitor for arthritis and pain. This decision is the result of new data from a three-year placebo controlled study which was designed to evaluate the possible use of Vioxx in

M00171257/4

Exhibit 4
Page 30 of 64

preventing the recurrence of colon polyps. This study also collected data on the long-term cardiovascular safety of Vioxx. Importantly, in the first 18 months of the study, there was no difference in the risk for heart attack or stroke in patients taking either Vioxx or placebo. Beginning after 18 months, however, the risk of a cardiovascular event did increase among those on Vioxx.

Accordingly, we are voluntarily withdrawing Vioxx effective today. We are taking this action because we believe it best serves the interest of patients. We believe it would have been possible to continue to market Vioxx with labeling that would incorporate these new data. However, given the availability of alternative therapies, and the questions raised by the data, we concluded that a voluntary withdrawal is the responsible course to take.

Defendant's CEO's statements were wholly false and misleading and were designed to conceal Merck's pre-1999 knowledge of Merck's cardiovascular risks.

79.    On November 1, 2004, the *Wall Street Journal* published the above-described article entitled "Warning Signs: Emails Suggest Merck Knew Vioxx's Dangers at Early Stage; As Heart-Risk Evidence Rose, Officials Played Hardball; Internal Message: 'Dodge!'; Company says 'Out of Context.'" As described more fully above, the November 1, 2004 Wall Street Journal article detailed, among other things, how even though Defendant's CEO expressed that the APPROVe study findings tying VIOXX® to heart attacks and strokes were unexpected, internal Merck e-mails, marketing materials and interviews with outside scientists indicated that Merck "fought forcefully for years to keep safety concerns from destroying the drug's commercial prospects." The article made, among others, the following critical points:

    • E-mails by and between Company executives in the mid to late 1990s showed that Merck knew that Vioxx increased the risk of cardiac events, and sought to conceal such financially damaging information;

    • The VIGOR results, released in March 2000, showed that Vioxx patients, as compared with those taking Naproxen, suffered five times as many heart attacks. In March 2000, defendant Scolnick e-mailed colleagues that the risk of cardiovascular events associated with Vioxx

M001712575

Exhibit 4
Page 31 of 64