W. Mark Lanier
Kevin P. Parker
Richard Meadow
Lawrence P. Wilson
THE LANIER LAW FIRM[1]
6810 FM 1960 West
Houston, Texas 77069
Telephone: (713) 659-5200
Fax: (713) 659-2204

James E. Fosler
Alaska Bar No. 9711055
FOSLER LAW GROUP, INC.
737 West Fifth Ave., Suite 205
Anchorage, Alaska 99501
Telephone: (907) 277-1557
Fax: (907) 277-1657

Attorneys for STATE OF ALASKA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| STATE OF ALASKA, ) | |
| ) | |
| Plaintiff, ) | Case No. 3:06-CV-00018 (TMB) |
| ) | |
| vs. ) | |
| ) | |
| MERCK & CO., INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**STATE OF ALASKA'S REPLY IN SUPPORT OF MOTION TO REMAND**

Plaintiff, State of Alaska ("Alaska"), files this Reply Brief in Support of Alaska's Motion to Remand, respectfully showing as follows:

---

[1] *Pro hac vice* applications are being prepared for The Lanier Law Firm lawyers and will be filed shortly.

## **INTRODUCTION**

Alaska brought this case against Merck for violations of Alaska's Unfair Trade Practices and Consumer Protection Act arising from the sale and marketing of Vioxx to Alaska and Alaskans. Alaska alleges that Merck violated Alaska statutes and does not claim that Merck violated any federal law. In an attempt to manipulate the case into the national multidistrict litigation ("MDL") proceedings, Merck removed the case from state court to this Court, arguing that this Court has subject matter jurisdiction. Alaska filed the instant Motion to Remand because this Court does not have subject matter jurisdiction since Alaska's case depends solely on state law claims and does not depend on the resolution of substantial federal issues.

Merck's assertion of federal question jurisdiction is based on its desire to defend itself by referencing federal statutes, specifically, the Food Drug & Cosmetic Act ("FDCA") and federal Medicaid statues. Merck alleges that, merely because it may desire to defend itself against Alaska's claims by referencing federal statutes, federal question jurisdiction exists. However, Merck has not met its burden of proving federal question jurisdiction. Alaska has not pled federal claims or alleged violations of federal law, and federal law does not preempt Alaska's state law claims. While Merck raises defenses that purportedly implicate federal law, federal law is not implicated on the face of Alaska's complaint, as required to establish federal question jurisdiction. This Court should therefore remand the case for lack of subject matter jurisdiction.

# ARGUMENT

**A. MERCK FAILS TO MEET ITS BURDEN THAT FEDERAL QUESTION JURISDICTION EXISTS IN THIS CASE.**

This court should grant Alaska's Motion to Remand because Merck has failed to prove that federal question jurisdiction exists. Removal is proper only if the party seeking removal meets the burden of establishing jurisdiction. *California v. Dynegy*, 375 F.3d 831, 838 (9th Cir. 2004) (citing *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988). Courts should strictly construe the removal statute against removal. *Id.* Merck has not met its burden for removal because it has not proven that federal question jurisdiction exists on the face of Alaska's Complaint.

Alaska's case is premised solely on Alaska law. Alaska alleges that Merck's acts and practices were unlawful pursuant to Alaska's Unfair Trade Practices and Consumer Protection Act. *See* AS 45.50.471. The well-pleaded complaint rule dictates that the plaintiff, as the "master of the complaint," may avoid federal question jurisdiction by relying exclusively on state law. *Shaw v. Charles Schwab & Co., Inc.*, 128 F.Supp.2d 1270, 1271 (C.D. Cal. 2001) (*citing Caterpillar, Inc. v. Williams*, 107 S.Ct. 2425 (1987)). Defenses have no bearing on the determination of federal question jurisdiction. *Id.* (*citing Christianson v. Colt Indus. Operating Corp.*, 108 S.Ct. 2166 (1988)). Alaska has chosen to premise its claims upon violations of state law. Thus, Alaska's claims are not subject to the jurisdiction of federal courts.

