IN THE UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

STATE OF ALASKA,

                Plaintiff,

      v.

MERCK & CO., INC.,

                Defendant.

Case No. 3:06-cv-00018-TMB

O R D E R

## I. INTRODUCTION

On December 23, 2005, Plaintiff State of Alaska ("State") filed this lawsuit against Defendant Merck & Co., Inc. ("Merck") pursuant to the Unfair Trade Practices and Consumer Protection Act, AS 45.50.471 *et seq.* (UTPA).[1] The State alleges that Merck, a pharmaceutical company, knowingly engaged in misrepresentations concerning the advertising, soliciting, selling, and distribution of a drug called Vioxx to consumers in Alaska.[2] On June 14, 2006, the Judicial Panel on Multidistrict Litigation (MDL) transferred the case to the Eastern District of Louisiana where two cases alleging similar claims against Merck were already pending.[3] After eight years in Louisiana, the case returned to this Court. On December 3, 2014, the State filed a renewed/supplemental motion for remand; Merck opposes.[4] For the reasons that follow, the State's Supplemental Motion to Remand at **Docket 46** is **GRANTED**.

---

[1] Dkt. 1-3.

[2] *Id*. at 2 ¶¶1, 2.

[3] Dkt. 31.

[4] Dkts. 46 (Supplemental Motion to Remand); 55 (Response in Opposition).

1

## II. BACKGROUND

Merck began marketing Vioxx to the public in May 1999. Initially, Vioxx was approved for the treatment of osteoarthritis and primary dysmenorrhea and for the management of acute pain in adults. Merck requested Vioxx be placed on the Alaska Medicaid Program's list of drugs subject to reimbursement, representing that the drug was at least as safe as other drugs on the market that are in a similar class or used for the same purposes.[5] Research and clinical trials revealed, however, that the use of Vioxx increases the risk of a heart attack and other serious cardiovascular and cerebrovascular medical complications.[6] On September 30, 2004, Merck withdrew Vioxx from the market.

The State filed a complaint against Merck in the Superior Court for the State of Alaska on December 23, 2005, alleging that Merck engaged in "unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce" in violation of the UTPA.[7] The State claims that Merck started marketing Vioxx to physicians, the State, and the public in Alaska as "safe and effective" when Merck knew that Vioxx was unsafe and presented significant health risks.[8] The State contends that Merck also withheld or concealed additional knowledge of the drug's dangers obtained after Vioxx was advertised and sold to consumers.[9]

According to the State, Merck's misrepresentations regarding the safety of Vioxx "induced the State of Alaska to authorize expenditures of Medicaid funds for the purchase of Vioxx…

---

[5] Dkt. 1-3 at 4 ¶ 7.

[6] *Id*.

[7] AS 45.50.471(a); Dkt. 1-3.

[8] Dkt. 1-3 at 5 ¶ 8.

[9] *Id*. at 5 ¶ 10.

result[ing] in the expenditure of millions of dollars of state funds or state controlled funds on Vioxx."[10] Additionally, the State contends that Merck launched two campaigns in relation to the marketing of Vioxx: "an expensive, promotional advertising campaign to convince lay people to request Vioxx from their healthcare professionals for the treatment of their pain" and a "campaign of intimidation against researchers and physicians who questioned the safety of Vioxx."[11] During these campaigns, Merck allegedly knew about the harmful effects of Vioxx, which were confirmed by the company's own medical research.[12] The State's original complaint sought the recovery of "the value of all payments that the State of Alaska made for Vioxx prescriptions."[13] In its amended complaint, the State eliminated that language and seeks injunctive relief, civil penalties, costs and attorney's fees, and pre-judgment and post-judgment interest.[14]

On January 17, 2006, Merck removed the case to federal court on the basis of federal question jurisdiction.[15] Merck argued that the State's claims implicate two areas of federal law: the Food, Drug & Cosmetic Act, 21 U.S.C. § 301, *et seq.* (FDCA), and the statutes regulating Medicaid, 42 U.S.C. §§ 1396r-8(d)(1)(B), (d)(4).[16] Merck then requested a stay of the

---

[10] Dkt. 1-3 at 8 ¶¶ 22, 23.

[11] *Id*. at 5-6 ¶ 10.

[12] *Id*. at 5 ¶ 10.

[13] *Id*. at 8 ¶ 2.

[14] Dkt. 46-6 at 26.

[15] Dkt. 46-4 at 4 ¶ 8.