Merck argues that federal question jurisdiction exists because, in order to prove its claims, Merck believes Alaska will be required to demonstrate: (1) that Merck violated the FDCA and (2) that Alaska would not have been required to reimburse Merck according to

Medicaid statutory provisions. *See* Opposition at 10. Merck's argument is a transparent attempt to add to Alaska's claims through Merck's own defenses, a tactic that cannot be used to establish the existence of federal question jurisdiction. Alaska did not plead any claim that, on its face, creates a substantial federal issue. *See Gully v. First Nat'l Bank in Meridian*, 57 S.Ct. 96 (1936) (stating that a federal issue must be disclosed on the face of the plaintiff's complaint). Alaska's Complaint does not raise a claim under the FDCA, nor does it plead a violation of Medicaid formulary requirements. Merck's reliance on *Grable Sons Metal Products v. Darue Engineering & Manufacturing*, 125 S.Ct. 2363 (2005), is misplaced because *Grable* does not change this calculus and, for the reasons stated in Alaska's opening brief and below, actually supports remand of this case.

    **1.**    **Alaska has not pled a federal question under the FDCA or the Medicaid statutory scheme.**

    **a.**    *The Federal Food, Drug and Cosmetic Act (FDCA).*

Courts have routinely denied that federal question jurisdiction exists over all claims implicating the FDCA. *E.g., Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 106 S.Ct. 3229 (1986) (granting remand even though plaintiff's case was based in part on an allegation that the defendant violated the FDCA). As shown in Alaska's opening brief and below, *Grable* affirms *Merrell Dow's* holding that claims implicating the FDCA do not give rise to federal question jurisdiction.

    **b.**    *Medicaid statutory provisions.*

Merck also contends that false representations about Vioxx to the Alaska Medicaid Program create federal question jurisdiction and therefore prevent remand to state court. Merck asserts that Alaska's claims "depend on the interpretation and application of federal

statutory provisions." This statement is simply incorrect. Alaska is not required to prove a violation of or compliance with any federal Medicaid laws in order to prevail on its state law claims. As discussed above, the well-pleaded complaint rule states that only the allegations in Alaska's complaint, not the defendant's possible defenses, should be considered when deciding jurisdiction. *See Shaw v. Charles Schwab & Co., Inc.*, 128 F.Supp.2d 1270, 1271 (C.D. Cal. 2001) (citing *Caterpillar, Inc. v. Williams*, 107 S.Ct. 2425 (1987)). Additionally, as noted in Alaska's opening brief, the State of Texas recently filed a similar case against Merck, seeking restitution and damages for payments made by Texas for Vioxx prescriptions under the Texas Medicaid Program. *Texas v. Merck*, 385 F.Supp.2d 605 (W.D.Tex. 2005). Merck argued that Texas's complaint implicated both the FDCA and federal Medicaid statute. *Id*. However, because Texas, like Alaska, only pled state law claims, the court remanded the case to state court. *Id*. at 607. The same analysis applies to this case and supports remand.

    2.    ***Grable* and subsequent cases support remand.**

Merck argues that *Grable Sons Metal Products v. Darue Engineering & Manufacturing*, 125 S.Ct. 2363 (2005), supports a finding of federal question jurisdiction. Merck is simply wrong. In *Grable*, the plaintiff was required to prove that the IRS failed to give it proper notice under the federal tax code. The plaintiff's claim required the court to answer a substantial question regarding the construction of a federal tax provision. *See Grable* at 2366. Alaska places no such reliance upon any violations of federal law and only alleges that Merck's conduct violates Alaska law. Further, in *Grable,* the Supreme Court specifically found that there is a substantial interest in providing a federal forum to adjudicate federal tax claims. *Id*. Merck has not proven that a similar interest exists in providing a federal forum for all claims against pharmaceutical manufacturers.

Merck contends that *Grable* contravenes the Supreme Court's findings in *Merrell Dow*. But *Grable* clearly does not. *Grable* at 2369-70. Rather, the Supreme Court clarified that "*Merrell Dow* should be read in its entirety as treating the absence of a federal private right of action as evidence relevant to, but not dispositive of, the 'sensitive judgments about congressional intent' that §1331 requires." *Grable* at 2370. As one district court explained only four weeks ago, "*Grable* re-acknowledged the long-standing . . . recognition of federal question jurisdiction when . . . the resolution of substantial, disputed questions of significant federal law determine a necessary element of a state-law claim." *City of Beatrice v. Aquila*, 2006 WL 208831, *4 (D. Neb.). Indeed, the *Grable* Court explained:

> A general rule of exercising federal jurisdiction over state claims resting on federal mislabeling and other statutory violations would [herald] a *potentially enormous shift of traditionally state cases into federal courts*. Expressing concern over the 'increased volume of federal litigation,' and noting the importance of adhering to 'legislative intent,' *Merrell Dow* thought it improbable that the Congress, having made no provision for a federal cause of action [pursuant to FDCA] would have meant to *welcome* any state-law tort case implicating federal law 'solely because the violation of the federal statute is said to create a rebuttable presumption of negligence under state law.' In [*Merrell Dow's*] situation, *no welcome mat meant keep out*. [The] analysis thus fits within the framework of examining the importance of having a federal forum for the issue, and the consistency of such a forum with Congress's intended division of labor between state and federal courts.

*Grable* at 2370-71 (emphasis added; internal citations omitted). The Supreme Court concluded that "a comparable analysis yields a different jurisdictional conclusion in this case." *Id*. The court compared the interest at stake in *Grable* – the **"*rare*"** instance in which a state quiet title action implicates federal law – to *Merrell's Dow*'s much more common situation of litigation against pharmaceutical manufacturers. *Id*. (emphasis added). The court stated that jurisdiction over the *Grable* plaintiff's tax action would "not materially affect, or

threaten to affect, the normal currents of litigation." *Id*. Far from overruling *Merrell Dow*, the Supreme Court in *Grable* supports Alaska's argument in favor of remand. An assertion of federal jurisdiction over Alaska's state law claim would very much impact the normal currents of litigation because litigation involving pharmaceutical manufacturers is not by any account rare.

Merck asserts that this Court should find federal question jurisdiction because of *County of Santa Clara v. Astra USA, Inc.*, 401 F.Supp.2d 1022 (N.D. Cal. 2005). In *Santa Clara*, the court upheld federal question jurisdiction because significant federal issues needed to be resolved in order to prove the plaintiff's claims. *See Santa Clara* at 128. Not only did the plaintiff in *Santa Clara* need to prove a particular interpretation of the word "payment" under federal law, but the court also noted that disagreement existed within the federal government about how to calculate the ceiling price for drugs sold under the statutory scheme. *Id*. Because the plaintiff alleged that the drug company overcharged public health care institutions, the ceiling price and price controls were central elements of the plaintiff's claim. *Id*. Alaska does not need to prove a particular interpretation of federal law to litigate its claims because Alaska's claims rely on state law. Thus, *Santa Clara* is inapposite.

Merck also argues that *In re Zyprexa*, 375 F.Supp.2d 170 (E.D.N.Y. 2005), supports a finding of federal question jurisdiction. *In re Zyprexa* is easily distinguishable from this case because the plaintiff there alleged multiple violations of federal law in its petitions. *Id*. at 172. The *In re Zyprexa* court distinguished *Merrell Dow* in part because of the plaintiff's allegations about the violation of federal law. *Id*. Alaska has not alleged any violations of federal law in its Complaint and, therefore, *In re Zyprexa* is not applicable. Even if *In re Zyprexa* were on point, it is questionable authority. At least two courts have declined to rely

on the case in their analysis of jury questions. While defendants like Merck have repeatedly attempted to use *In re Zyprexa* to prove federal question jurisdiction, no court has cited the case in support of federal question jurisdiction.

In a case directly analogous to Alaska's, one court noted that it disagreed with the defendant's attempt to apply *In re Zyprexa* in support of jurisdiction. *Weiss v. Fujisawa Pharmaceutical Co.*, ____F.Supp.2d____, 2005 WL 3783650, *FN 3, (E.D. Ky.) (denying remand because of diversity jurisdiction, but stating that defendant's argument that plaintiffs' references to violations of FDA regulations were not sufficiently analogous to *In re Zyprexa* for the court to disregard state-law nature of plaintiffs' claims). Just weeks ago, when considering a federal regulatory scheme's implication on a state law claim, the court in *Aquila* iterated that *Grable* does not "provide the 'missing welcome mat' to a federal forum for every case." *Aquila* at *5. The court went on to consider whether federal jurisdiction existed based on federal funding. *Id.* at *8. In concluding that federal jurisdiction did not exist based on federal funding, the court distinguished *In re Zyprexa* on the grounds that the plaintiff did not allege (1) that the defendants violated federal law to obtain federal funds or (2) failed to comply with federal regulations. *Id.* Similarly, Alaska alleges a state law claim and Alaska's complaint does not allege violations of federal law or federal regulations. Therefore, this Court should follow the *Aquila* court's determination that "federal funds lurking in the background of this case cannot serve as an independent basis for establishing jurisdiction." *Aquila* at *9 (quoting *Transit Exp., Inc. v. Ettinger*, 246 F.3d 1018, 1026 (7th Cir. 2001)).