[16] *Id*.

proceedings pending transfer of the case to the MDL Panel.[17] Subsequently, the State filed a motion to remand with the Court, which was opposed by Merck.[18]

On February 7, 2006, the MDL Panel issued a conditional transfer of the case to the Vioxx MDL in the Eastern District of Louisiana, stating that the action involves "questions of fact which are common to the actions previously transferred" to the Vioxx MDL.[19] Based on the MDL Panel's conditional transfer order, the Court granted Merck's request to stay the proceedings.[20] The Court reasoned: "As this case does not plainly warrant immediate remand, the Court finds that transfer to the MDL panel will promote efficient and coordinated proceedings, including the consideration of remand motions."[21]

In October 2014, the case returned to this Court. On December 3, 2014, the State filed a renewed/supplemental motion for remand.[22] The State argues that the original and amended complaints allege claims under only Alaska law and that Merck's liability "depends only on whether its conduct violated Alaska law."[23] Merck opposes the remand, again asserting that the

---

[17] Dkt. 8.

[18] Dkts. 13 (Motion to Remand); 19 (Opposition to Motion to Remand).

[19] Dkt. 17, Ex. A.

[20] Dkt. 27.

[21] Id. The judge presiding over the Vioxx MDL proceedings expressed his preference that remand motions be presented to the MDL Panel to promote consistency and fairness. Dkt. 19, Ex. 1 (Transcript of Status Conference at 21, MDL No. 1657 (June 23, 2005)).

[22] Dkt. 46.

[23] Id. at 1.

Court has federal question jurisdiction because the State's claims "directly implicate federal Medicaid law."[24]

### III. LEGAL STANDARD

The removing party bears the burden of establishing federal jurisdiction.[25] In a case brought by a sovereign state, federal courts are advised to be "reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it."[26] Once the case has been removed, the nonmoving party bears the burden of proof and persuasion in establishing that remand is appropriate.[27] The Court will decline to exercise jurisdiction and remand the case to the state court "if there is any doubt as to the right of removal in the first instance."[28]

Merck removed the instant action on the basis of federal question jurisdiction. Federal question jurisdiction can exist over claims asserted under state law, as long as the state law claims: (1) "necessarily raise a stated federal issue"; (2) the federal issue is "actually disputed and substantial"; and (3) the issue is one "which a federal forum may entertain without disturbing any congressionally approved balance of federal and state responsibilities."[29] Even a complaint brought in state court that makes explicit allegations involving violations of federal

---

[24] Dkt. 55 at 6.

[25] *Geographic Expeditions Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1106-07 (9th Cir. 2010).

[26] *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for So. Cal.*, 463 U.S. 1, 22 (1983).

[27] *Mondragon v. Capital One Auto Finance*, 736 F.3d 880, 883 (9th Cir. 2012).

[28] *Geographic Expeditions*, 599 F.3d at 1107.

[29] *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).

law does not necessarily confer federal jurisdiction.[30] The removing party must still show that the state law claim necessarily raises a substantial issue of federal law.[31]

## IV. DISCUSSION

The State's Original Complaint alleges that Merck's misrepresentations and suppression of evidence of the risks of Vioxx "induced the State of Alaska to authorize expenditure of Medicaid funds for the purchase of Vioxx."[32] The State's Amended Complaint omitted reference to Medicaid and does not seek relief for state expenditures on Vioxx.[33] At oral argument, Merck suggested that the State may be manipulating jurisdiction by amending its original complaint to dismiss the claim for recovery of expenditures on Vioxx. The Court does not find such manipulation; it is common for a plaintiff to amend its complaint to narrow the scope of the issues or hone the claims, particularly after years of discovery and other proceedings. Regardless, the Court finds that neither the Original Complaint nor the Amended Complaint give rise to federal jurisdiction.

Merck contends that the State's "theory of recovery is that it would not have covered Vioxx prescriptions [under Medicaid] if Merck adequately disclosed the drug's risks."[34] Based on this allegation, Merck argues that this case is governed by the Supreme Court's holding in *Grable*. In *Grable*, a plaintiff brought a state common law quiet title action alleging superior title over a

---

[30] *Nevada v. Bank of Am. Corp.*, 627 F.3d 661, 674-75 (9th Cir. 2012).

[31] *Id.* at 674.

[32] Dkt. 1-3 at 7 ¶22.

[33] *See,* Dkt. 46-6.

[34] Dkt. 55 at 11.