B.  **REMAND SUPPORTS PRINCIPLES OF COMITY AND FEDERALISM AND PRESERVES THE CONGRESSIONALLY MANDATED BALANCE BETWEEN STATE AND FEDERAL COURTS.**

1.  **Federal law does not preempt Alaska's state law claims.**

Merck relies on the preamble to a recently passed FDA rule to suggest that pharmaceutical litigation is now pre-empted by federal law. A Court, however, should be reluctant to find preemption based on the presumed, rather than stated, intent of Congress. *Witczak v. Pfizer, Inc.*, 377 F.Supp.2d 726, 728-29 (D. Minn. 2005) (quoting *Geier v. American Honda Motor Co., Inc.*, 521 U.S. 861, 885 (2000)) (refusing to find FDCA preempted plaintiffs claims against drug manufacturer). Courts have long held that the Federal Food, Drug and Cosmetic Act (FDCA) does not preempt state law claims. *E.g.*, *Hawkins v. Upjohn Co.*, 890 F.Supp. 609 (E.D. Tex. 1994) (finding that the regulation of prescription drugs by the FDCA does not preempt state tort liability); *McCallister v. Purdue Pharma, LLP*, 164 F.Supp.2d 783 (S.D. W. Va. 2001) (finding that FDCA did not preempt plaintiffs' claims under West Virginia's Professional Liability Act and Unfair Trade Practices Act and that need for uniform interpretation of federal regulatory scheme for drug manufacturing was not a substantial federal interest).

Merck contends that the recently enacted preamble changes this longstanding rule and requires this Court to find federal question jurisdiction. *See* Opposition page 8 (*citing* Requirements on Content and Format of Labeling for Human Prescription Drug and Biological Products, 71 Fed. Reg. 3922, 3997 (Jan. 24, 2006) (to be codified at 21 CFR Parts 201, 314, and 601)). To adopt Merck's interpretation would be to invite a flood of litigation into federal courts.

In 1999, Executive Order 13132 outlined the standards for federal agencies to abide by when formulating and implementing policies having federalism implications. 64 FR 43255, 43256. The order states the following:

> [N]ational action limiting the policymaking discretion of the States shall be taken only where there is constitutional and statutory authority for the action… Where there are significant uncertainties as to whether national action is authorized or appropriate, agencies shall consult with appropriate State and local officials to determine whether Federal objectives can be attained by other means. … Agencies shall construe, in regulations and otherwise, a Federal statute to preempt state law only where the statute contains an express preemption provision or there is some other clear evidence that the Congress intended preemption of State law, or where the exercise of State authority conflicts with the exercise of Federal authority under the Federal statute.

*Id*. at 43256-57. In 2000, the FDA purportedly published a Notice of Proposed Rulemaking (NPRM) in the Federal Register that did not contain any mention of preemption; the FDA then failed to finalize the rule in 2001. *See* National Conference of State Legislatures (NCSL), "FDA Final Rule on Prescription Drug Labeling," 1/19/2006, available at: http://www.ncsl.org/statefed/health/FDArule.htm (Attached as Exhibit A). In 2002, the FDA unsuccessfully sought to convince a federal court that the FDCA preempted plaintiffs' state law claims against a drug manufacturer. *In re Paxil Litig*., 2002 WL 31375497 (C.D. Cal. 2002) (Not Reported in F.Supp.2d). The court found the FDA's arguments in favor of preemption unpersuasive, stating that the FDA did not present any case holding that the FDCA preempts state law and that Congress did not intend to preempt state law claims. *Id*. at *1. Following its disappointment in the outcome in the Paxil case and a Zoloft case, the FDA added preemption provisions to its regulations. *See* Exhibit A.