6

parcel of land that had been seized by the Internal Revenue Service (IRS).[35] The plaintiff's complaint alleged that he had superior title because the IRS failed to serve notice pursuant to 26 U.S.C. § 6335(a).[36] The defendant removed the case to federal court on federal question jurisdiction, arguing that the plaintiff's claim hinged upon an interpretation of federal tax law.[37] The Supreme Court held that federal jurisdiction was appropriate because a federal court may entertain an action where the state law claim "implicate[s] significant federal issues."[38]

Here, however, the State's claims do not hinge upon an interpretation of federal law. The State does not contest its obligations to pay for approved drugs under Medicaid law; instead, the State claims that it was fraudulently induced to cover Vioxx and this, in turn, triggered the State's obligation to reimburse payments spent on Vioxx prescriptions. Thus, the Court need not analyze the Medicaid statutes in determining whether the State is entitled to relief.[39] Federal law is therefore not implicated by the State's claims.

Even if the State's claims implicated federal law, the Court will not exercise federal jurisdiction unless the resolution of a federal issue is necessary in order for the State to prevail on its state law claims.[40] In *Grable*, federal jurisdiction was appropriate because the issue of

---

[35] 545 U.S. 308, 311 (2005).

[36] *Id.*

[37] *Id.*

[38] *Id.* at 312.

[39] While Merck removed this case on the grounds that substantial questions of federal law involving both the FDCA and Medicaid statutes are raised by the State's complaint, Merck did not address the FDCA in its opposition to remand. Dkt. 55 at 8 FN 1.

[40] *Rains v. Criterion Systems, Inc.*, 80 F.3d 339, 345 (9th Cir. 1996); *Nevada*, 672 F.3d at 675.

"[w]hether Grable was given notice within the meaning of the federal statute" was an "essential element" of his state common law claim.[41]  In other words, the plaintiff could not obtain the relief he sought without first establishing a violation of federal tax law.

In contrast, the federal Medicaid law raised in the State's complaint is not an "essential element" of the state law claims that must be analyzed before the State can obtain relief.  The Court need not assess the construction of Medicaid law or Medicaid regulations or apply them to the facts of the case in order to resolve whether Merck violated the UTPA.  State law independently supports the State's theory for relief.  Thus, assuming arguendo that federal Medicaid law is implicated by the state law claims, the Court does not find that the federal law is a necessary element of the State's theory for relief.[42]

Moreover, federal jurisdiction requires "not only a contested federal issue, but a substantial one," which is lacking in the present lawsuit.[43]  The Court reached the same conclusion in a similar case, *Alaska v. Eli Lilly & Co.*[44]  In *Eli Lilly*, the State of Alaska brought suit against a pharmaceutical company seeking damages and penalties arising from alleged violations of the UTPA from the marketing and sale of the drug Zyprexa.[45]  Just as in this case, the defendant asserted that since Medicaid program funds were at issue in the suit, the resolution of the claims

---

[41] *Grable*, 545 U.S. at 312.

[42] *See, e.g.,* Gunn v. Minton, 133 S.Ct. 1059, 1065 (2013) (Finding that the resolution of a federal patent infringement issue was "necessary" to the plaintiff's state law malpractice claim because the plaintiff first had to prove that "he would have prevailed in his federal patent infringement case if only [defendants] had timely made an experimental-use argument on his behalf.").

[43] *Grable*, 545 U.S. at 308.

[44] 2006 WL 2168831 (D. Alaska July 28, 2006).

[45] *Id.* at *1.

required application of federal Medicaid law.[46] The Court disagreed, finding that the State of Alaska's claims "do not implicate a substantial federal question."[47] *Eli Lilly* is on all fours with the instant action. Again, the Court finds that even if the State's claims under the UTPA implicate a necessary federal issue, it is not substantial enough to confer federal jurisdiction.

As explained by the Ninth Circuit, the federal jurisdiction established in Grable "applies to a 'special and small category' of cases."[48] Even if an issue of federal law was present in this case, federal jurisdiction must be "consistent with congressional judgment about the sound division of labor between state and federal courts."[49] Since the present case was brought by the State of Alaska and the state law claims are not inextricably intertwined with federal issues, the Court may not entertain the claims without disturbing the congressionally-approved balance of state and federal judicial responsibilities.

## V. CONCLUSION

For the foregoing reasons, the Court grants the State's motion at **Docket 46** and **REMANDS** the case to state court.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 6th day of February, 2015.

/s/ Timothy M. Burgess
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE

---

[46] *Id.* at *3.

[47] *Id.* at *4.

[48] *Nevada*, 672 F.3d at 674 (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)).

[49] *Grable*, 545 U.S. at 313.