The preamble Merck cites states that the FDA, on its own accord, found that the FDCA preempts state claims. 71 FR 3922-01. In doing so, the FDA disregarded court opinions and

congressional intent. If the allegations of groups such as the NCSL are well-founded, the FDA also violated Executive Order 13132 by not consulting with state and local leaders regarding alternatives to preemption. Merck relies upon the FDA's recently issued statements even though the FDA may have violated an Executive Order and almost certainly lacks the authority to declare that the FDCA preempts state law claims where courts and Congress have explicitly refused to do so. Furthermore, even if the FDA's declaration of preemption is valid, it should not apply retroactively to Alaska's case, which was filed prior to the promulgation of the new rule.

Congress did not intend to preempt state law claims against drug manufacturers. *See, e.g., Motus v. Pfizer*, 127 F.Supp.2d 1085, 1092 (C.D. Cal. 2000). Furthermore, the FDA included preemption language in the preamble of the new regulations without comment and only after federal courts refused to find preemption despite the FDA's urging. *See In re Paxil Litig.*, Civ. No. 01-7937 (C.D. Cal. 2002) (stating that the FDA's preemption argument "contravenes common sense and vitiates rather than advances the Food, Drug, and Cosmetic Act's purpose of protecting the public"). Therefore, Merck's reliance on the preamble in the new FDA regulations is misplaced.

> **2.   Remand prevents unnecessary and excessive delay of the consideration of the merits of Alaska's case.**

Merck argues that this Court should delay action in this case so that Judge Fallon may rule on all of the motions for remand to state court at one time. *See* Opposition at 2. However, as demonstrated by *Texas v. Merck*, discussed above, not all federal courts are persuaded by Merck's attempt to delay these cases. Further, Alaska questions the sincerity of Merck's concern for judicial economy. Indeed, judicial economy is not served by the transfer

of this case to the MDL when federal jurisdiction is lacking and the transfer will only serve to delay remand to state court. Merck is simply trying to delay the case for its own convenience and economy. This Court should reject Merck's attempt to manipulate this case into the MDL and remand this case to state court where it can be expeditiously adjudicated on the merits.

## CONCLUSION

Merck has failed to prove that this Court has federal question jurisdiction. Even if this Court agrees with Merck that Alaska's Complaint somehow implicates federal law, the strength of the federal interest at stake would be miniscule in comparison to the gigantic consequences that would stem from the Court opening the federal forum to virtually all claims against pharmaceutical manufacturers. In addition, Merck's contention that the federal statutory scheme preempts state law claims is unfounded.

Merck is trying to manipulate as much of the Vioxx litigation into the MDL as possible. As part of that effort, it asks this Court to ignore its lack of jurisdiction. Alaska respectfully requests that the Court grant Alaska's Motion to Remand and speedily remand the case back to state court where it belongs.

\\\\

\\\\

\\\\

\\\\

\\\\

DATED: March 1, 2006.

                FOSLER LAW GROUP, INC.

                By: /s/ James E. Fosler
                      FOSLER LAW GROUP, INC.
                      737 W. 5th Ave., Suite 205
                      Anchorage, AK 99501
                      Phone: (907) 277-1557
                      Fax: (907) 277-1657
                      E-mail: jfosler@foslerlawgroup.com
                      Alaska Bar No. 9711055

                      THE LANIER LAW FIRM
                      W. Mark Lanier
                      Kevin P. Parker
                      Richard Meadow
                      Lawrence P. Wilson
                      *Pro hac vice* applications being prepared
                      6810 FM 1960 West
                      Houston, Texas 77069
                      Telephone: (713) 659-5200
                      Fax: (713) 659-2204

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on
the 1st day of March 2006 a true and correct copy
of this document was served on:

Jahna M. Lindemuth
Dorsey & Whitney, LLC
1030 West Fourth Ave., Suite 600
Anchorage, AK 99501

by electronic means through the ECF
system,
as indicated on the Notice of Electronic
Filing, or, if not confirmed by ECF, by first
class regular mail.

By:    /s/ James E. Fosler
James E. Fosler, ABA #9711055
Fosler Law Group, Inc.